UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA and
ANGELA D'ANNA, ex rel.,

    Plaintiffs,

v.                                          Case No: 2:14-cv-437-FtM-38CM

LEE MEMORIAL HEALTH
SYSTEM,

    Defendant.

## ORDER

This matter comes before the Court upon review of Defendant Lee Memorial Health System's ("Lee Health") Emergency Motion to Reseal Certain Exhibits filed on September 10, 2018. Doc. 52. Relator-Plaintiff Angela D'Anna ("Relator") filed a response in opposition on September 13, 2018. Doc. 59. With leave of Court, Lee Health filed a reply in support of its motion on September 14, 2018. Docs. 63, 64. For the reasons stated below, the motion is denied without prejudice.

I.    **Background**

On August 8, 2014, Relator filed this case against Lee Health pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et. seq.*, alleging violations of the FCA and 42 U.S.C. § 1395nn (the "Stark Law"). Doc. 1. Relator filed the Complaint under seal pursuant to 31 U.S.C. § 3730(b)(2). *Id.* On July 28, 2017, Relator filed an Amended Complaint under seal pursuant to the same provisions, alleging that Lee Health violated the Stark Law by paying physicians

illegal referral fees and financial incentives under compensation arrangements that exceeded fair market value and were "commercially unreasonable in the absence of referrals." Doc. 36 ¶¶ 1-3. Lee Health allegedly paid the excessive compensation to certain physicians and then "knowingly submit[ted] false claims to government payers [Medicare and Medicaid] related to referrals from such specialists in violation of the FCA." *Id.* ¶ 4. Relator claims Lee Health's "fraudulent scheme" began on October 1, 2005 and continued until at least June 26, 2014, and involved several groups of physicians including neurosurgeons, cardiologists and pulmonologists. *Id.* ¶¶ 57-58, 83, 98. Relator seeks treble damages and other civil penalties from Lee Health related to the Government's calculated losses from the Medicare and Medicaid programs based on Lee Health's alleged fraudulent scheme. *See id.* at 42.

On August 15, 2018, the Government filed a Notice of Election to Decline Intervention ("Notice"), pursuant to 31 U.S.C. § 3730(b)(4)(B), in which it requested that the Complaint, the Amended Complaint, the Notice, and any order issued in response to the Notice be unsealed. Doc. 48 at 1-2. On August 27, 2018, the Court granted the Government's request and unsealed the Notice (Doc. 48), the Complaint (Doc. 1) and the Amended Complaint (Doc. 36), including all exhibits attached thereto. Doc. 50 at 2. The Clerk made the filings publicly available on the docket on September 6, 2018. *See* Docs. 1, 36, 48, 50; *see also* Doc. 55 at 2. Lee Health then filed the present motion and an affidavit in support[1] on September 10, 2018,

---

[1] Lee Health filed the affidavit of its Chief Administrative Officer, Kristine M. Fay. Doc. 53 at 4. In the affidavit, Ms. Fay described Lee Health's challenges in recruiting qualified physicians to the southwest Florida area and attached a study predicting that by 2025, the designated region that includes Lee County "will have a deficit of 107% for general

requesting the Court to "permanently" re-seal certain exhibits attached to the Complaint and Amended Complaint. Doc. 52 at 1; Doc. 53. Lee Health also requests that portions of the Complaint and Amended Complaint that refer to information contained in the exhibits be re-sealed and that the Court direct Relator to re-file with appropriate redactions.[2] Doc. 64 at 6.

The exhibits that Lee Health seeks to re-seal[3] contain information including details about compensation arrangements between Lee Health and physicians and other medical providers, specific compensation amounts paid to certain providers, and details regarding provider group compensation arrangements that are allegedly unique to Lee Health. Doc. 52 at 1-2. Lee Health claims the exhibits (and certain portions of the Complaint and Amended Complaint) contain "trade secrets" as defined by federal and Florida law, and requests that the Court enter an Order sealing the documents and requiring Relator to refile "in redacted form so that the trade secret and confidential information remains protected." *Id.*; *see also* Doc. 64 at 6. Lee Health does not, however, identify or describe the precise information in each page of each exhibit, the Complaint or the Amended Complaint it seeks redacted or why the

---

surgeons, 63% for pulmonologists, 34% for cardiologists, and 18% for neurologists." *Id.* at 8 (citation omitted). Ms. Fay also explains Lee Health's need to keep the information in certain exhibits confidential. *Id.* at 10.

[2] In two footnotes in its reply brief, Lee Health identified the pages of the Complaint and Amended Complaint it seeks to re-seal: pages 18, 19, 23, 26, 31, 33, and 38 of the Complaint; and pages 16, 28, 29 and 34 of the Amended Complaint. Doc. 64 at 6.

[3] Lee Health is requesting to seal certain pages of the following exhibits attached to the Complaint (Doc. 1): exhibits 1, 2, 3, 5, 6, 7-1, 10-1, 10-2, 10-3, 10-4, 11, 12-4, 15-1 and 15-2. *See* Doc. 52 at 7-8. Exhibits attached to the Amended Complaint (Doc. 36) Lee Health seeks to re-seal include: exhibits 1, 7, 8, 17, 20, 21, 34, 35 and 36. *See id.* at 8.

information in each document it seeks to seal qualifies for trade secret protection and should be removed from public view indefinitely.

## II. Discussion

### A. *Local Rule 1.09*

Rule 1.09(a) of the Middle District of Florida Local Rules states, in relevant part:

> Unless filing under seal is authorized by statute, rule, or order, a party seeking to file under seal any paper or other matter in any civil case shall file and serve a motion, the title of which includes the words "Motion to Seal" and which includes: (i) an identification and description of each item proposed for sealing; (ii) the reason that filing each item is necessary; (iii) the reason that sealing each item is necessary; (iv) the reason that a means other than sealing is unavailable or unsatisfactory to preserve the interest advanced by the movant in support of the seal; (v) a statement of the proposed duration of the seal; and (vi) a memorandum of legal authority supporting the seal . . . No settlement agreement shall be sealed absent extraordinary circumstances, such as the preservation of national security, protection of trade secrets or other valuable proprietary information[.]

M.D. Fla. R. 1.09(a). Local Rule 1.09(b) states, in relevant part:

> If filing under seal is authorized by statute, rule, or order (including an order requiring or permitting a seal and obtained pursuant to (a) of this rule), a party seeking to file under seal any paper or other matter in any civil case shall file and serve a motion, the title of which includes the words "Motion to Seal Pursuant to [Statute, Rule, or Order]" and which includes (i) a citation to the statute, rule, or order authorizing the seal; (ii) an identification and description of each item submitted for sealing; (iii) a statement of the proposed duration of the seal; and (iv) a statement establishing that the items submitted for sealing are within the identified statute, rule, or order the movant cites as authorizing the seal.

M.D. Fla. R. 1.09(b). District courts have broad discretion in interpreting and applying their local rules. *See Reese v. Herbert*, 527 F.3d 1253, 1267-68 (11th Cir. 2008); *Johnson v. England*, 350 F. App'x 314, 315-16 (11th Cir. 2009).

Lee Health filed its emergency motion pursuant to Rule 5.2 of the Federal Rules of Civil Procedure[4] and a provision of the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.006, and included the words, "Motion to Reseal" in the title of the motion. Doc. 52 at 1. Lee Health does not cite to Local Rule 1.09 in the motion. Lee Health included a list of the exhibits sought to be re-sealed, along with specific page numbers, and a general description of the items as a group,[5] but not individually. *Id.* at 1, 7-8. In its reply brief, Lee Health requests additional items be re-sealed—certain pages of the Complaint and Amended Complaint—and again provides only a general description of the items. Doc. 64 at 6. In terms of duration, Lee Health requests that the information "be sealed permanently, and that Relator be required to re-file the exhibits in question in redacted form[.]" Doc. 52 at 1.

Relator argues in her response that Lee Health failed to comply with Local Rule 1.09 and failed to meet its burden to show that re-sealing the exhibits is appropriate. Doc. 59 at 4. Specifically, Relator argues Lee Health failed to identify and describe each item sought to be re-sealed, as required by Local Rule 1.09(a), and instead identified the exhibits only by number. *Id.* at 4-5; *see* M.D. Fla. R. 1.09(a). Next, Relator argues that Lee Health failed to demonstrate that an alternative means of protecting its confidentiality interest is not available or not satisfactory, and

---

[4] Rule 5.2 of the Federal Rules of Civil Procedure is not a "statute, rule, or order" authorizing filing under seal for the purposes of Rule 1.09(b) of the Middle District of Florida Local Rules. *See* Fed. R. Civ. P. 5.2; M.D. Fla. R. 1.09.

[5] The motion describes the items to be re-sealed as pages of exhibits containing "trade secrets in the form of physician and other health care provider compensation arrangements, including specific provider compensation amounts as well as provider group compensation arrangements unique to [Lee Health]." Doc. 52 at 1-2.

asserts that re-sealing the exhibits "goes beyond [Lee Health's] stated interest[.]" *Id.* at 9-10; *see* M.D. Fla. R. 1.09(a). Finally, Relator notes that Lee Health did not propose a duration of the seal of one year or less, as required by Local Rule 1.09(a), and proposed an impermissible "permanent seal[.]" *Id.* at 10; *see* M.D. Fla. R. 1.09(a).

Lee Health responds that it complied with Local Rule 1.09 and argues Relator incorrectly stated the standard for Lee Health's motion to be Local Rule 1.09(a), instead of Local Rule 1.09(b). Doc. 64 at 1. Lee Health argues that it filed the motion to re-seal under a statute authorizing filing under seal; thus it was only required to provide (1) a citation to the statute; (2) an identification and description of the items to be sealed; (3) a proposed duration of the seal; and (4) a statement establishing the items to be sealed are covered under the purported authorizing statute. *Id.* at 2; *see* M.D. Fla. R. 1.09(b). Lee Health argues it met these requirements by citing to state and federal statutes defining a trade secret "and the state statute identifying sealing court records as a means of protecting trade secrets[.]" *Id.* (citations omitted). Lee Health claims it specified the items to be re-sealed and proposed a temporary duration by requesting that the items be sealed permanently until Relator re-files with appropriate redactions. *Id.*

The Court finds Lee Health failed to comply with Local Rule 1.09 and failed to provide sufficient detail for the Court to make the required findings of fact about the appropriateness of sealing each item requested to be re-sealed. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1314-15 (11th Cir. 2001) (per

curiam). First, Lee Health is incorrect that Local Rule 1.09(b) governs its motion to re-seal. *See* Doc. 64 at 2. In support of this claim, Lee Health asserts it filed the motion under a Florida statute authorizing filing under seal. *Id.* The relevant section of the FUTSA states:

> *In an action under ss. 688.001-688.009*, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

§ 688.006, Fla. Stat. (emphasis added). This is not an action under any section of the FUTSA; thus, that provision is inapplicable. Because Lee Health cited no other statute authorizing filing under seal, its motion is governed by Rule 1.09(a).

Second, Lee Health did not identify and describe each item of the exhibits or pleadings it seeks to re-seal and the reason that sealing each item is necessary, other than a general statement that they contain trade secrets. *See* Doc. 52 at 1, 7-8. Lee Health only cited to each exhibit and the entirety of the applicable pages allegedly containing trade secrets and gave a general description of them as compensation arrangements and amounts.[6] *See id.* Lee Health failed to specifically demonstrate why a less restrictive means is not available or not adequate to protect its interest but did explain generally why it is necessary the items be sealed. *See* M.D. Fla. R. 1.09(a); Doc. 52 at 1-6. Finally, although Lee Health proposed Relator re-file the relevant documents with redactions, it did not propose a length of time that the

---

[6] The Court agrees with Relator that Lee Health's efforts in this respect made this expedited review "difficult at best." *See* Doc. 59 at 5.

original un-redacted documents would remain under seal. *See* Doc. 52 at 1. Thus, the Court finds Lee Health failed to comply with Local Rule 1.09. The Court, however, will proceed to consider the merits of Lee Health's motion despite the deficiencies in Lee Health's compliance with the Local Rules and provide direction for re-filing the motion, if desired, in compliance with Local Rule 1.09. *See Reese*, 527 F.3d at 1267; *Johnson*, 350 F. App'x at 315-16.

### B. *Whether sealing the documents is appropriate*

The Eleventh Circuit recognizes a "presumptive common law right to inspect and copy judicial records." *U.S. v. Rosenthal*, 763 F.2d 1291, 1292-93 (11th Cir. 1985) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)). "The common law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chicago Tribune Co.*, 263 F.3d at 1311 (citing *Richmond Newspapers*, 448 U.S. 555, 564-74 (1980)).

The public's right of access to judicial proceedings and records applies when the judicial records involve public pleadings filed on the docket such as the complaint. *See F.T.C. v. AbbVie Products LLC*, 713 F.3d 54, 62 (11th Cir. 2013). "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Id.*; *see also IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013) (internal citations omitted) (describing the "modern trend in federal cases to treat pleadings in civil litigation (other than discovery

motions and accompanying exhibits) as presumptively public, even when the case is pending before judgment"). Exhibits attached to a complaint "must also be treated as judicial records[.]" *Id.* at 63 ("We even treat specific facts demonstrated by exhibits as overriding more generalized or conclusory statements in the complaint itself.")

The public's right of access is not absolute, however, and a judge's decision whether to seal court records "should be informed by a 'sensitive appreciation of the circumstances that led to . . . [the] production [of the particular document in question].'" *Chicago Tribune Co.*, 263 F.3d at 1311 (quoting *Richmond Newspapers*, 448 U.S. at 598); *see also Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) ("The common law right of access may be overcome by a showing of good cause[.]") In determining whether to seal court filings and other materials, a district court must balance competing interests—a party's interest in keeping information confidential and the public's legitimate interest in the subject matter and conduct of the proceedings. *See Chicago Tribune Co.*, 263 F.3d at 1315; *see also Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) (quoting *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983)) ("The district court must keep in mind the rights of a third party—the public, 'if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system.'") The court must balance these competing interests even when the material sought to be sealed from public view is classified as trade secrets. *See Chicago Tribune Co.*, 263 F.3d at 1315 ("Should the district court determine that these documents do in

fact contain trade secrets, the district court must balance [the] interest in keeping the information confidential against [the] contention that disclosure serves the public's legitimate interest in health and safety.")

> i. *Whether the information in the documents qualifies for trade secret protection or is otherwise proprietary in nature*

The federal Defend Trade Secrets Act of 2016 ("DTSA") defines "trade secret" as:[7]

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). Lee Health argues the compensation data and arrangements at issue derive independent economic value from not being generally known by others "from the negotiating power that the information provides to [Lee Health's] competitors in terms of poaching physicians and mid-level providers such as physician assistants and nurse practitioners." Doc. 52 at 4. Lee Health claims the

---

[7] Both parties cite to the DTSA definition as the correct definition to apply. Doc. 52 at 2; Doc. 59 at 5. The DTSA definition is similar to the definitions in the FUTSA and the Restatement of Torts. *See* § 688.022(4), Fla. Stat.; Restatement (First) of Torts § 757. Thus, for the purposes of the present motion the Court will apply the DTSA definition.

exhibits "contain physician compensation information that is vital to Lee Health's competitive position in southwest Florida." *Id.* (citing Doc. 53 at 6-10). Further, Lee Health argues the compensation information is the subject of reasonable efforts to maintain its secrecy. *Id.* at 6. Specifically, Lee Health claims it does not disclose the amount of compensation paid to providers to those outside the organization because such disclosure "would permit competitors of Lee Health to offer a compensation package or other benefits that could be deemed more attractive, thereby greatly disadvantaging Lee Health's efforts to retain and recruit physicians." *Id.* at 4 (citing Doc. 53 at 9-10). Lee Health considers its compensation information to be confidential and exempt from public disclosure laws—as a "political subdivision of the State of Florida" and a public government entity, Lee Health is subject to federal and state disclosure laws and it claims its policy is to "exempt [the] compensation documents from disclosure under the trade secret exemption to the statutes" in the case of a public records request. *Id.* at 5-6 (citing Doc. 53 at 9-10).

Relator responds that Lee Health's compensation information does not qualify for trade secret protection and should not be re-sealed. Doc. 59 at 5. Relator argues that Lee Health "overbroadly categorizes all of the 4+ year old physician compensation information contained in the Exhibits as 'trade secrets[.]'" *Id.* (citing Doc. 52 at 3). Further, Relator asserts the information no longer has any independent economic value since it is most recently from four years ago. *Id.* Relator also notes Lee Health seeks to re-seal "compensation and production analyses" from 2013 for two neurosurgeons and two cardiologists that include

- 11 -

information that is "publicly available, having been obtained from Medical Group Management Association[.]" *Id.* at 5-6 (citing Doc. 36-7 at 3; Doc. 36-8 at 3; Doc. 36-20 at 3; Doc. 36-21 at 3). Relator argues Lee Health cannot justify why this "five-year-old information that is publicly available should be resealed." *Id.* at 6.

The information in the exhibits from the Amended Complaint can be generally categorized as follows:[8] recommendations on specific changes to Lee Health's neurosurgery compensation model, dated March 2009 (Doc. 36-1 at 7, 9, 11, 13); compensation and production analyses for four different providers, including specific pay rates, from 2013 (Doc. 36-7 at 3-4, 6-12; Doc. 36-8 at 3-13; Doc. 36-20 at 2-3, 5-6, 8-9, 11-12; Doc. 36-21 at 2-3, 5-6, 8-9, 11-12); a group compensation pooling plan for Lee Health cardiologists from 2013 (Doc. 36-17 at 2-4); and specific compensation figures for three different Lee Health providers from 2013 (Doc. 36-34 at 2; Doc. 36-35 at 2; Doc. 36-36 at 2). The exhibits in the Complaint Lee Health seeks to re-seal include the following information: specific compensation figures and RVU [9] valuations for Emergency Department physicians from 2013 (Docs. 1-1, 1-2, 1-3, 1-4); the full roster of Lee Health physicians and their respective compensation from 2013

---

[8] Lee Health did not include categories in its motion; thus, the Court will attempt to categorize the documents based on its review, but Lee Health may categorize them differently if it re-files the motion to re-seal since it is in the best position to do so and has the burden of showing the necessity of re-sealing each item. *See Romero*, 480 F.3d at 1246; M.D. Fla. R. 1.09(a).

[9] Relative Value Units ("RVU") are used to measure the worth of different physician services performed when calculating the total Medicare compensation a provider is entitled to for a particular service. *See* Doc. 36 ¶ 56. Relator claims that part of Lee Health's fraud scheme involved artificially inflating providers' RVU valuations by, among other things, crediting work done by non-physicians to physicians' work time and submitting false Medicare claims with the inflated RVU numbers. *See* Doc. 36 at ¶¶ 56, 58, 79-81.

(Doc. 1-5 at 2-19); compensation and production analyses for multiple providers (Doc. 1-6 at 2-9; Doc. 1-26 at 2-3, 5-6, 8-9, 11-12; Doc. 1-29 at 2-3, 5-6, 8-9, 11-12; Doc. 1-30 at 2-3, 5-6); specific recommendations for changes to Lee Health's compensation structure (Doc. 1-8 at 3); specific compensation numbers for multiple providers and groups (Docs. 1-9, 1-10, 1-11, 1-12, 1-13, 1-14, 1-18, 1-19, 1-20, 1-21); and a group compensation pooling plan for Lee Health providers from 2013 (Doc. 1-22 at 2-3, 7).

Although Lee Health failed to sufficiently describe each item sought to be re-sealed in the motion, the Court has reviewed the information contained in the exhibits and much if not all the information contained in the exhibits would appear to qualify for trade secret protection. Lee Health takes reasonable precautions to keep this information confidential through appropriate responses to public disclosure requests and policies of non-disclosure of provider compensation data outside the organization and inside the organization aside from certain individuals. Doc. 53 at 9-10; *see* 18 U.S.C. § 1839(3). Further, although certain information contained in the exhibits may not have independent economic value individually and may be readily obtained through proper means, for example, an individual provider's compensation numbers, it appears the extensive collection of data organized and tracked by Lee Health has independent economic value. *See DynCorp International v. AAR Airlift Group, Inc.*, 664 F. App'x 844, 849 (11th Cir. 2016) (plaintiff sufficiently identified alleged trade secrets as, *inter alia*, collections of compensation data including salaries and pay differentials); *Howard v. Hartford Life and Acc. Ins. Co.*, 275 F.R.D. 649, 651 (M.D. Fla. 2011). Further, Relator alleges the "fraudulent

scheme" began in 2005 and continued until 2014. Doc. 36 ¶ 57. Thus, although much of the information is historical compensation data, the extensive collection of data covering provider compensation and methods of determining provider compensation levels is unique to Lee Health and is proprietary in nature. *See Howard*, 275 F.R.D. at 651 (historical compensation data is proprietary in nature).

Without a more detailed identification and description of the items in each cited page of each exhibit and each cited page of the Complaint and Amended Complaint Lee Health asserts are trade secrets and why, however, the Court is unable to make the factual findings required by the Eleventh Circuit as to each item to support re-sealing. *See Chicago Tribune Co.*, 263 F.3d at 1314-15. Thus, Lee Health has not met its burden to show the necessity of sealing each item. *See Romero*, 480 F.3d at 1246; M.D. Fla. R. 1.09(a).

> ii. *Lee Health's confidentiality interest and the public's interest in the openness of the proceedings*

In balancing a party's interest in confidentiality and the public interest in accessing court records, courts consider several factors: (1) whether allowing access to the records would "impair court functions or harm legitimate privacy interests"; (2) the reliability of the information; (3) whether the other party will have an opportunity to respond to the information; (4) whether the information involves public officials or matters of public concern; and (5) whether a less onerous alternative to sealing court records is available. *Romero*, 480 F.3d at 1246 (citing *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)).

Lee Health argues that the public interest is not implicated in the case of sealing information that includes trade secrets. Doc. 64 at 3. Thus, Lee Health asserts that no balancing test between the public's interest in open judicial proceedings and a party's interest in confidentiality applies here. *Id.* at 4. Lee Health further argues that, even if a balancing test does apply, it favors Lee Health. *Id.* at 3-4. Because it is a "public purpose health system devoted to the provision of health care services to the community[,]" Lee Health argues, the public would be "disserved" by allowing public access to the relevant information in the Complaint, Amended Complaint, and attached exhibits. *Id.* at 4. Further, Lee Health argues that the "loss of its ability to maintain confidentiality would negatively impact its recruiting and retention of health care providers" and would "negatively affect the public interest." *Id.* Relator responds that Lee Health's status as a public health care entity increases the public's legitimate interest in the conduct of the proceedings and the fraud Relator alleges Lee Health committed. Doc. 59 at 9. Relator notes also that Lee Health's Board of Directors meets in public and is composed of elected members and asserts that resealing the exhibits "is not warranted when the parties benefitting from the resealing are a public health care system and its publicly elected Board of Directors." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994)).

Contrary to Lee Health's argument, even when trade secrets are involved, the district court must balance the interest in keeping the trade secrets confidential against the "contention that disclosure serves the public's legitimate interest[.]"

*Chicago Tribune Co.*, 263 F.3d at 1315. First, this is a case brought under the FCA, and, "[b]y definition, an FCA complaint alleges a fraud upon the public[.]" *U.S. v. King Pharmaceuticals, Inc.*, 806 F. Supp. 2d 833, 840 (D. Md. 2011). The exhibits cited by Lee Health detail compensation arrangements and compensation figures for physicians, and Relator's FCA allegations accuse Lee Health of using illegal compensation arrangements and paying physicians excessive compensation figures. *See* Doc. 52 at 1; Doc. 59 at 2. Thus, the Court agrees with Relator that the information in the exhibits is "highly probative evidence" regarding Relator's claims that Lee Health paid physicians "under compensation arrangements that (i) exceeded fair market value, and (ii) were commercially unreasonable in the absence of referrals." *See* Doc. 59 at 9 (citing 42 U.S.C. § 1395nn(e)(2)). As this information is the "cornerstone" of the case against Lee Health, the public has a legitimate interest in accessing the information. *See F.T.C.*, 713 F.3d at 62.

Further, the public has a legitimate "health and safety" interest in the details of alleged Medicare and Medicaid fraud, as in this case, because patients must be confident that their physicians are making decisions regarding appropriate treatment and referrals based on the patient's health and not on improper financial motives. *See Chicago Tribune Co.*, 263 F.3d at 1315; Doc. 36 ¶ 4. As to Lee Health's argument that the disclosure of the information will negatively impact the public interest by harming its ability to recruit providers, Lee Health has not met its burden to show that the historical compensation data will impact its recruitment significantly enough, or that the alleged trade secrets at issue are valuable enough,

- 16 -

to outweigh the public's interest in accessing the court records in this case. *See* Doc. 64 at 4; *Chicago Tribune Co.*, 263 F.3d at 1315. The information contained in the exhibits is from most recently four years ago, and although that does not render it unworthy of any trade secret protection, it does reduce Lee Health's interest in the confidentiality of the information when weighed against the public's common law right of access. *See* Doc. 59 at 5; *Chicago Tribune Co.*, 263 F.3d at 1315.

As to the other factors in *Romero*, there is no indication that allowing access to the court records would impair court functions; however, there are legitimate privacy interests at stake, including information in the exhibits related to physicians and other providers who are not involved in the litigation. 480 F.3d at 1246; *see, e.g.*, Doc. 1-5 at 2-19. Lee Health has made some showing that its recruiting efforts will be harmed if the information at issue is not re-sealed but has not sufficiently shown the "degree of and likelihood" of injury. *See* 480 F.3d at 1246; Doc. 64 at 4. Further, neither party argues that the information is unreliable, and the case is in an early stage. Lee Health will be given an opportunity to respond to the information as the case progresses. *See* 480 F.3d at 1246. Finally, the information concerns public officials and public concerns, as the public has a legitimate interest in the operation of its health care facilities and Lee Health is a public entity governed by an elected Board of Directors. *See id.* at 1246; Doc. 59 at 9.

In sum, Lee Health has not met its burden to show which information contained in each cited page of each exhibit and the Complaint and Amended Complaint contains trade secrets and why Lee Health's confidentiality interest

outweighs the public's interest in access to court records; and has failed to provide a sufficient showing for the Court to make the findings of fact required by the Eleventh Circuit. *See Romero*, 480 F.3d at 1246; *Chicago Tribune Co.*, 263 F.3d at 1314-15; M.D. Fla. R. 1.09(a). Further, Lee Health failed to include a proposed duration of the seal of less than one year and instead requested an impermissible "permanent" sealing. *See* M.D. Fla. R. 1.09(a); Doc. 52 at 1. Therefore, the Court will deny the motion without prejudice to Lee Health re-filing the motion, if desired, in compliance with Local Rule 1.09(a) and addressing the issues explained in this Order. If Lee Health re-files the motion, it is directed to (1) identify and describe each item in each exhibit or pleading proposed for re-sealing, and each item requested to be redacted if the Court orders Relator to re-file with redactions; (2) state the reason that re-sealing each item is necessary; (3) state the reason that a means other than sealing is unavailable or unsatisfactory to preserve its interest in confidentiality of the information; (4) propose a duration of the seal; and (5) include a memorandum of law in support. *See* M.D. Fla. R. 1.09(a).

ACCORDINGLY, it is

**ORDERED:**

Defendant Lee Health's Emergency Motion to Reseal Certain Exhibits (Doc. 52) is **DENIED without prejudice.**

**DONE** and **ORDERED** in Fort Myers, Florida on this 19th day of September, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record