UNITED STATES OF AMERICA and
ANGELA D'ANNA, ex rel.,

      Plaintiffs,

v.                                Case No:  2:14-cv-437-FtM-38CM

LEE MEMORIAL HEALTH
SYSTEM,

      Defendant.

_____

## ORDER

This matter comes before the Court upon review of Defendant Lee Memorial Health System's ("Lee Health") Second Emergency Motion to Re-Seal Certain Exhibits and Related Portions of Relator's Initial Complaint and First Amended Complaint with Incorporated Memorandum of Law filed on September 24, 2018. Doc. 72. Plaintiff-Relator Angela D'Anna ("Relator") filed a response in opposition on October 1, 2018. Doc. 76. Pursuant to the Court's Order, Lee Health filed a reply on October 5, 2018. Docs. 77, 78. For the reasons stated below, the motion is granted in part and denied in part.

## I.  Background

On August 8, 2014, Relator filed this case against Lee Health under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et. seq.*, alleging violations of the FCA and 42 U.S.C. § 1395nn (the "Stark Law"). *See* Doc. 1. Relator filed the Complaint under seal pursuant to 31 U.S.C. § 3730(b)(2). *See id.*

On July 28, 2017, Relator filed an Amended Complaint under seal alleging Lee Health violated the Stark Law by paying physicians illegal referral fees and financial incentives under compensation arrangements that exceeded fair market value and were "commercially unreasonable in the absence of referrals." Doc. 36 ¶¶ 1-3. Lee Health allegedly paid the excessive compensation to certain physicians and "knowingly submit[ted] false claims to government payers [Medicare and Medicaid] related to referrals from such specialists in violation of the FCA." *Id.* ¶ 4. Relator alleges Lee Health compensated physicians at rates above fair market value by artificially inflating their Relative Value Units ("RVU")[1] by, among other things, crediting work performed by non-physicians—also called physician "extenders"[2]—to physicians' RVU time and submitting false Medicare claims with the inflated RVU numbers. *See id.* ¶¶ 56, 58, 79-81. Relator claims Lee Health's "fraudulent scheme" began on October 1, 2005 and continued until at least June 26, 2014. *Id.* ¶ 57.

The allegations in the Complaint focused on Lee Health physicians in four specialties: Emergency Department ("ED") physicians; neurologists; cardiologists; and pulmonologists. *See* Doc. 1 ¶¶ 67, 79, 87, 100, 119. In the Amended Complaint, Relator dropped the allegations related to the ED physicians and focused

---

[1] RVUs are used to measure the worth of different physician services performed when calculating the total Medicare reimbursement a provider is entitled to for a particular service. *See* Doc. 36 ¶ 56.

[2] Examples of physician "extenders" include physician assistants and nurse practitioners. *See* Doc. 1 ¶ 59.

solely on the neurologists, cardiologists and pulmonologists.[3]  *See* Doc. 36 ¶¶ 61-62, 93, 108.   Relator seeks treble damages and other civil penalties from Lee Health related to the United States' calculated losses from the Medicare and Medicaid programs.   *See* Doc. 36 at 42.   On August 15, 2018, the United States filed a Notice of Election to Decline Intervention under 31 U.S.C. § 3730(b)(4)(B), requesting that the Court unseal the Complaint, the Amended Complaint, the Notice, and any order issued in response to the Notice.   Doc. 48 at 1-2.   On August 27, 2018, United States District Judge Sheri Polster Chappell granted the United States' request and unsealed the Complaint and Amended Complaint and all exhibits attached thereto. Doc. 50 at 2.   The Clerk made the filings publicly available on the docket on September 6, 2018.   *See* Docs. 1, 36, 48, 50.

Lee Health filed an Emergency Motion to Reseal Certain Exhibits on September 10, 2018, asserting that certain information in the Complaint and Amended Complaint and attached exhibits contained trade secrets.   Doc. 52 at 1-2. Relator filed a response in opposition on September 13, 2018; and with leave of Court, Lee Health filed a reply on September 14, 2018.   Docs. 59, 63, 64.   On September 19, 2018, the Court denied Lee Health's motion without prejudice for failing to comply with Local Rule 1.09 and failing to supply sufficient information for the Court to determine whether the information Lee Health sought to re-seal contained trade secrets and whether Lee Health's interest in keeping the information confidential

---

[3] The Amended Complaint also does not include multiple exhibits that Relator included with the Complaint, including the full roster and salaries of Lee Health physicians and exhibits relating to the ED physicians.   *See* Docs. 1-1–1-16.

outweighed the public's interest in accessing it. Doc. 71 at 6-8, 14, 17-18. Lee Health then filed the present motion on September 24, 2018 and Relator filed a response on October 1, 2018. Docs. 72, 76. Pursuant to the Court's Order Lee Health filed a reply on October 5, 2018 (Docs. 77, 78), and the matter is now ripe for review.

## II. Discussion

### A. Compliance with Local Rule 1.09

Rule 1.09(a) of the Middle District of Florida Local Rules states, in relevant part:

> [u]nless filing under seal is authorized by statute, rule, or order, a party seeking to file under seal any paper or other matter in any civil case shall file and serve a motion, the title of which includes the words "Motion to Seal" and which includes: (i) an identification and description of each item proposed for sealing; (ii) the reason that filing each item is necessary; (iii) the reason that sealing each item is necessary; (iv) the reason that a means other than sealing is unavailable or unsatisfactory to preserve the interest advanced by the movant in support of the seal; (v) a statement of the proposed duration of the seal; and (vi) a memorandum of legal authority supporting the seal . . . No settlement agreement shall be sealed absent extraordinary circumstances, such as the preservation of national security, protection of trade secrets or other valuable proprietary information[.]

M.D. Fla. R. 1.09(a). District courts have broad discretion in interpreting and applying their local rules. *See Reese v. Herbert*, 527 F.3d 1253, 1267 (11th Cir. 2008); *Johnson v. England*, 350 F. App'x 314, 315-16 (11th Cir. 2009).

Lee Health filed its second emergency motion under Rule 1.09(a) and included an affidavit with particularized descriptions of each item proposed for re-sealing and

redacting,[4] as well as a second affidavit with descriptions of the harm to Lee Health's business that could be caused by the public availability of its compensation data.[5] Docs. 72, 73-1, 73-2. In its second emergency motion, Lee Health applied the elements of Rule 1.09(a) to the compensation data at issue and divided the motion into two sections: (1) Rule 1.09(a) elements relating to compensation data relevant to the allegations in the Amended Complaint; and (2) Rule 1.09(a) elements relating to data that is irrelevant to the allegations. *See* Doc. 72 at 2-3. Lee Health applies the Rule 1.09(a) elements generally to the two categories of compensation data but not to each item proposed for re-sealing and redacting. *See id.* at 3-19. The motion refers to Ms. Fay's affidavit for the identification and description of each item proposed for re-sealing and redacting. *Id.* at 3, 15 (citing Doc. 73-1). In terms of duration, Lee Health proposes the requested items be sealed for eleven months or "until such time as Relator is able to re-file copies of the documents with the described

---

[4] As with its first emergency motion, Lee Health filed the affidavit of its Chief Administrative Officer, Kristine M. Fay. Doc. 73-1; *see* Doc. 53. This affidavit includes much of the same information as the first, including Ms. Fay's descriptions of Lee Health's challenges recruiting physicians to the southwest Florida area and the Florida Physician Workforce Analysis study. *See* Doc. 73-1 ¶¶ 1-20; Doc. 73-1 at 19-71; Doc. 53 ¶¶ 1-14; Doc. 53-1. This affidavit, however, also includes Ms. Fay's description of each item proposed to be re-sealed or redacted and a chart identifying each item. Doc. 73-1 ¶¶ 22-23; Doc. 73-1 at 72-100.

[5] Lee Health submitted an additional affidavit from Raymond Thomas Ouellette, the owner of National Health Resources, Inc., "one of the nation's largest providers of healthcare staffing services and physician recruitment." Doc. 73-2 ¶ 1. In the affidavit, Mr. Ouellette describes how the availability of Lee Health's physician compensation data to its competitors would harm its physician recruiting efforts, including that competitors "would have knowledge of how much additional compensation would be needed to exceed Lee Health's compensation . . . [and] the methodology used by Lee Health to arrive at calculations." *Id.* ¶ 5.

sensitive information redacted and Relator retrieves the sealed documents from the Court." *Id.* at 13, 18-19.

Relator argues that Lee Health failed to show "that a means other than sealing of protecting the interest advanced by Lee Health is not available or is not satisfactory[.]" Doc. 76 at 18-19. She also argues that Lee Health failed to explain why each specific item must be re-sealed to protect Lee Health's competitive position, instead providing "a conclusory statement that the release of the information would assist its competitors in recruiting its doctors." *Id.* at 2. Lee Health does not directly respond to these arguments in its reply.

The Court finds that Lee Health complied with the procedural requirements in Local Rule 1.09 in its second emergency motion and satisfactorily followed the Court's instructions from the previous Order. *See* Doc. 71 at 18; M.D. Fla. R. 1.09(a). Lee Health identifies the main categories of information sought to be re-sealed and applies the elements of Rule 1.09(a) to each. *See* Doc. 72 at 3-19. Lee Health includes a detailed description of each item proposed for re-sealing in Ms. Fay's affidavit and a chart identifying each specific portion of each page of the Complaint, Amended Complaint and attached exhibits it seeks to re-seal. Doc. 73-1 ¶¶ 22-23; Doc. 73-1 at 72-100. The motion and attached affidavit provide sufficient information for the Court to make the findings of fact required by the Eleventh Circuit regarding the proprietary nature of the information and Lee Health's and the public's respective interests in keeping the information private and accessing the information. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304,

1311-15 (11th Cir. 2001). Thus, the Court will proceed to consider the merits of Lee Health's motion.

###### B. Whether re-sealing the documents is appropriate

The Eleventh Circuit recognizes a "presumptive common law right to inspect and copy judicial records." *U.S. v. Rosenthal*, 763 F.2d 1291, 1292-93 (11th Cir. 1985) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)). "The common law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chicago Tribune*, 263 F.3d at 1311 (citing *Richmond Newspapers v. Virginia*, 448 U.S. 555, 564-74 (1980)).

The public's right of access to judicial proceedings and records applies to public pleadings filed on the docket, such as a complaint and exhibits to a complaint. *See F.T.C. v. AbbVie Products LLC*, 713 F.3d 54, 62 (11th Cir. 2013). "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Id.*; *see also IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013) (internal citations omitted) (describing the "modern trend in federal cases to treat pleadings in civil litigation (other than discovery motions and accompanying exhibits) as presumptively public, even when the case is pending before judgment").[6]

---

[6] The Eighth Circuit also stated that exhibits attached to a complaint "must also be treated as judicial records" for purposes of determining whether there is a common law right of access to documents. *IDT Corp.*, 709 F.3d at 63 ("We even treat specific facts demonstrated by exhibits as overriding more generalized or conclusory statements in the

The public's right of access is not absolute, however, and a judge's decision whether to seal court records "should be informed by a 'sensitive appreciation of the circumstances that led to . . . [the] production [of the particular document in question].'" *Chicago Tribune*, 263 F.3d at 1311 (quoting *Richmond Newspapers*, 448 U.S. at 598); *see also Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) ("The common law right of access may be overcome by a showing of good cause"). In determining whether to seal court filings and other materials, a district court must balance competing interests—a party's interest in keeping information confidential and the public's legitimate interest in the subject matter and conduct of the proceedings. *See Chicago Tribune*, 263 F.3d at 1315; *see also Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) (quoting *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983)) ("The district court must keep in mind the rights of a third party—the public, 'if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system'"). The court must balance these competing interests even if the material sought to be sealed from public view is classified as trade secrets. *See Chicago Tribune*, 263 F.3d at 1315 ("Should the district court determine that these documents do in fact contain trade secrets, the district court must balance [the] interest in keeping the information confidential against [the] contention that disclosure serves the public's legitimate interest in health and safety").

---

complaint itself").

i. *Whether the information in the documents qualifies for trade secret protection*

a. Information proposed for re-sealing[7]

Lee Health's second emergency motion and the attached affidavits describe in detail the information it claims deserves trade secret protection. Doc. 72 at 3-19; Doc. 73-1 ¶¶ 22-23; Doc. 73-1 at 72-100. The chart included with Ms. Fay's affidavit also—for the first time—apprises the Court of which specific portions of each page of the Complaint, Amended Complaint and attached exhibits Lee Health claims contains trade secret information.[8] *See* Doc. 73-1 at 72-100. Although the general descriptions in Lee Health's first emergency motion suggested that a significant portion of the information sought to be re-sealed represented compensation methodologies and other secret aspects of the compensation arrangements between Lee Health and its physicians, the second motion's specific descriptions and identifications clarify that the majority of the information is comprised of the actual dollar amounts of physicians' and other employees' compensation from approximately 2008–2014. *See id.*

---

[7] Lee Health includes descriptions of the items proposed for sealing and redacting in the second emergency motion and attached affidavits. *See* Doc. 72 at 3-19; Doc. 73-1 ¶¶ 22-23; Doc. 73-1 at 72-100. In her response, Relator attached the declaration of attorney Scott C. Withrow of the firm Withrow, McQuade & Olsen, LLP. Doc. 76-1. Mr. Withrow's declaration includes a chart that describes each item in the Amended Complaint and attached exhibits proposed for re-sealing and gives Relator's response to each item. Doc. 76-2.

[8] Lee Health's previous motion provided general descriptions of the information and listed the page numbers of the Complaint, Amended Complaint and attached exhibits it sought to re-seal, but requested only that the documents be sealed and Relator be required to re-file with appropriate redactions without identifying the proposed redactions. *See* Doc. 52 at 1-2; Doc. 64 at 6.

The portions of the Complaint Lee Health seeks to re-seal include (1) a chart of seventeen ED physicians' compensation amounts for 2013; (2) two charts of four neurosurgeons' compensation amounts for 2008–2013; (3) a chart of four cardiologists' compensation for 2013; (4) a chart of three pulmonologists' compensation for 2013; and (5) two sentences in the Complaint that disclose the medical director's compensation for 2010. *See* Doc. 73-1 at 72; Doc. 1 ¶¶ 67, 79, 87, 100, 119, 126, 129. The portions of the Amended Complaint proposed for re-sealing include (2)–(5) above but does not include the ED physicians' compensation chart, which Relator did not include in the Amended Complaint. *See* Doc. 73-1 at 72; Doc. 36 ¶¶ 61-62, 93, 108, 117, 120. Notably, Lee Health does not seek to re-seal certain accompanying charts in the Complaint and Amended Complaint detailing the physicians' RVU outputs. *See* Doc. 1 ¶¶ 98, 118; Doc. 36 ¶ 90.

Next, Lee Health seeks to re-seal the following exhibits attached to the Complaint and redact the following information from each exhibit: (1) four sets of analyses of quarterly compensation for ED physicians and physician "extenders" from 2013 (redact compensation amounts and RVU numbers); (2) a full roster of Lee Health physicians and their respective compensation (redact compensation amounts); (3) two external third-party reports on neurosurgeon compensation from 2009 (redact compensation amounts and RVU numbers); (4) five internal Lee Health analyses of neurosurgeon compensation and production from 2012 (redact compensation amounts and RVU numbers); (5) certain neurosurgeon pay statements from 2010 and 2011 (redact compensation amounts); (6) a 2013 Lee Health internal audit report on

physician compensation methods drafted by Relator (redact six dollar amounts);[9] (7) nine Lee Health cardiologist compensation and production analyses from 2010 (redact compensation amounts and RVU numbers); (8) a 2011 Lee Health internal audit report on pulmonary critical care physician compensation (redact compensation amounts and RVU numbers); (9) two compensation and RVU valuation reports for pulmonologists from 2013 (redact compensation amounts and RVU numbers); and (10) a 2010 analysis of Lee Health's medical director's compensation (redact two dollar amounts reflecting compensation for marketing services in 2010). Doc. 73-1 at 72-90 (citing Docs. 1-1–1-16, 1-18–1-27, 1-29–1-31).

The exhibits in the Amended Complaint Lee Health seeks to re-seal and redact include (3), (7) (four of the nine analyses), (8), (9) and (10) above. *Id.* at 91-100; *see* Docs. 36-1–36-2, 36-19–36-22, 36-24, 36-37–36-38, 36-42. Lee Health also seeks to re-seal the following additional exhibits in the Amended Complaint and redact the following information from the exhibits: (1) four compensation amendments to employment agreements for neurosurgeons from 2010 (redact dollar amounts); (2) two 2013 internal analyses of compensation and production for neurosurgeons (redact compensation amounts); (3) 2014 analyses of physician compensation (redact six

---

[9] The Court finds this request notable as the audit report is highly detailed as to Lee Health's compensation arrangements with neurosurgeons, cardiologists, and pulmonologists—the physicians who are the focus of Relator's allegations in the Amended Complaint. *See* Doc. 1-16; Doc. 36 ¶¶ 61-62, 93, 108. The report includes a chart of over 25 physicians and lists their compensation amounts as percentages of the market rate median set by the Medical Group Management Association ("MGMA"). Doc. 1-16 at 4. Despite the wealth of information in the report, Lee Health seeks to redact only six dollar amounts representing actual compensation received by physicians. *See* Doc. 73-1 at 82; Doc. 1-16 at 7, 9-10.

dollar amounts); (4) four cardiologist employment agreements from 2010 (redact dollar amounts); (5) a 2013 pooled cardiology group compensation report with RVU analyses (redact compensation amounts and RVU numbers); (6) three pulmonologist employment agreements and five addendums to the agreements, from 2012 (redact certain compensation amounts and RVU numbers); (7) three compensation and RVU valuation reports for pulmonologists from 2013 (redact compensation amounts and RVU numbers); and (8) a 2009 Cancer Care Program employment agreement (redact two dollar amounts).   Doc. 73-1 at 91-100; *see* Docs. 36-3–36-9, 36-12–36-15, 36-17, 36-25–36-32, 36-34–36-36, 36-40.

### b.   Applicable standard[10]

The Eleventh Circuit has stated that the "commonly accepted criteria" for whether information constitutes "trade secrets" are: (1) whether the party claiming trade secret protection "consistently treated the information as closely guarded secrets[;]" (2) whether "the information represents substantial value" to the party; (3) whether the information would be valuable to the party's competitors; and (4)

---

[10]  In Lee Health's first emergency motion and Relator's response, both parties cited as the definition applicable to Lee Health's motion the definition of "trade secret" as amended by the Defend Trade Secrets Act of 2016 (which established a federal civil cause of action for trade secret misappropriation), 18 U.S.C. § 1839(3).  *See* Doc. 52 at 2; Doc. 59 at 5.   Because the parties agreed on the definition, the Court discussed the nature of the information at issue in its first Order—without making findings of fact—using that definition as a frame of reference.  *See* Doc. 71 at 10 n.7.   In Lee Health's second motion and Relator's response, the parties seem to disagree on the definition that should apply.   *Compare* Doc. 72 at 4-5 (citing 18 U.S.C. § 1839(3)) *with* Doc. 76 at 5 (citing Restatement (First) of Torts § 757 (1939)). Thus, to reconcile the parties' definitions, in making the findings of fact required by the Eleventh Circuit, the Court will apply the definition of "trade secret" used by the Eleventh Circuit in the context of a motion to seal.  *See Chicago Tribune*, 263 F.3d at 1304, 1311-15.

whether the information "derives its value by virtue of the effort of its creation and lack of dissemination." *See Chicago Tribune*, 263 F.3d at 1304.[11]

### c. Analysis

Lee Health argues the compensation numbers and methodologies in the Complaint, Amended Complaint and attached exhibits contain trade secret or otherwise proprietary information. Doc. 72 at 3, 5. Lee Health argues the data and methodologies are "subject to considerable measures for maintaining secrecy, and they derive independent economic value from being not generally known and not readily ascertainable by Lee Health's competitors." *Id.* (citation omitted). Lee Health claims the public cannot readily obtain the compensation data because of Lee Health's internal policies designed to prevent disclosure. *Id.* at 6. These include system-wide policies for responding to public records requests to protect employee financial information—because Lee Health is a public entity, it is subject to federal and state public records laws, and Lee Health's policy is to exempt compensation information from disclosure under the trade secret exemption to the relevant statutes. *Id.* (citation omitted). The compensation data derives independent economic value, according to Lee Health, because it is not readily ascertainable

---

[11] In *Chicago Tribune*, the defendant argued that the information at issue contained trade secrets because it met "all of the commonly accepted criteria" defining trade secrets. 263 F.3d at 1313. The Eleventh Circuit recited certain "commonly accepted criteria[,]" citing various definitions from multiple sources, without specifying whether the court provided the criteria as guidance to the district court in determining the applicable definition on remand based on the factual context of the case, or as instruction to the district court to apply those specific criteria as the definition on remand. *See id.* At least one other district court in the Eleventh Circuit, however, has applied the *Chicago Tribune* definition in a similar context. *See MSP Rec. Claims, Series LLC v. ACE Am. Ins. Co.*, No. 17-23749-CIV-SEITZ, 2017 WL 6622648, at *2 (S.D. Fla. Dec. 22, 2017).

through proper means; and although "Lee Health's competitors could theoretically contact each of its hundreds of employed physicians and ask them to voluntarily provide their individual salary information[,]" it is unlikely that a competitor would be able to collect the extensive data compiled by Lee Health. *Id.* at 7. Lee Health argues that "even if individual salary information were not protectable, the vast collection of data at issue here presents a circumstance where the whole is greater than the sum of its parts." *Id.* at 7-8. Lee Health notes again the difficulties it faces in physician recruitment and the value of the information to its competitors. *Id.* at 9.[12] Thus, Lee Health argues the information qualifies for trade secret protection, or, even if the information does not contain trade secrets, "it is clearly confidential and proprietary business information worthy of protections by this Court." *Id.*

Relator responds that Lee Health failed to "identify a single competitor" that could use this data to recruit away physicians and failed to explain how salary information from up to nine years ago could be of value to any competitor. Doc. 76 at 2. Relator argues the information does not qualify for trade secret protection because it consists mostly of salaries, which are not trade secrets "because they are limited in scope and application[,]" and the information is outdated and easily

---

[12] Lee Health notes that in their recruitment efforts, Lee Health and its competitors rely on survey data from MGMA that is available by region and based on figures from the previous year. Doc. 72 at 9 (citing Doc. 73-1 ¶ 19; Doc. 73-2 ¶ 4). Lee Health argues that the MGMA data, while valuable, "lacks the value of actual data from a particular competitor" and, importantly, "does not describe the methodology and computations" any competitor would use to arrive at compensation figures. *Id.* (citing Doc. 73-1 ¶ 19; Doc. 73-2 ¶ 4).

replicated. *Id.* at 5 (citations omitted). Relator argues a competitor could "easily" replicate the information Lee Health seeks to re-seal "by making calls to 3 or 4 physicians in a particular physician group, or meeting individually with the physicians." *Id.* at 7. Relator further argues Lee Health has openly published physician compensation information in the past, never identified the information as a "trade secret" to the physicians themselves, and does not require employee confidentiality agreements to safeguard the information. *Id.* at 9-10. Relator argues Lee Health and its competitors' reliance on MGMA data shows that Lee Health's compensation data lacks independent economic value because competitors can effectively find out what other hospitals are paying their physicians from the MGMA data. *Id.* at 12. Relator also notes that, contrary to Lee Health's assertion that no other competitor's compensation data is public, a lawsuit filed in 2009 disclosed similar compensation data of a competitor's physicians. *Id.* (citing *U.S. ex rel. Baklid-Kunz v. Halifax Health*, No. 6:09-cv-01002-GAP-TBS, 2011 WL 10885443 (M.D. Fla. Feb. 18, 2011)).

Lee Health replies that the lack of confidentiality agreements related to physicians' compensation does not preclude the compensation data's classification as trade secrets. Doc. 78 at 6. Lee Health claims it is irrelevant that Halifax Heath's compensation data was made available publicly in separate litigation because that "does nothing to undermine the fact that Lee Health's data has been subject to reasonable measures to maintain its secrecy and is unique to Lee Health and proprietary in nature." *Id.* at 6-7.

The Court has exhaustively reviewed the information Lee Health seeks to re-seal and redact in the Complaint, the Amended Complaint and attached exhibits, as well as the party's respective filings, including the factually detailed submissions from Lee Health. Upon a closer review of the relevant information, as well as the new information submitted by the parties, the Court finds that Lee Health's methodologies of calculating physician compensation and the specific compensation amounts for physicians and mid-level providers are "confidential and proprietary business information" that Lee Health seeks to protect. *See* Doc. 72 at 9. The Court further finds, however, that Lee Health has not shown that the information it seeks to re-seal—the compensation amounts themselves or the details of the compensation arrangements including methodologies—contains information that rises to the level of trade secrets, for the reasons discussed below.[13]

As to the compensation amounts, Lee Health consistently has treated the amounts at issue as closely guarded secrets. *See Chicago Tribune*, 263 F.3d at 1304. Lee Health has implemented system-wide policies to govern responses to public records requests asserting trade secret exemptions under the relevant state and federal disclosure laws, and the compensation data is available only to limited internal personnel "on a need-to-know basis." Doc. 72 at 6-7. It is not clear,

---

[13] Based on Lee Health's generalized description of the information contained in the exhibits to its first emergency motion, and without identifying the specific information sought to be redacted in each exhibit, it appeared much of the information would qualify for trade secret protection. *See* Doc. 71 at 13. Upon a review of Lee Health's second emergency motion and particularized descriptions of the information Lee Health seeks to redact in each exhibit, although a close question, the Court finds the information does not qualify for trade secret protection. *See* Docs. 72, 73-1.

however, that the information at issue represents substantial value to Lee Health or would be particularly valuable to Lee Health's competitors. *See Chicago Tribune*, 263 F.3d at 1304. The compensation amounts at issue are from most recently four years ago, and aside from the full roster of Lee Health physicians included as an exhibit with the Complaint, the compensation data covers only a limited number of doctors in a few different specialties. *See generally* Docs. 1, 36.

Further, although historical compensation data may be considered proprietary in nature, *Howard v. Hartford Life and Acc. Ins. Co.*, 275 F.R.D. 649, 651 (M.D. Fla. 2011), that does not necessarily mean it is properly classified as a trade secret. Competitors may be able to estimate the current compensation amounts, at least for Lee Health physicians in general, based on the publicly available MGMA reports. *See* Doc. 76 at 7, 13.[14] The data derives some value by virtue of its creation and lack of dissemination, but the data's value is lessened by its historical nature and the availability of other means of estimating physicians' compensation. *See Chicago Tribune*, 263 F.3d at 1304. Thus, the Court finds that although the compensation amounts Lee Health seeks to re-seal and redact contain confidential business information, they are not trade secrets.

Next, the compensation methodologies at issue generally consist of Lee Health's calculation of its physicians' compensation figures based on the RVUs of

---

[14] As noted above, Lee Health also does not seek to seal and redact a detailed report listing physicians' compensation amounts as percentages of the applicable year's MGMA medians. *See* Doc. 73-1 at 82; Doc. 1-16 at 4. A competitor would likely be able to calculate the actual compensation amounts using that information.

work performed by the physicians and the RVUs of work performed by non-physician "extenders." *See, e.g.,* Doc. 76 at 17. Lee Health's efforts in the first and second emergency motions to re-seal focus primarily on compensation amounts, but also request information relating to compensation methodologies be re-sealed. *See generally* Docs. 52, 72. It appears that the "methodology" at issue consists primarily of Lee Health's determinations of how to apply physician and non-physician extender RVUs to arrive at each physician's compensation, but Lee Health also argues that if competitors knew of their methodologies, they would be able to "identify potential areas . . . [to] . . . offer more attractive incentives." Doc. 72 at 10. This implies that Lee Health is also referring to information such as the employment agreements and addendums that list information regarding benefits and other incentives in physician employment packages. *See* Docs. 36-25–36-32.

As explained in its second emergency motion and as with the compensation data at issue, Lee Health does treat the methodology information as closely guarded secrets through policies governing responses to public records requests asserting trade secret exemptions under the relevant state and federal disclosure laws, and the methodology information is available only to limited internal personnel "on a need-to-know basis." *See* Doc. 72 at 6-7; *Chicago Tribune*, 263 F.3d at 1304. It it again unclear, however, that the specific information identified by Lee Health is, by itself, of substantial value to Lee Health or would be of particular value to its competitors. *See Chicago Tribune*, 263 F.3d at 1304. The employment agreements, for example, set forth the full details of the employment arrangement between certain physicians

and Lee Health, including the technical methodology used to calculate pay as well as all benefits and incentives offered to the physicians. *See, e.g.*, Doc. 36-25. Lee Health, however, does not seek to redact most of that information, and mostly seeks to redact only the specific compensation amounts. *See* Doc. 73-1 at 98. In one agreement, Lee Health seeks only to redact information in a chart including three compensation amounts and three RVU conversion factors, much of which can be found two paragraphs down on the same page of the agreement. *See* Doc. 36-25 at 11; Doc. 73-1 at 98. Competitors may be able to ascertain some of this information through contacting Lee Health's physicians, as well. *See* Doc. 76 at 7. Thus, although the Court finds that this information is proprietary in nature and unique to Lee Health, the second emergency motion does not show that the information is properly classified as trade secrets.

  ii.  *Lee Health's confidentiality interest versus the public's right of access*

   a.  Applicable standard

  The Eleventh Circuit has held that the common law right of access to judicial records, applicable to non-discovery materials such as dispositive motions and complaints, "may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'"[15] *Romero*, 480 F.3d at 1246 (quoting *Chicago Tribune*,

---

[15] Relator notes in her response that two other courts in the Eleventh Circuit have applied a "compelling governmental interest" standard to motions to seal certain dispositive documents. *See* Doc. 76 at 13 n.6; *MSP Rec. Claims*, 2017 WL 6622648 at *2 (complaint); *Bright v. Mental Health Resource Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) (FLSA settlement agreement). The Eleventh Circuit, however,

263 F.3d at 1309)). "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." *Id.* (quoting *Chicago Tribune*, 263 F.3d at 1315)). In balancing a party's interest in confidentiality and the public interest in accessing court records, courts consider several factors: (1) whether allowing access to the records would "impair court functions or harm legitimate privacy interests"; (2) "the degree of and likelihood of injury" if the information is made public; (3) the reliability of the information; (4) whether the other party will have an opportunity to respond to the information; (5) whether the information involves public officials or matters of public concern; and (6) whether a less onerous alternative to sealing court records is available. *Id.* (citing *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). The district court must conduct this balancing test even if the material sought to be sealed from public view is classified as trade secrets. *Chicago Tribune*, 263 F.3d at 1315; *see also Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, No. 17-23996-CV-SCOLA/TORRES, 2018 WL 4111216, at *3 (S.D. Fla. Aug. 29, 2018).

### b. Analysis

Lee Health argues that its interest in protecting its compensation data outweighs the public's interest in accessing the court records in the case. Doc. 72 at 10. Lee Health points to the study attached to Ms. Fay's affidavit finding that by 2025, Lee County "will have a deficit of 107% for general surgeons, 63% for

---

has never held that this is the standard. Thus, the Court will apply the "good cause" standard set forth in *Romero*. 480 F.3d at 1246 (applying good cause standard to sealing a motion for reconsideration and attached declarations).

pulmonologists, 34% for cardiologists, and 18% for neurologists." *Id.* (citing Doc. 73-1). Lee Health argues that "[b]idding wars and poaching situations occur even without the public disclosure of compensation data," but such disclosure will further encourage its competitors to engage in bidding wars. *Id.* at 11 (citation omitted). Thus, Lee Health argues "based on the volume of the compensation figures and methodologies at issue, the likelihood that some portion of the information will be used to the disadvantage of Lee Health is great" and that "[b]ased on the level of detail in the compensation and compensation structures, the degree of that injury will also be great." *Id.* This will in turn harm the public, according to Lee Health, because it will impact its ability to recruit doctors and serve the community. *Id.* Lee Health also argues that the information in the Complaint irrelevant to the allegations in the Amended Complaint should be re-sealed because there is no public interest in accessing it, including the ED physician compensation data and the full roster of Lee Health physicians and their salaries. *Id.* at 14-15.

Relator responds the public's interest in accessing the court records outweighs Lee Health's interest in sealing the documents, and thus Lee Health has failed to show good cause to re-seal the information. Doc. 76 at 14-15. Relator argues that Lee Health's interest in sealing the documents is "speculative at best[,]" noting that Lee Health "hypothesizes" that the "limited salary data for some physicians contained in the Amended Complaint from 2011 through 2014 will put [Lee Health] at a competitive disadvantage if it remains public because in **2025** (seven years from now) there will allegedly be a shortage of doctors in some specialty areas[.]" *Id.* at 15

(emphasis in original).    She argues that if the Court seals the information requested

by Lee Health the public's understanding of the Court's resolution of the issues in the

case will be impaired, as "virtually every motion filed in the case will have to be sealed

because it will inevitably contain a reference to either the data set forth in the

Amended Complaint or the methodology used by Lee Health to inflate the specialists'

compensation."    *Id.* at 16.

Relator continues that the public will be harmed more significantly if the

information is sealed than if it remains public because the compensation data and

methodologies are central to the allegations in the Amended Complaint, and because

Lee Health is a public entity with an elected board of directors.    *Id.*    Finally, she

asserts Lee Health's effort to seal the compensation methodology information is

"particularly egregious" because "the methodology used to pay these highly

compensated specialists is at the heart of the allegations in this case; namely, that

Lee Health improperly credits specialists based on the RVUs of mid-level providers,

not just the doctor's own RVUs, to compensate the specialists" in violation of the Stark

Law, causing increased costs to Medicare and Medicaid.    *Id.* at 17.    Relator

proposes as a compromise, however, "to reseal the original complaint and all the

exhibits thereto[,]" which would remove all information relating to physicians whose

information is no longer relevant to the litigation.    *Id.* at 3.

Lee Health, in its reply, states that it "agrees with Relator's proposal to seal

the entire original complaint and exhibits" but that the more reasonable alternative

is for the Court to seal the un-redacted versions and allow Relator to re-file redacted

versions. Doc. 78 at 1-2. Lee Health argues, however, that it has met its burden of establishing good cause as to all the information requested to be redacted, and that its interest outweighs the public's interest in accessing the information "because of the limited scope of its redactions." *Id.* at 8. Lee Health asserts that none of the redactions "will limit the public's ability to understand the fraud allegations (which are extremely complicated anyway), or will hide any of the Relator's claims" and thus that the impact on the public's interest is minimal. *Id.*

The Court finds Lee Health has met its burden to show good cause to seal the information in the Complaint and attached exhibits, but has failed to meet its burden as to the Amended Complaint and exhibits attached thereto. First, there is no indication that that either allowing access to, or temporarily sealing and redacting, the Complaint and attached exhibits would impair court functions. *See Romero*, 480 F.3d at 1246. Lee Health also will not be given an opportunity to respond to the Complaint and attached exhibits as the Amended Complaint is now the operative pleading. *See id.*; Docs. 1, 36. Importantly, there are significant privacy interests at stake in the context of the Complaint and attached exhibits. Many of the individuals named in the exhibits to the Complaint and portions of the Complaint are no longer involved in the litigation, and their compensation is irrelevant to the allegations in the Amended Complaint—including the full roster of Lee Health physicians and the ED physicians. *See, e.g.,* Docs. 1-1–1-6; *Romero*, 480 F.3d at 1246. The public's interest in accessing the information is lessened here also, because the Complaint is no longer the operative pleading in the case. Thus, the

Court finds Lee Health has shown good cause to re-seal and redact the information in the Complaint and attached exhibits as the privacy interests outweigh the public's interest in accessing the information.

As to the Amended Complaint and attached exhibits, there is no indication that allowing access to the court records would impair court functions; however, sealing portions of the Amended Complaint and attached exhibits may in fact impair court functions. *See Romero*, 480 F.3d at 1246; *In re: Photochromic Lens Antitrust Litigation*, No. 8:10-MD-2173-T27EAJ, 2011 WL 13141945, at *2 (M.D. Fla. June 9, 2011) ("Partly sealed complaints inevitably invite partly sealed dispositive motions and responses . . . [a] docket riddled with partly sealed filings poses a further obstacle to the public's understanding of the issues and how the Court resolves them. For this reason too, a more specific demonstration is required that disclosure of the matters proposed to be sealed may result in significant injury"). Also, Lee Health has not sufficiently shown the "degree of and likelihood" of injury to its recruiting efforts to justify sealing the information related to the Amended Complaint; specifically, Lee Health has failed to connect the compensation data from four to nine years ago to more than a speculative concern that competitors might use some of the information to attempt to recruit away its doctors. *See Romero*, 480 F.3d at 1246; Doc. 72 at 11; *3376 Lake Shore, LLC v. Lamb's Yacht Center, Inc.*, No. 3:14-CV-632-J-34PDB, 2014 WL 12621574, at *2 (M.D. Fla. Aug. 25, 2014) ("The potential harm identified by the plaintiff is speculative and thus insufficient to outweigh the right to public access").

Further, neither party argues the information is unreliable, and Lee Health will be given an opportunity to respond to the Amended Complaint. *See* Doc. 72 at 12; *Romero*, 480 F.3d at 1246. There are privacy interests at stake, but the interests are lessened in the context of the Amended Complaint, as the individuals affected are the focus of the litigation and Relator's fraud allegations. *See Romero* 480 F.3d at 1246. Moreover, although Lee Health requests that Relator re-file the Amended Complaint and exhibits with redactions, Lee Health is seeking to redact information that is important to the case and found throughout the Amended Complaint and exhibits. Thus, Lee Health is essentially requesting a partial sealing of the Amended Complaint. *See In re: Photochromic Lens Antitrust Litigation*, 2011 WL 13141945 at *2. The information also concerns public officials and public concerns, as the public has a legitimate interest in the operation of its health care facilities and Lee Health is a public entity. *See Romero*, 480 F.3d at 1246; Doc. 76 at 17. Additionally, the public has a legitimate "health and safety" interest in the details of alleged public healthcare fraud, as in this case, because patients must be confident that their physicians are making decisions regarding treatment based on the patient's medical needs, and not on improper financial considerations. *See Chicago Tribune*, 263 F.3d at 1315; Doc. 36 at ¶ 4.

"[T]he presumption in favor of public access to court filings is especially strong where . . . the filings involve matters of particular concern to the public, such as allegations of fraud against the government." *U.S. ex rel. Permison v. Superlative Technologies, Inc.*, 492 F. Supp. 2d 561 (E.D. Va. 2007) (citing *Smith v. United States*

*District Court for Southern Dist.*, 956 F.2d 647, 650 (7th Cir. 1992)); *see also U.S. v. King Pharmaceuticals, Inc.*, 806 F. Supp. 2d 833, 840 (D. Md. 2011) ("By definition, an FCA complaint alleges a fraud upon the public"). Here, the information regarding the compensation amounts paid to the physicians and the methodologies used to calculate the physicians' compensation (including the role of non-physician "extender" compensation and RVUs) are the primary focus of Relator's FCA allegations in the Amended Complaint. *See, e.g.,* Doc. 36 ¶¶ 56, 58-115. The Court finds that Lee Health has failed to show why its privacy interests in keeping the information in the Amended Complaint and attached exhibits confidential outweigh the public's legitimate interests "in understanding the judicial process, detecting fraud against the government, protecting health and safety from improper medical decision-making, and overseeing a public health care system with a publicly elected Board of Directors." *See* Doc. 76-2 at 7 (citation omitted).

Thus, the Court finds Lee Health has not shown good cause to re-seal the Amended Complaint and attached exhibits. The Court finds, however, that Lee Health has shown good cause to temporarily re-seal the identified portions of the Complaint and attached exhibits, as much of the information is irrelevant to the allegations in the Amended Complaint and harms the privacy interests of physicians and other employees not involved in the litigation. The Court is not inclined to re-seal the entire documents, though, despite the parties' mutual assent. *See* Doc. 76 at 3; Doc. 78 at 1; *NXP B.V. v. Blackberry Limited*, No. 6:12-cv-498-Orl-YK-TBS, 2014 WL 12622459, at *2 (M.D. Fla. Mar. 17, 2014) (quoting *Brown v. Advantage Eng'g,*

960 F.2d 1013, 1016 (11th Cir. 1992)) ("The parties' agreement to seal court documents is 'immaterial' to the public's right of access"); *U.S. ex rel. Permison*, 492 F. Supp. 2d at 562-65 (denying relator's motion to re-seal complaint in FCA case after government declined intervention and relator voluntarily dismissed the case, due to public's interest in accessing court records). Thus, the Court will direct the Clerk to re-seal the documents and Relator to re-file after redacting the information identified in Ms. Fay's affidavit.[16]  *See* Doc. 73-1 at 72-90.

ACCORDINGLY, it is

**ORDERED:**

1.      Defendant's Second Emergency Motion to Re-Seal Certain Exhibits and Related Portions of Relator's Initial Complaint and First Amended Complaint With Incorporated Memorandum of Law (Doc. 72) is **GRANTED in part and DENIED in part**.

2.      The Clerk is directed to **re-seal the Complaint (Doc. 1) and attached exhibits (Docs. 1-1–1-31)**.  All other documents unsealed by the Court's August 27, 2018 Order (Doc. 50), including the Amended Complaint (Doc. 36) and attached exhibits (Docs. 36-1–36-42) shall remain unsealed and un-redacted.

---

[16] The Court notes that some portions of the Complaint and attached exhibits are found in both the Complaint and the Amended Complaint.  For the sake of expediency and to prevent confusion, however, the Court will direct the Clerk to re-seal the Complaint and all attached exhibits and direct Relator to make all the redactions requested in Ms. Fay's affidavit before re-filing the Complaint and attached exhibits.  *See* Doc. 73-1 at 72-90.  The Amended Complaint and all attached exhibits shall remain unsealed and un-redacted in their entirety.

3.      Relator is directed to re-file the Complaint and attached exhibits with the redactions requested in Lee Health's affidavit on or before **November 15, 2018**. *See* Doc. 73-1 at 72-90.

**DONE** and **ORDERED** in Fort Myers, Florida on this 16th day of October, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record