UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA and
ANGELA D'ANNA, ex rel

        Plaintiffs,

v.                           Case No:  2:14-cv-437-FtM-38CM

LEE MEMORIAL HEALTH SYSTEM,

        Defendant.

_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Lee Memorial Health System's Motion to Dismiss. (Doc. 86).  Relator Angela D'Anna filed a Response in Opposition (Doc. 101), and Lee Health filed a Reply (Doc. 104).  For the following reasons, the Court grants the Motion to Dismiss.

## **BACKGROUND**

Lee Health is a "special purpose unit of local government created by the Florida Legislature to operate, control and maintain a public hospital and other hospital facilities in Lee County, Florida."  (Doc. 36 at 6).  Lee Health operates several hospitals and other

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

healthcare facilities around the county. (Doc. 36 at 6). As a large healthcare system, Lee Health annually receives Medicare and Medicaid dollars. (Doc. 36 at 6).[2]

Relator was the System Director of Internal Audit at Lee Health for about eleven years until she voluntarily resigned. (Doc. 36 at 5). During her employment, D'Anna "audited physician compensation issues" at Lee Health and allegedly "reported compliance deficiencies of increasing severity to senior management throughout her tenure." (Doc. 36 at 5). D'Anna claims to have been a "corporate insider who became aware of [Lee Health's] fraud but did not have the authority or power to stop" it. (Doc. 36 at 5).

D'Anna filed a sealed complaint against Lee Memorial under the False Claims Act ("FCA"). (Doc. 1). Because this is a *qui tam* action under the FCA, the Government investigated the complaint for several years. During that time, D'Anna amended her pleading to the three-count Amended Complaint challenged here. (Doc. 36). Eventually, the Government declined to intervene (Doc. 48), allowing D'Anna to proceed in its name, 31 U.S.C. § 3730(c)(3) (2018). Then, this Court lifted the seal. (Doc. 50).

The FCA allegations are predicated upon the submission of false Medicare claims. (Doc. 36 at 1). D'Anna alleges that Lee Health's compensation agreements with certain specialist doctors and a medical director violated the Stark Law, 42 U.S.C. § 1395nn (2018). (Doc. 36 at 15, 24, 31, 36). Lee Health allegedly funneled Stark-prohibited referral fees and financial incentives to these doctors through the compensation agreements, which exceeded fair market value and were "commercially unreasonable in

---

[2] For these purposes, there is no meaningful distinction between Medicare and Medicaid; thus, Medicare is used as a shorthand here.

the absence of referrals." (Doc. 36 at 2). Lee Health broke the Stark Law, according to D'Anna, when it knowingly submitted false Medicare claims related to referrals from the doctors in violation of the FCA. (Doc. 36 at 2-3). These alleged false claims related to "designated health services" under the Stark Law, including facility fees for inpatient and outpatient hospital services. (Doc. 36 at 23, 30, 36). After doing so, D'Anna asserts that Lee Health made false statements to the Government by fraudulently certifying compliance with the Stark Law. (Doc. 36 at 11-13). Based on those purported false claims, Lee Health unlawfully and knowingly retained overpayments it had to return to the Government. (Doc. 36 at 4).

The Amended Complaint details a purportedly unlawful compensation scheme from 2005 to 2014. (Doc. 36 at 14). The doctors at issue—neurologists, cardiologists, pulmonologists, and a medical director—were Lee Health employees. (Doc. 36 at 2-3). According to D'Anna, the financial incentives provided to the identified doctors follow: (1) compensation for personally performed services with increasing rates based on total annual work Relative Value Units ("wRVUs"); (2) compensation for services performed by Lee Health's extenders (such as nurse practitioners or physicians assistants), where extender wRVUs were credited to the doctors without reflecting the lower rate for extenders; (3) bonus pools for extender production not already included in the doctors' salaries through wRVUs; (4) payment for on-call coverage on top of compensation for services performed while on-call; and (5) payments to medical directors. (Doc. 36 at 2). In short, D'Anna contends that the doctors earned greater compensation with each of their referrals to Lee Health. (Doc. 36 at 3). Finally, D'Anna argues that none of the Stark exceptions exist. (Doc. 36 at 3-4).

**RELEVANT LAW**

**A. Standard of Review**

Upon a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and construe[s] them along with the reasonable inferences therefrom in the relator's favor." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

An FCA relator must satisfy both the Rule 8 and Rule 9(b) pleading standards. *Id. at 1051*. Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Whereas Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this heightened FCA pleading standard, the relator generally must "allege 'facts as to time, place, and substance of the defendant's alleged fraud,' particularly, 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Urquilla-Diaz*, 780 F.3d at 1051 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309 (11th Cir. 2002)).

**B. The Stark Law**

Underlying this entire FCA dispute are alleged violations of the Stark Law. *See United States ex rel. Bingham v. BayCare Health Sys.*, No. 8:14-cv-00073, 2016 WL 8739056, at *2 (M.D. Fla. Dec. 16, 2016) ("A violation of either the Stark Law or the Anti-Kickback Statute can form the basis of liability under the [FCA]."). The Stark Law does not allow for a private cause of action. *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d

518, 522 (11th Cir. 2015). So D'Anna and other relators bring *qui tam* actions under the FCA based on Stark violations. *See United States ex rel. Osheroff v. Tenet Healthcare Corp.* (*Osheroff I*), No. 9-22253-CIV, 2013 WL 1289260, at *1 (S.D. Fla. Mar. 27, 2013).

At its most basic, the Stark Law "prohibits doctors from referring Medicare patients to a hospital if those doctors have certain specified types of 'financial relationships' with that hospital." *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 698 (11th Cir. 2014) (quoting 42 U.S.C. § 1395nn(a)(1)(A)). A "financial relationship" under the Stark Law includes compensation arrangements between doctors and hospitals. 42 U.S.C. § 1395nn(a)(2)(B). If a claim violates the anti-referral provision then the hospital cannot present the claim to Medicare for reimbursement. 42 U.S.C. § 1395nn(a)(1)(B). Referrals are defined broadly under the Stark Law and corresponding regulations as a doctor's request of, or order for, designated health services payable under Medicare. *See* 42 U.S.C. § 1395nn(h)(5)(A); 42 C.F.R. § 411.351 (2018). Designated health services include inpatient and outpatient hospital services. 42 U.S.C. § 1395nn(h)(6)(K). Yet certain referrals, such as those personally performed by the referring doctor, are allowed under the Stark Law. 42 C.F.R. § 411.351.

Certain compensation arrangements are exempted from the Stark Law's prohibition. For instance, bona fide employment relationships and personal service arrangements are not financial relationships that preclude referrals. 42 U.S.C. § 1395nn(e)(2)-(3). To meet those exceptions, a compensation agreement must be for "fair market value" without considering "the volume or value of any referrals," among other requirements. *Id.*

**C. The FCA**

At bottom, the FCA enables private individuals to sue those who filed false claims for payment with the Government. 31 U.S.C. §§ 3729(a), 3730(b) (2018). "Liability under the [FCA] arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). It is not enough for a relator to "describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311. Rather, "some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *Id.*

D'Anna raises three FCA claims. First, D'Anna alleges an FCA presentment claim under 31 U.S.C. § 3729(a)(1)(A), previously 31 U.S.C. § 3729(a)(1) (2008). (Doc. 36 at 39). Under a presentment claim, a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" violates the FCA. 31 U.S.C. § 3729(a)(1)(A). Second, D'Anna pleads an FCA make or use claim under 31 U.S.C. § 3729(a)(1)(B), previously 31 U.S.C. § 3729(a)(2) (2008). (Doc. 36 at 40). That provision creates FCA liability when someone "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). Finally, D'Anna brings a reverse false claim under 31 U.S.C. § 3729(a)(1)(G), previously 31 U.S.C. § 3729(a)(7) (2008). (Doc. 36 at 41). A reverse false claim occurs when a person "knowingly makes, uses, or causes to be made or used,

a false record or statement material to an obligation to pay or transmit money to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

       *4. The 2009 FCA Amendments*

       In 2009, Congress amended the three relevant FCA provisions. Fraud Enforcement and Recovery Act, Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1621-25 (2009). The alleged conduct occurred before and after the amendment, and the Amended Complaint cited both the pre- and post-amendment statutes. (Doc. 36 at 39-41). Regardless, under either version of the statutes, the submission of a false claim is the "*sine qua non* of a [FCA] violation." *Clausen*, 290 F.3d at 1311 (interpreting the pre-amendment statutes); *see United States ex rel. Chase v. HPC Healthcare, Inc.*, 723 F. App'x 783, 789 (11th Cir. 2018) (interpreting the post-amendment statutes). The parties did not brief how these amendments impact the case. However, because D'Anna fails to plead the submission of a false claim or false statement with particularity—as detailed below—the Amended Complaint is insufficient under either statute. *See, e.g.*, *Chase*, 723 F. App'x at 789 ("[U]nless a relator alleges with particularity that false claims were actually submitted to the government, our precedent holds that dismissal is proper.").

## DISCUSSION

### A. Motion to Dismiss Under Rule 12(b)(6)

       The Court addresses each of the three FCA claims below. Because both the presentment and make or use claims fail for a lack of particularity regarding the submission of false claims and false statements, they are addressed together. *See, e.g.*,

*United States ex rel. Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009) ("Improper practices standing alone are insufficient to state a claim under either § 3729(a)(1)[(A)] or [(B)] absent allegations that a specific fraudulent claim was in fact submitted to the government."); *United States ex rel. Klusmeier v. Bell Constructors, Inc.*, 469 F. App'x 718, 721 n.5 (11th Cir. 2012).

### 1. *The Presentment and Make or Use Claims*

In general, D'Anna alleges that Lee Health entered into unlawful compensation agreements with various doctors, then it submitted false Medicare claims for designated health services referred to Lee Health by those doctors. And Lee Health allegedly made false statements when it certified compliance with the Stark Law. Lee Health contends that the Amended Complaint insufficiently pleads the submission of any claims for Medicare payment based on prohibited referrals and false statements. Lee Health is correct.

"To establish a [presentment] cause of action under § 3729(a)(1)(A), a relator must prove three elements: (1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with the knowledge that the claim was false." *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017). "To prove a [make or use] claim under § 3729(a)(1)(B), a relator must show that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." *Id.* "Because the submission of an actual claim to the government for payment is 'the *sine qua non*' of an FCA violation, *Clausen*, 290 F.3d at 1311, a plaintiff-relator must 'plead the submission of a false claim with particularity,' *United States ex rel. Matheny v. Medco Health* [*Sols.*]

*Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012)." *Mastej*, 591 F. App'x at 703. "To do so, 'a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result.'" *Id.* at 703-04 (quoting *Matheny*, 671 F.3d at 1225). "The key inquiry is whether the complaint includes 'some indicia of reliability' to support the allegation that an actual false claim was submitted." *Chase*, 723 F. App'x at 789 (quoting *Clausen*, 290 F.3d at 1311). "One way to satisfy this requirement is by alleging the details of false claims by providing specific billing information—such as dates, times, and amounts of actual false claims or copies of bills." *Id.* (citing *Hopper*, 588 F.3d at 1326).

Here, the Amended Complaint details the compensation arrangements: it identifies several doctors by name along with their compensation scheme and wRVUs; it provides internal and external audit reports indicating that the doctors compensation exceeded fair market value; it alleges that extenders wRVUs were added to the doctors' compensation at inflated rates; it avers that doctors billed for services performed solely by extenders; it notes that Lee Health provided one extender to the cardiologists at no cost to the doctors; it explains that on-call doctors were paid for coverage and the services performed while on-call; it contends that doctors received improper compensation for extender supervision and medical directorships; and it asserts that D'Anna communicated these compensation issues to senior management at Lee Health. (Doc. 36). But in all its pleading, the Amended Complaint never identifies any submitted Medicare claims. *See, e.g., Clausen*, 290 F.3d at 1312 ("[A relator's] failure to allege with any specificity if—or when—any actual improper claims were submitted to the Government is indeed fatal to his

9

complaints."). Most of D'Anna's assertions boil down to conclusory allegations that Lee Health must be engaging in an unlawful referral scheme and, therefore, submitting false claims because the doctors' compensation "is commercially unreasonable in the absence of referrals." (Doc. 36 at 23, 30, 36). Without more, however, the Court can only speculate that unlawful referrals occurred, Lee Health submitted corresponding Medicare claims to the Government, and Lee Health made false statements through compliance certifications. But this Court cannot engage in that conjectural endeavor. *E.g., Clausen, 290 F.3d at 1311* ("[An FCA] plaintiff [cannot simply allege that false claims] must have been submitted, were likely submitted or should have been submitted to the Government."); *Hopper, 588 F.3d at 1326-27; United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1359-60 (11th Cir. 2006)* ("The particularity requirement of Rule 9 is a nullity if [relator] gets a ticket to the discovery process without identifying a single claim." (citation omitted)); *Chase, 723 F. App'x at 790; Mastej, 591 F. App'x at 706.* By failing to plead the submission of false Medicare claims and false compliance certification beyond conclusory allegations, the Amended Complaint fails to plead FCA claims with the particularity required by Rule 9(b). *See Chase, 723 F. App'x at 789* ("[Relator] failed to satisfy Rule 9(b) with her conclusory allegations that false claims were submitted as a result of th[e] scheme."); *cf. Matheny, 671 F.3d at 1224-26* (holding that relator plead compliance certification with particularity by identifying the specific documents and statements alleged to be false, along with who made them, how they were used, and when they were submitted).

In two instances, D'Anna tries to detail the submission of false claims. But both efforts fall short of the particularized pleading required for an FCA claim.

First, the Amended Complaint pleaded that a neurologist made two referrals to Lee Health, resulting in the submission of false claims. (Doc. 36 at 23). An attached exhibit purported to show these false claims. (Doc. 36-11). However, the exhibit merely lists two redacted Medicare patients, the date of the surgery, the neurologist as their surgeon, his surgical assistant, and billing codes for the procedures. (Doc. 36-11). The document appears to be a billing spreadsheet, but the Amended Complaint provides no description except calling it a "sample of actual Medicare claims made by Lee [Health] on prohibited referrals from the Neurosurgeons." (Doc. 36 at 23). In her Response, D'Anna clarified that this exhibit is "an excerpt of a spreadsheet prepared by a consultant that Internal Audit Services engaged to examine inpatient and outpatient medical records coding for Neurosurgery patients at Lee [Health]." (Doc. 101 at 11). Regardless of the document's true nature, this exhibit is neither a Medicare interim claim form (UB-04 or UB-92 forms) nor a Medicare hospital cost report (CMS-2552 or CMS-1500 forms), which are the forms used by hospitals to submit Medicare claims and certify compliance with the Stark Law. *See Mastej*, 591 F. App'x at 708 (noting that claim forms are crucial to certain FCA claims, but at least some identifying information is required in others). And there is nothing to suggest that the claims identified in the spreadsheet were submitted to Medicare for reimbursement. Quite simply, the exhibit does not reveal the actual submission of claims or false certifications to the Government. *See Clausen*, 290 F.3d at 1312 (rejecting an FCA complaint for failing to identify the submission of a false claim). At best, the document may demonstrate that a neurologist unlawfully referred two patients to Lee Health in violation of the Stark Law; yet this alone would not create FCA liability. *Corsello*, 428 F.3d at 1012 ("Liability under the [FCA] arises from the submission of a fraudulent

11

claim to the government, not the disregard of government regulations or failure to maintain proper internal policies."); *see also Atkins*, 470 F.3d at 1359; *Mastej*, 591 F. App'x at 706; *Klusmeier*, 469 F. App'x at 721. As Lee Health contends, this exhibit does not plead the *submission* of false claims with particularity. Thus, it is not a particular pleading of an FCA violation.[3]

Second, D'Anna attached several exhibits to the Amended Complaint that reflected Lee Health's total facility fee billing to Medicare for certain surgeries or procedures. (Doc. 36-10, 36-23, 36-39). Yet there is no identifying claim information in those exhibits that satisfies the particularity requirement of Rule 9(b). The exhibits simply reflect the raw number of specific procedures performed at Lee Health hospitals in certain years for which Medicare made a payment. Nothing indicates which doctors performed the surgeries, who the patients were, what doctor made the referral, when the false claims and procedures occurred, or how many of the total claims were false. Simply put, these exhibits fail to demonstrate "the who, what, where, when, and how of fraudulent submissions to the government." *Corsello*, 428 F.3d at 1014 (internal quotation marks omitted) (affirming the dismissal of an FCA complaint because the relator "provided the who, what, where, and how of improper practices," but not of false claims (internal quotation marks omitted)). Perhaps a false claim is among that raw data; but this Court cannot assume that essential fact given the particularity required under Rule 9(b). *See*

---

[3] D'Anna argues that the Court must accept as true the allegation that this exhibit demonstrates false Medicare claims. (Doc. 101 at 17). But she is mistaken. It is well established that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016). On its face, the exhibit does not show that Lee Health actually submitted false Medicare claims.

*Clausen*, 290 F.3d at 1312 n.21 ("We cannot make assumptions about a [FCA] defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)."). Thus, these exhibits do not plead an FCA violation with particularity.

Because neither exhibit supports D'Anna's general allegations of the submission of false claims or false statements, the Amended Complaint is left with bare assertions that Lee Health submitted false Medicare claims and statements. In short, the Amended Complaint "does little more than hazard a guess" that Lee Health submitted false Medicare claims and made false statements. *Hopper*, 588 F.3d at 1326. And that is not enough to satisfy the particularity required by Rule 9(b). *E.g.*, *Corsello*, 428 F.3d at 1013 ("[W]e decline to make inferences about the submission of fraudulent claims because such an assumption would 'strip[ ] all meaning from Rule 9(b)'s requirements of specificity.'" (quoting *Clausen*, 290 F.3d at 1312 n. 21)); *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1275 (11th Cir. 2018); *Atkins*, 470 F.3d at 1358.[4]

Not only has D'Anna failed to allege the submission of false claims—the *sine qua non* of an FCA claim—the Amended Complaint fails to identify referrals. To prove the underlying violations of the Stark Law, a relator must demonstrate unlawful referrals. 42 U.S.C. § 1395nn(a)(1); *United States ex rel. Bingham v. BayCare Health Sys.*, No. 8:14-cv-00073, 2015 WL 4878456, at *5 (M.D. Fla. Aug. 14, 2015). D'Anna almost exclusively relies on conclusory allegations that Lee Health received referrals from the doctors and submitted false claims for those referrals. Yet the unsupported assertion that "Lee

---

[4] It is worth noting that the allegations get more attenuated as the Amended Complaint wears on. For example, the claims and assertions against the neurologists are simply insufficient (Doc. 36 at 15-24); whereas the allegations against the medical director are factually devoid of support (Doc. 36 at 36-39).

[Health] billed Medicare and Medicaid tens of millions of dollars for designated health services . . . referred by the [doctors]," (Doc. 36 at 23, 30, 36), cannot establish that unlawful referrals occurred. *Mastej* provided helpful guidance:

> It is the *submission* and *payment* of a *false* Medicare *claim* and false certification of compliance with the law that creates FCA liability. And the [d]efendants' interim claims were not false *unless* those claims submitted or presented were for Medicare patients who had been (1) *referred by one of the ten doctors* and (2) treated by the [d]efendants.

591 F. App'x at 706 (emphasis in original). Although D'Anna argues that the neurologist referral exhibit addressed above identifies two referrals, she fails to explain how listing a surgeon here automatically makes that doctor the referring doctor for the purposes of Stark. Aside from the lack of particularity in billing to establish an FCA claim, D'Anna also fails to allege the Stark violations with any particularity. *See id.*; *United States ex rel. Osheroff v. Tenet Healthcare Corp.* (*Osheroff II*), No. 09-22253-CIV, 2012 WL 2871264, at *7 (S.D. Fla. July 12, 2012) ("Relator, in any event, will still be required to plead facts with particularity showing a violation of Stark.").

Concluding that D'Anna failed to plead specific billing or claim detail with particularity does not end the Court's inquiry. *E.g.*, *Mastej*, 591 F. App'x at 707. "[T]here is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim." *Id.* at 704 (citing *Clausen*, 290 F.3d at 1312 & n.21). Other means are available for relators to demonstrate indicia of reliability, such as "direct, first-hand knowledge of the defendants' submission of false claims." *Id.* (citing *United States ex rel. Walker v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005)); *see Chase*, 723 F. App'x at 789. In such cases, courts apply a "nuanced, case-by-case approach" to determine whether a relator knew about a defendant's billing practices or

the submission of fraudulent claims. *Mastej*, 591 F. App'x at 704. To make the requisite indicia of reliability showing, a relator may demonstrate that "he personally was in a position to know that actual false claims were submitted to the government and had a factual basis for his alleged personal knowledge." *Id.* at 707. There is no bright-line rule for courts to apply. *Id.* at 708. But "[a]t a minimum, a plaintiff-relator must explain the basis for her assertion that fraudulent claims were actually submitted." *Id.* at 704 (citing *Corsello*, 428 F.3d at 1013-14). "[T]he basis of this direct knowledge must be plead with particularity." *Chase*, 723 F. App'x at 789 (citing *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302-03 & n.4 (11th Cir. 2010)).

Yet—even under this relaxed FCA pleading standard—D'Anna fails to provide sufficient indicia to demonstrate reliability. In the Amended Complaint, D'Anna asserted that she was the "System Director of Internal Audit" at Lee Health for over ten years. (Doc. 36 at 5). Her responsibilities in that position included auditing doctor compensation and reporting compliance deficiencies to Lee Health management. (Doc. 36 at 5). Through her work, D'Anna alleged that she uncovered Lee Health's unlawful pay-for-play referral scheme. Without more, however, the Amended Complaint fails to provide indicia of reliability "to support the allegation of *an actual false claim* for payment being made to the Government." *Clausen*, 290 F.3d at 1311. There is no indication in the Amended Complaint that D'Anna knew of Lee Health's billing or referral practices. *Cf. Walker*, 433 F.3d at 1360 (holding that relator showed indicia of reliability because she spoke with the billing department about submitting false billing codes for services). Nowhere in the Amended Complaint is there even an attempt to explain how an auditor of "physician compensation issues" knew about Lee Health's billing department. (Doc. 36 at 5).

Likewise, nothing in the Amended Complaint suggests that D'Anna ever had access to billing documents or Medicare claims. *See Jallali v. Sun Healthcare Grp.*, 667 F. App'x 745, 746 (11th Cir. 2016) (holding that even pleading to be "privy to the internal billing practices" and having "a reliable indication that claims were fraudulently submitted" did not plead FCA claims with particularity). Instead, much of the Amended Complaint relies on D'Anna's conclusion that the compensation agreements were "not commercially reasonable in the absence of referrals." Leaving aside the fact that the Amended Complaint never tries to support that conclusion, D'Anna does not explain how this purported finding ameliorates her lack of pleading the actual submission of false claims and false statements. Put another way, even if D'Anna's assertions about commercial reasonableness are correct, she identifies no "basis of her knowledge of [Lee Health's] fraudulent billing practices," *Chase*, 723 F. App'x at 790, or false statements.

In other cases, courts excused the lack of pleading specific billing details. But the relators there pleaded sufficient facts for courts to conclude that they were "in a position to know that actual false claims were submitted to the government and had a factual basis for [their] alleged personal knowledge." *Mastej*, 591 F. App'x at 707. For instance, in *Mastej*, the relator was a hospital's former senior manager and CEO who pleaded that he sat in on meetings where Medicare patients and billing were discussed. *Id.* And the relator alleged access to billing data during his employment, including familiarity with the hospital's revenue and payor mix. *Id.* at 707-08. Importantly, as CEO, the relator specifically alleged to speaking with another executive about engaging in the unlawful compensation scheme in exchange for doctor referrals. *Id.* at 707. None of those facts are present here. Contrary to her argument, D'Anna pleaded nothing that the Court could

rely on to conclude that she knew anything about the submission of false claims or statements. The other cases to which D'Anna directs the Court are non-binding and similarly distinguishable. *United States ex rel. Bingham v. HCA, Inc.*, No. 13-23671-Civ, 2016 WL 344887 (S.D. Fla. Jan. 28, 2016) (pleading the specific number of each doctor's Medicare referrals along with a detailed scheme where a defendant shared profits and leased space to doctors at a discount based on those referrals); *Osheroff II*, 2012 WL 2871264 (noting that relator provided an exhibit with thousands of sample claims).

For those reasons, the Amended Complaint fails to plead the presentment and make or use claims with particularity as required by Rule 9(b). And those claims are dismissed without prejudice.

### 2. The Reverse False Claim

D'Anna's final assertion is a reverse false claim. "[T]o establish a reverse false claim cause of action, a relator must show that the defendant owed a definite and clear 'obligation to pay money to the United States at the time of the allegedly false statements.'" *United States ex rel. Parker v. Space Coast Med. Assocs., LLP*, 94 F. Supp. 3d 1250, 1263 (M.D. Fla. Feb. 6, 2015) (quoting *Matheny*, 671 F.3d at 1223); *see* 31 U.S.C. § 3729(a)(1)(G). According to D'Anna, this claim is in the alternative to the other FCA claims, but both turn on the same allegedly false claims. (Doc. 101 at 25). In part, Lee Health contends that the Amended Complaint failed to allege an obligation to repay the Government. (Doc. 86 at 21-22). D'Anna disagrees, contending that her audit reports and the Government's investigation put Lee Health on notice of its obligation to repay the Government for the false claims. (Doc. 101 at 24-25). Yet Lee Health only had an obligation to repay the Government if Lee Health submitted and received payment for

false claims. *See Mastej*, 591 F. App'x at 706 n.20 ("Unless [relator] sufficiently pleads submission and payment claims in Counts I and II, his Count III [reverse false claim] fails because it is based on false claims having been paid that Defendants failed to repay."). As shown above, D'Anna failed to demonstrate that Lee Health submitted and received payment for false claims. Therefore, this reverse false claim must also fail because the Amended Complaint cannot establish that Lee Health had an obligation to repay the Government. *See Matheny*, 671 F.3d at 1223 ("[R]elators must show that the defendants owed an obligation to pay money to the United States."); *Mastej*, 591 F. App'x at 706 n.20; *Space Coast*, 94 F. Supp. 3d at 1263-64 (dismissing a reverse false claim that depended on dismissed presentment and make or use claims to establish an obligation to repay the Government). Thus, D'Anna's reverse false claim is dismissed without prejudice.

## B. Motions to Dismiss Under Rule 12(b)(2), (4)-(5)

Lee Health argues for dismissal of Cape Coral Hospital as a party for the failure of process, failure of service of process, and lack of personal jurisdiction. (Doc. 86 at 2 n.2). According to Lee Health, Cape Coral Hospital is a separate legal entity even though it is within Lee Health's system. (Doc. 86 at 2 n.2). D'Anna disputes whether Cape Coral Hospital is separate from Lee Health. (Doc. 101 at 29-30). Based on the briefing, Cape Coral Hospital may be a separate entity, requiring separate service. At the same time, it is unclear whether any claims even exist against Cape Coral Hospital. D'Anna states that Lee Health is the "appropriate defendant" and there is "no need to add the cashless subsidiary" Cape Coral Hospital. (Doc. 101 at 30). Rule 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a

specified time." Fed. R. Civ. P. 4(m). Given the uncertainty over the status of Cape Coral Hospital and the fact that the Amended Complaint is being dismissing without prejudice, the Court denies these motions without prejudice. But D'Anna must either serve Cape Coral Hospital with an amended complaint if it is a separate legal entity or notify the Court that she does not intend to pursue claims against Cape Coral Hospital. *See id.*

In conclusion, the Court grants Lee Health's Motion to Dismiss and dismisses the Amended Complaint without prejudice. But the Court grants D'Anna's request for leave to amend. Fed. R. Civ. P. 15(a)(2).

Accordingly, it is now **ORDERED:**

1. Lee Health's Motion to Dismiss (Doc. 86) is **GRANTED**.

    a. The Amended Complaint (Doc. 36) is **DISMISSED without prejudice**.

    b. Relator Angela D'Anna may file a second amended complaint **on or before March 20, 2019. Failure to do so will result in this case be dismissed without further notice.**

2. Lee Health's Request for Oral Argument (Doc. 87) is **DENIED as moot**.

3. Lee Health's Objections to the Order Denying the Motion to Stay Discovery pending resolution of this Motion to Dismiss (Doc. 111) is **DENIED as moot**.

4. Lee Health's Motion for Leave to File Reply to D'Anna's Opposition to Lee Health's Objections (Doc. 115) is **DENIED as moot**.

**DONE** and **ORDERED** in Fort Myers, Florida this 6th day of March 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record