## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **ANGELA D'ANNA,** | ) ) ) |
| **Relator,** | ) |
| **vs.** | ) **Case No. 2:14-cv-437-SPC-NPM** |
| | ) |
| **LEE MEMORIAL HEALTH SYSTEM and CAPE MEMORIAL HOSPITAL, INC.,** | ) ) ) |
| **Defendants.** | ) ) |

## LEE HEALTH'S RULE 26 MOTION FOR A PROTECTIVE ORDER/TO QUASH RELATOR'S THIRD-PARTY SUBPOENA FOR ZIMMER BIOMET HOLDINGS, INC., AND INCORPORATED MEMORANDUM OF LEGAL AUTHORITY

Pursuant to Rules 26(c) and 26(b)(2)(C), Fed. R. Civ. P., Defendants Lee Memorial Health System and Cape Memorial Hospital, Inc. (collectively "Lee Health") move the Court for a protective order quashing Relator's Rule 45 third-party Subpoena to Produce Documents issued to Zimmer Biomet Holdings, Inc. (the "Zimmer Subpoena," attached hereto as **Exhibit 1**). Zimmer is an Indiana corporation and a vendor of Lee Health, and the information sought by the Zimmer Subpoena is irrelevant to the claims and defenses pled and disproportionate to the needs of the case. Further, documents responsive to two of the six requests in the subpoena are duplicative of documents already sought from Lee Health by Relator and, even assuming they are relevant, can be obtained from Lee Health with less burden and expense.

The Zimmer Subpoena commands production of documents in Fort Wayne, Indiana. Zimmer has already served written objections to the subpoena on the Relator

("Zimmer's Objections," attached hereto as **Exhibit 2**).  In addition to its arguments herein, Lee Health supports the Zimmer Objections.  Lee Health is additionally moving the U.S. District Court for the Northern District of Indiana to quash the subpoena pursuant to Rules 45 and 26 for largely the same reasons argued here (those pleadings are attached hereto as **Exhibit 5**).

The information requested is tangentially related to an FCA matter being litigated by the United States in California against Reliance Medical Systems, LLC ("Reliance"), another of Lee Health's vendors.  On March 10, 2020, Relator served a Rule 45 subpoena nearly identical to the Zimmer Subpoena on that vendor as well and a correlating subpoena for a corporate designee of Reliance to testify (collectively the "Reliance Subpoenas," attached as **Exhibit 6**).  That vendor was served with both subpoenas in Utah, and Lee Health will be moving to quash those subpoenas in the near future for the same reasons articulated here.

Tangential to the Reliance California litigation is yet another FCA matter that the government has already settled with several physicians individually, including one of the physicians employed by Lee Health (neurosurgeon Dean D. Lin, M.D.) who is one of the four Lee Health neurosurgeons identified in the Third Amended Complaint.  Despite Dr. Lin having already settled with the government, Relator seeks to take Dr. Lin to task again for the same conduct under the auspices of this case.

To ensure uniformity in ruling on discovery motions concerning the Zimmer and Reliance Subpoenas, and to further ensure that any ruling also applies equally to Relator's similar, and recent, Rule 34 requests to Lee Health requesting the same information

(attached as **Exhibit 4**), Lee Health has respectfully requested the Indiana district court to exercise its discretion under Rule 45(f) and find exceptional circumstances warranting transfer of Lee Health's motion to this Court.  Lee Health intends to do the same with respect to the recent Utah Reliance Subpoena when it files its objections with the Utah district court.  Lee Health therefore requests the Court to also stay all third-party discovery pending a decision on Relator's various Rule 45 third-party Subpoenas. *See Meide v. Pulse Evolution Corp.*, No. 3:18-CV-1037-J-34MCR, 2019 WL 1518959, at *3 (M.D. Fla. Apr. 8, 2019) ("The Court stayed any third-party discovery, including disclosure and use of information that Plaintiff might have already obtained from third-parties, until resolution of the instant Motion. (Id. at 1-2.)").

## MEMORANDUM OF LEGAL AUTHORITY

The scope of discovery follows the pleadings, and not vice versa.  This rule is particularly restrictive in fraud cases, where Rule 9(b), Fed. R. Civ. P., requires that every fact supporting the fraud allegation be stated with particularity in the complaint.  In non-fraud cases applying the 'notice pleading' standard of Rule 8, the ultimate facts of consequence may not be clear from the pleadings.  In those cases, a broad scope of discovery is appropriate to flesh out the details of the claim.  This is simply not the case in fraud actions.  In False Claims Act ("FCA") cases especially, the facts of consequence must be pled with particularity, and the complaint is scrutinized to ensure that this threshold is met.  If not, the claim is dismissed. As a result of this process, the bounds of discovery are significantly more clear in fraud cases.  Embarking on a free-wheeling fishing expedition,

Relator issued Rule 45 subpoenas seeking third-party documents that are wholly unrelated to her allegations of fraud against Lee Health.

## I.    FACTUAL BACKGROUND

### A.    The Alleged Fraud

Relator bases this action on allegations that "[b]eginning October 1, 2005 and continuing at least until June 26, 2014," Lee Health knowingly violated the Stark Law by paying four of its employed neurosurgeons total compensation that exceeded fair market value ("FMV"). *Third Am. Compl.* ("*TAC*"), ECF 142, at ¶¶ 65-66 (citing the Stark Law, 42 U.S.C. §§ 1395nn(a)(1), (e)(2)(B)-(C)).   Relator further alleges that, as a result of the alleged Stark Law violations, all claims Lee Health submitted to Medicare for payment of designated health services referred by these neurosurgeons were "false" and trigger liability under the FCA.   *Id.* at ¶ 1. Relator's allegations that the neurosurgeons' employment compensation exceeded FMV focuses on four clearly specified components:

> (1) compensation for personally performed services based on rates per wRVU that steeply increase with the annual total of wRVUs credited to each neurosurgeon; (2) compensation for services performed by hospital-employed extenders (i.e., not personally performed by the neurosurgeons) but credited and paid to the neurosurgeons at the neurosurgeons' wRVU rates which do not reflect the lower cost of using physician extenders; (3) 100% shares of bonus pools based on production of physician extenders to the extent such production was not already added to the neurosurgeons' wRVUs and paid at the neurosurgeons' wRVU rates; and (4) lucrative payments for on-call coverage in addition to the payments to the neurosurgeons for professional services rendered while on-call.

*TAC*, ECF 142, at ¶ 75; *see also* ¶¶ 64 and 67 (repeating this list). Discovery in this matter is constrained to information relevant to these factual allegations. *See* Fed. R. Civ. P. 26(b)(1).

### B. Relator's Rule 45 Subpoena

Relator's third-party subpoena seeks information that is so inconsistent with her allegations of fraud that it is baffling under Rule 26(g)[1]. On February 27, 2020, Relator served a Subpoena to Produce Documents on Zimmer Biomet Holdings, Inc. ("Zimmer") (the "Zimmer Subpoena"), which she describes therein as a vendor of Lee Health, commanding production of:

1. All Documents relating to any relationship between Zimmer and the Neurosurgeons.

2. All Documents showing any payments made by Zimmer to the Neurosurgeons from 2005 to present whether in the form of salary, grants, payments for research or any other type of payment.

3. All communications of any kind between Zimmer and the Neurosurgeons from 2005 to present.

4. All Documents produced by Zimmer to any state or federal authority investigating payments made by Zimmer to the Neurosurgeons.

5. All Documents relating to the relationship between Zimmer as a vendor and Lee Health.

6. All Documents and communications with Lee Health disclosing or discussing whether the Neurosurgeons owned financial interests in Zimmer or received any payments from Zimmer from 2005 to the present.

*Zimmer Subpoena*, **Exhibit 1**, at Appx. A. Nothing responsive to this subpoena comes close to supporting Relator's particularized allegations of fraud in this action.

---

[1] Rules 26(g)(3) requires courts to impose appropriate sanctions where a party, without substantial justification, signs discovery requests that are inconsistent with the limitations of Rule 26, as here.

## II.    LEGAL STANDARDS

### A.    Rule 26's relevancy standard is narrowed by Rule 9(b) in fraud actions, and district courts have broad authority to limit discovery accordingly.

Rule 26(b)(1) defines the scope of permissible discovery to include any non-privileged matter that is *relevant* to any party's claim or defense *and proportional* to the needs of the case. Fed. R. Civ. P. 26(b)(1) (emphasis added). Rule 401 of the Federal Rules of Evidence defines *relevant* evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401.  When the relevance of a discovery request is not apparent on its face, the proponent of the discovery bears the burden of explaining in the first instance "how or why the request is relevant." *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n. 20 (D. Kan. Feb. 22, 2007).  In considering whether the discovery sought is *proportional*, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).  The non-party status of a subpoena recipient is a significant factor in determining whether discovery is unduly burdensome. *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 521 (N.D. Fla.), *objections overruled*, 981 F. Supp. 2d 1207 (N.D. Fla. 2013) (citing *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 535 (M.D.Fla.2003)).

In FCA and other fraud cases, Rule 26 is interpreted through the lens of Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the

6

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also U.S. ex rel. Stewart v. Louisiana Clinic*, 2003 WL 21283944 at *8 (E.D. La. June 4, 2003) ("This Court observes that Amended Rule 26(b)(1) dovetails quite nicely with the dictates of Rule 9(b) regarding pleading special matters with particularity and the purposes underpinning the rule." (referring to the 2000 amendment to Rule 26 that "narrow[ed] the scope of relevancy from 'subject matter' of the action to 'claims or defenses of any party.'" *Id.*)).

Courts have thus interpreted Rule 9(b) as providing not only a pleading threshold but also a guide for discovery disputes through the pendency of any surviving action. *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359–60 (11th Cir. 2006) ("The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits." (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 198 F.R.D. 560, 564, (N.D. Ga. 2000) *aff'd*, 290 F.3d 1301 (11th Cir. 2002)); *U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549 (M.D. Fla. Aug. 27, 2008) (after a fraud claim survives Rule 9(b) scrutiny, courts "must still be guided by Rule 9(b)'s parameters and discovery should still be limited to the constraints of the Relator's allegations.").

**B.      Parties may seek Rule 26 protective orders from the issuing court when a Rule 45 subpoena compels compliance in a foreign jurisdiction.**

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." Fed. R. Civ. P.

26(c)(1). *See also Cornett v. Lender Processing Servs., Inc.*, No. 3:12-CV-233-J-32TEM, 2012 WL 5305990, at *1 (M.D. Fla. Oct. 29, 2012) ("[P]arties may seek alternative relief under Rule 26(c) to preclude the disclosure of information sought by subpoenas *duces tecum.*"). District courts have broad authority to fashion protective orders that forbid discovery altogether or limit discovery to specified terms. Fed. R. Civ. P. 26(c); *In re Alexander Grant & Co. Litig.*, 820 F. 2d 352, 357 (11th Cir. 1987); *Auto–Owners Ins. Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) (Rule 26 protective orders are appropriate where Rule 45 subpoenas request irrelevant information). The Supreme Court has directed that "judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  The party seeking a protective order must demonstrate good cause for the protection sought. Fed. R. Civ. P. 26(c)(1).  "Good cause" has been defined as a "sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).  Indeed, Rule 26 *requires* a court to take action "on motion *or on its own*" when discovery sought is outside the scope permitted by Rule 26(b)(1), unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient, less burdensome, or less expensive.  Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

III.    **ARGUMENT**

   A.    **Pursuant to Rules 26(c) and 26(b)(2)(C), this Court should quash the Zimmer Subpoena because it seeks information that is outside the scope of permissible discovery under Rule 26(b)(1).**

   The issue presented in this case is whether compensation that Lee Health paid its employed neurosurgeons exceeded the fair market value of their services and was

commercially unreasonable in the absence of referrals.  Evidence relevant to this issue concerns the compensation formula applied, who at Lee Health is entitled to work RVUs for performed services, and the total compensation Lee Health paid.  Evidence of third-party payments to the neurosurgeons under financial arrangements wholly distinct from their employment with Lee Health is clearly not relevant.

In FCA actions the scope of permissible discovery is tailored to the specific factual allegations that survive Rule 9(b) scrutiny and describe the alleged fraud.  *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008) (limiting discovery "in scope to the four specific physicians and five specific Lincare centers identified in the second amended complaint," because "discovery in *qui tam* actions must be limited and tailored to the specificity of the complaint."); *see also, U.S. ex rel. Stewart v. Louisiana Clinic*, 2003 WL 21283944 (E.D. La. 2003) (noting that the court would "remain guided through discovery by the principles behind Rule 9(b)" and limiting discovery to the precise allegations of the complaint).

Here, discovery is limited to information relevant to the particularized allegations of the complaint that between October 1, 2005 and June 26, 2014, "Lee Health paid four neurosurgeons under compensation arrangements that included financial incentives for RVUs worked by neurosurgeons and extenders resulting in total compensation that exceeded fair market value and was commercially unreasonable in the absence of referrals." *Id.* ¶ 76.  *See also* ¶¶ 64, 66-67, 72 and 81 (repeating these allegations). Relator

articulates four[2] specific ways in which the neurosurgeons' compensation failed to meet FMV and commercial reasonableness requirements: (1) compensation per RVU increased as the annual total of RVU credits increased; (2) neurosurgeons were given RVU credit for services performed by physician extenders; (3) neurosurgeons were given bonuses based on physician extenders' productivity; and (4) neurosurgeons were paid a flat rate for on-call coverage in addition to earning RVU credit for services provided while on call.  *Id.* ¶ 75.

### 1.      Zimmer Subpoena Requests 1-6 are not relevant to the alleged fraud.

"On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that … the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

The Zimmer Subpoena requests documents relating to (1) "any relationship between Zimmer and the Neurosurgeons," (2) "any payments made by Zimmer to the Neurosurgeons from 2005 to present," (3) "communications of any kind between Zimmer and the Neurosurgeons from 2005 to present," (4) "Documents produced by Zimmer to any state or federal authority investigating payments made by Zimmer to the Neurosurgeons," (5) "the relationship between Zimmer as a vendor and Lee Health," and

---

[2] The TAC contains residual generalized allegations concerning medical directorships and the correlating personal service exception under the Stark Law, which related to claims that were dismissed with prejudice. *See Opinion and Order*, ECF 141 at 22-23 (ordering Relator to file a TAC that removes claims dismissed from the Second Amended Complaint ("SAC")). *E.g., compare TAC*, ECF 142, ¶¶ 67 (five general contract allegations) and 75 (four neurosurgeon-specific contracts allegations).  Despite these remnants of dismissed claims, there are no allegations in the TAC that the neurosurgeons are independent contractors of Lee Health or held any medical directorship positions between 2005–2014. *Compare* ¶¶ 67, 70, 73-74 of the *SAC* (ECF 118) and *TAC* (ECF 142).

(6) "Documents and communications with Lee Health disclosing or discussing whether the Neurosurgeons owned financial interests in Zimmer or received any payments from Zimmer from 2005 to the present." *Zimmer Subpoena*, **Exhibit 1**, at Appx. A.

> a.    *The information sought is not relevant to FMV or commercial reasonableness determinations.*

On March 2, 2020, counsel for Lee Health and counsel for Relator discussed Lee Health's objections to the Zimmer Subpoena on grounds of relevance. Relator's counsel explained a theory that the time the neurosurgeons spent working for Zimmer could make it impossible for them to have performed the high volume of services for which they received RVU credits—the primary basis for their compensation. Not only is this theory wholly absent from the TAC, it—and any evidence in support of it—is also unreasonably cumulative of Relator's existing challenge to the neurosurgeons' high RVU volumes. *See* Fed. R. Civ. P. 26(b)(2)(c)(i).

The claim in this case is that the amounts paid by Lee Health—not an unrelated third-party—to its four employed neurosurgeons for services actually performed exceeded FMV. Relator does not allege that Lee Health billed for physician services not performed, or billed for designated health services not provided. To the contrary, Relator alleges the dispute is whether RVUs related to some of the patient procedures that were performed properly belonged to the physician extenders. *TAC*, ECF 142, at ¶ 75. Whether the neurosurgeons earned the RVUs are therefore established through documents Relator requested from Lee Health (and largely already provided by Lee Health). *See Requests for Production of Documents*, **Exhibit 3.** If it is undisputed that the patient services billed to

11

the government were actually performed—which is the case here—then what an unrelated third-party may have paid the neurosurgeons for unrelated work is irrelevant to whether the compensation paid to the neurosurgeons by Lee Health represented the fair market value of work *actually performed* at Lee Health.  *See Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05CV451, 2007 WL 496382, at *3 (N.D. Ind. Feb. 12, 2007) ("Relevancy under the discovery rules does not sanction such a generalized hunt for incriminating information. The subpoenas at issue have no bearing on the claims or defenses in this case. Lacking relevancy, a protective order barring compliance is appropriate.").

Even if the information sought by the Zimmer Subpoena was marginally relevant— for instance, if Relator sought to challenge dates and times the neurosurgeons were supposedly performing services for patients at Lee Health by subpoenaing documents showing dates and times that they were engaged with Zimmer (a comparison she does not seek to make in the TAC)—such discovery would still be unreasonably cumulative and disproportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) and 26(b)(2)(c)(i). The production of Lee Health's documents related to the neurosurgeons' employment is sufficient to prove or disprove the factual allegations in Relator's TAC that the compensation Lee Health paid to the neurosurgeons was excessive.

> b.    *The information sought is beyond the*
> *temporal scope of the allegations.*

Relator's counsel also has argued that Relator is entitled to discovery continuing to "the present" as requested in the Zimmer Subpoena because she alleged in the TAC that the scheme was ongoing.  This contention is false.  *See U.S. ex rel. Mastej v. Health Mgmt. Assoc., Inc.*, 591 Fed. Appx. 693, 709 (11th Cir. 2014).

In *Mastej*, the relator alleged two separate fraudulent schemes, an "On-call" Neurosurgeon Scheme continuing from 2007 to 2009, and a Golf-Trip Benefit occurring only in 2008. *Id.* at 699-700. The Eleventh Circuit found that Mastej pled the requisite "indicia of reliability" that actual claims were submitted only as to the on-call scheme during 2007 because "the reliability of Mastej's general allegation derives from his highly significant employment roles and duties during 2007." *Id.* at 707-709. It specified that Rule 9(b) was satisfied "only with respect to 2007 interim claims submitted to and paid by the government before Mastej ended his employment in October 2007." *Id.* at 710. This necessarily also included the 2007 year-end hospital cost report. *Id.* Claims submitted thereafter lacked the necessary indicia of reliability because "[a]fter his employment ended, Mastej was no longer privy to information about the Defendants' business practices, Medicare patients, referrals of patients, the billing of services to Medicare, or revenue from Medicare reimbursements. The indicia of reliability that existed while Mastej served as Vice President and then CEO disappeared when he left the Defendants' employment in October 2007." *Id.* at 709.

The same is true in this case. To date, Relator has filed four complaints in this matter based on her alleged personal knowledge acquired solely through audits she conducted while employed at Lee Health. *Compl.*, ECF 1, ¶ 7 ("direct personal knowledge gained during her employment as a corporate insider"); *First Am. Compl.*, ECF 36, ¶ 17 (same) and ¶ 77 ("personal knowledge relating to the scienter of Lee [Health]" based on conversations occurring "prior to the effective date of her resignation"); *Second Am. Compl.*, ECF 118, ¶ 3 ("Relator has insider knowledge of Lee Health's physician

compensation arrangements, the referral practices of the specific physicians at issue here and Lee Health's billing processes that resulted in the submission of false claims to the Government."), and ¶¶ 10-11, 99, 118; *TAC*, ECF 142, ¶¶ 3, 10-11, 17-18, 99, 103, 105-106, 118. She specifically and consistently pled in each of her complaints that the alleged fraud occurred between October 1, 2005, when the neurosurgeon contracts were first entered into, and June 26, 2014, the date her employment ended. *Compl.*, ECF 1, ¶¶ 7, 64, 72; *FAC*, ECF 36, ¶¶ 1, 17, 57, 59; *SAC*, ECF 118, ¶¶ 1, 10, 65, 76; *TAC*, ECF 142, ¶¶ 1, 10, 65, 76.

In fact, this Court previously held that the Relator's causes of action were based on knowledge gained during her employment with Lee Health, specifically comparing her knowledge to that of the relator in *Mastej*. *Opinion and Order*, ECF 141 at 6-11. This Court found that Relator established the necessary indicia of reliability that Lee Health submitted false claims through "representative claims, taken with the allegations" about those claims. *Id.* at 8-9. Those allegations were based on knowledge gained when "D'Anna audited the neurosurgeons and reviewed these [representative] false claims" as part of her employment with Lee Health. *Id.* As to her cause of action based on submission of false statements, this Court held that "when considered alongside the representative claims *and the alleged basis of her knowledge*, D'Anna provides enough indicia of reliability that Lee Health made false statements material to false claims." *Id.* at 10 (emphasis added). There is simply no basis for an argument that discovery should be permitted outside Relator's own alleged timeframe of October 1, 2005 through June 26, 2014.

Relator also does not claim an ongoing scheme after her employment ended based on knowledge or facts obtained exclusively from others after her employment that would support her allegation that fraudulent claims were submitted after her employment. This case is thus distinguishable from *U.S. v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349 (11th Cir. 2005) for the same reasons the *Mastej* court distinguished *R&F Properties* on this point.

In *R&F Properties*, the relator, a former employee of the defendant, alleged that the defendant always billed nurse practitioner and physician assistant services as "incident to the service of a physician" rather than as independent services because the former receives a higher reimbursement rate. *Id.* at 1352-53. The Eleventh circuit held that the district court erred in limiting discovery to the period of the relator's employment because the indicia of reliability that claims were actually submitted was based not on personal knowledge but on conversations the relator had with the defendant's office manager about the defendant's billing practices. *Id.* at 1359; *see also Mastej*, 591 Fed. Appx. at 704 (citing *R&F Properties*, 433 F.3d at 1360). The *R&F Properties* relator additionally alleged facts arising after her employment ended, in support of the continuing fraudulent scheme. *R&F Properties*, 433 F.3d at 1359. Even so, the court did not permit discovery from the beginning of the scheme to 'the present.' Rather, it held that "[t]he proper temporal range for discovery is February 1997 through the date of the original complaint." *Id.*

Relator's claims in this case are based solely on personal knowledge acquired through her employment. Thus, her personal knowledge "disappeared when [s]he left the Defendants' employment" on June 26, 2014, and any claims beyond that date do not survive

15

Rule 9(b) scrutiny. *Mastej*, 591 Fed. Appx. at 709.  Even if she pled an 'ongoing' scheme beyond her employment, which she did not, the temporal scope of discovery would extend a mere six weeks to August 8, 2014 when she filed her original complaint and not to 'the present.'  *See R&F Properties*, 433 F.3d at 1359.  Therefore, to the extent Relator's subpoena commands production of documents dating from 2005 to the "present," the subpoena must be limited to the period of October 1, 2005 to June 26, 2014.

> **2.      If the Court determines that Zimmer Subpoena Requests 5-6 are relevant and proportional under Rule 26(b)(1), then it must nevertheless quash those Requests under Rule 26(b)(2)(C), because the information sought is duplicative and obtainable from a more convenient and less burdensome source.**

"On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).  Requests 5-6 seek documents from Zimmer that are unreasonably cumulative or duplicative of documents also being sought from Lee Health and that, if relevant, can be obtained from Lee Health with less burden and expense.

Requests 5-6 seek documents relating to "the relationship between Zimmer as a vendor and Lee Health," and "Documents and communications with Lee Health disclosing or discussing whether the Neurosurgeons owned financial interests in Zimmer or received any payments from Zimmer from 2005 to the present." *Zimmer Subpoena*, **Exhibit 1**. Almost a week after serving the Zimmer Subpoena, Relator served on Lee Health a Second Set of Requests for Production of Documents seeking, among other things, "All Documents relating to Zimmer," and "All Documents relating to Lee Health's knowledge of any

16

outside income received by any of the Neurosurgeons, or any professional or business relationship of any of the Neurosurgeons with an entity other than Lee Health, including but not limited to … Zimmer." *Relator's Second Set of Requests for Production*, **Exhibit 4** at Requests Nos. 2 and 5.  It is undeniable that the documents produced by two business entities concerning their relationship and their communications would be duplicative.

By propounding discovery on Lee Health seeking the same documents demanded in the Zimmer Subpoena, Relator has effectively conceded that Requests 5-6 were unnecessarily and inappropriately directed to Zimmer.  Therefore, Requests 5-6 should be quashed because the information sought is "unreasonably cumulative or duplicative," and "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

> **3.      The Zimmer Subpoena additionally must be quashed because Relator cannot use the information to amend her pleadings.**

In conjunction with Rule 26, Rule 9(b) prohibits *qui tam* relators from using the discovery process to develop theories of fraudulent conduct that is not pled. *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008); *U.S. ex rel. Stewart v. Louisiana Clinic*, 2003 WL 21283944 (E.D. La. 2003) (noting that the court would "remain guided through discovery by the principles behind Rule 9(b)" and limiting discovery to the precise fraudulent billings described in the complaint); *United States ex rel. Grandeau v. Cancer Treatment Centers of America*, 2003 WL 21504998 (N.D. Ill. 2003) (tailoring discovery to the specificity of the claims because "a qui tam action is not a roving commission to

investigate all the financial dealings of the defendants."). *See also U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) ("[W]e hold that a qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery."); *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997) ("[R]eady access to the discovery engine . . . has been held back" for fraud claims; "the who, what, when, and where must be laid out before access to the discovery process is granted."); *U.S. ex rel. Bonin v. Cmty. Care Ctr.*, No. 05-1005, 2008 U.S. Dist. LEXIS 40224 at *10-11 (W.D. La. May 16, 2008) ("An FCA plaintiff is not entitled to pursue discovery until the heightened pleading requirement is met."); *U.S. ex rel. West v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 U.S. Dist. LEXIS 52666 at *15 (N.D. Ill. July 20, 2007) ("Without concrete examples of false statements and false claims, it seems as if [the relator] has filed suit based upon his suspicion that Defendants engaged in unlawful conduct with the hope that discovery will unearth some specific FCA violation . . . . Rule 9(b) does not tolerate such suits."); *U.S. ex rel. Sandager v. Dell Mktg., LP*, 872 F. Supp. 2d 801, 815 (D. Minn. 2012) (noting that granting the relator "leave to file a Second Amended Complaint, after additional discovery or otherwise, would be futile and run counter to the FCA statutory scheme."); *U.S. ex rel. Riley v. Alpha Therapeutic Corp.*, 1997 U.S. Dist. LEXIS 23866 at *10 (N.D. Cal. 1997) (finding that allowing discovery prior to resolution of Rule 9(b) issues would be "directly contrary to the purpose of Rule 9(b). Plaintiffs must show there is some substance to their claim of fraud before a defendant is subjected to the rigors of the discovery process."), *aff'd without opinion*, No. 98-15084, 1998 U.S. App. LEXIS 23277 (9th Cir. Sept. 18, 1998).

Because Rule 9(b) prohibits the development of fraud claims through discovery, it necessarily follows that the scope of discovery under Rule 26(b)(1) is limited to the specific fraudulent allegations pled and does not extend to mere theories of additional misconduct.[3] The case law bears this out.

In *Bane*, the Middle District of Florida court granted a protective order limiting the scope of discovery "temporally to the allegations in the second amended complaint ranging from 2000 through the filing of this action …, and in scope to the four specific physicians and five specific Lincare centers identified in the second amended complaint." *Id.*at *1. In so ruling, the court acknowledged that although Rule 9(b) states a pleading rather than discovery standard, the court "must still be guided by Rule 9(b)'s parameters and discovery should still be limited to the constraints of the Relator's allegations." *Id.* at *1, n.2.   In its moving brief, Lincare explained that discovery involving third-party Life Care Diagnostics was presumably related to a separate *qui tam* action the same relator filed against that entity and Lincare, though Lincare was dismissed from that action. *Def. Lincare's Renewed Mot. Prot. Order*, *U.S. ex rel. Bane v. Breathe Easy Pulmonary Svcs. Inc.*, No. 8:06-cv-40-VMC-MAP, Dkt. 139 at 23-25 (M.D. Fla. June 12, 2008).  The court agreed with Lincare that such discovery was inappropriate under Rules 9(b) and 26, denying Relator's motion to compel this discovery on grounds that it would be "unduly burdensome." *Bane*, 2008

---

[3] This limitation on discovery is consistent with the purpose and intent of the FCA. Unlike plaintiffs in other types of civil litigation, qui tam relators are required by the FCA to serve the complaint along with "a written disclosure of substantially all material evidence and information the person possesses" upon the United States. 31 U.S.C. § 3730(b)(2). This disclosure gives the government the opportunity to investigate the relator's allegations and factual support before deciding whether to intervene or, in some circumstances, to unilaterally dismiss the relator's claims.  § 3730(a)-(c). Permitting a relator to develop wholly unfounded fraud claims during discovery deprives the government—and defendants—of these important functions.

WL 4057549 at *1. *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353, n.17 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."); *Morris v. Mid-Century Ins. Co*., No. 1:12-CV-00578-SEB, 2013 WL 415631, at *3 (S.D. Ind. Jan. 31, 2013) ("A litigant has no right to use the discovery process in a case in the pursuit of some larger agenda outside the immediate litigation."); *In re Biovail Corp. Securities Litigation*, 247 F.R.D. 72, 75 (S.D.N.Y. 2007) (admonishing the plaintiff for "wrongfully us[ing] documents obtained during discovery in this case and limited to use in this case to initiate and pursue the parallel litigation in New Jersey" and denying plaintiff's motion to compel production of documents that "the Court is aware . . . might be of use in the companion actions proceeding in New Jersey" because "the requested discovery is unnecessary and irrelevant [in this case], and production would be a wholly improper high burden on the non-parties.").

The principles behind Rule 9(b) must guide discovery in this case. To that end, the Zimmer Subpoena must be quashed because it seeks discovery that clearly goes to a purpose other than proving the allegations in the TAC. The requested information is irrelevant to Relator's allegations of fraud between 2005 and 2014 concerning the neurosurgeons' compensation at Lee Health, is disproportionate to the needs of the case, and with regard to Requests 5-6, is duplicative and best obtained directly from Lee Health—if at all. *TAC*, ECF 142, at ¶¶ 65, 75. A refusal to quash the Zimmer Subpoena

would be contrary to the principles articulated in the FCA, the Federal Rules of Civil

Procedure and of Evidence, and the federal case law interpreting them.

## IV.    CONCLUSION

Relator served a third-party subpoena seeking documents that could have no

possible bearing on the particularized allegations of fraud in this action, as described in

detail above.  The subpoena therefore must be quashed under Rules 26 and 9(b).

Respectfully submitted,

By: /s/ Timothy W. Feeley
Timothy W. Feeley, Esquire, *Trial Counsel*
(Admitted *Pro Hac Vice*)
Hall, Render, Killian, Heath & Lyman, PC
111 E. Kilbourn Ave., Ste. 1300
Milwaukee, WI 53202
Telephone: (414) 721-0461
Email: tfeeley@hallrender.com

David A. French, Esquire, *Trial Counsel*
(Admitted *Pro Hac Vice*)
Hall, Render, Killian, Heath & Lyman, PLLC
201 W. Big Beaver Road, Suite 1200
Troy, MI 48084
Telephone: (248) 457-7813
Email: dfrench@hallrender.com

David B. Honig, Esquire, *Trial Counsel*
Florida Bar No. 705446
Hall, Render, Killian, Heath & Lyman, PC
500 N. Meridian Street, Suite 400
Indianapolis, IN 46204
Telephone: (317) 633-4884
Email: dhonig@hallrender.com

Elinor E. Baxter, Esquire
Florida Bar No. 981710
The Law Office of Elinor Baxter, PLLC
47 South Palm Avenue, Suite 201
Sarasota, Florida 34236
Telephone: (239) 405-7863
E-mail: ebaxter@baxterlawpl.net

*Attorneys for Defendants*

## RULE 3.01(g) CERTIFICATE

The undersigned counsel has conferred with opposing counsel with regards to the

issues raised by the motion herein and opposing counsel objects to the requested relief.

By:    /s/ Elinor E. Baxter
          Elinor E. Baxter, Esquire

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 12, 2020, I electronically filed a copy of the

foregoing document with the Clerk of Court via CM/ECF, which will send a Notice of

Electronic Filing to all attorneys of record at their registered e-mail addresses.

By:    <u>/s/ Elinor E. Baxter</u>
Elinor E. Baxter, Esquire
