# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **ANGELA D'ANNA,** | ) ) ) | |
| **Relator,** | ) ) | |
| **vs.** | ) ) | **Case No.** _____ |
| **LEE MEMORIAL HEALTH SYSTEM and CAPE MEMORIAL HOSPITAL, INC.,** | ) ) ) | |
| **Defendants.** | ) ) | |
| | ) ) | |
| **ZIMMER BIOMET HOLDINGS, INC.** | ) ) | |
| **Interested Party.** | ) ) | |

## DEFENDANTS' RULE 45 AND RULE 26 MOTION TO QUASH RELATOR'S THIRD-PARTY SUBPOENA

HALL, RENDER, KILLIAN HEATH & LYMAN, P.C.

David B. Honig, #22247-49
500 N. Meridian Street, Suite 400
Indianapolis, IN 46204
Telephone: (317) 633-4884
Facsimile: (317) 633-4878
DHonig@hallrender.com

*Attorneys for Defendants*

**EXHIBIT**

**5**

1

**Table of Contents**

MOTION...........................................................................................................................3

MEMORANDUM OF LEGAL AUTHORITY.............................................................4

I.    FACTUAL BACKGROUND.................................................................................4

   A.   The Alleged Fraud...........................................................................................4

   B.   Relator's Rule 45 Subpoena.............................................................................5

II.    LEGAL STANDARDS .........................................................................................6

   A.   Rule 45 subpoenas are subject to Rule 26(b)'s relevancy standards, and the Rule's limits on party standing do not apply to relevancy challenges...........6

   B.   Rule 26's relevancy standard is narrowed by Rule 9(b) in fraud actions, and district courts have broad authority to limit discovery accordingly. ..............7

III.    ARGUMENT........................................................................................................9

   A.   Pursuant to Rules 26(c) and 26(b)(2)(C), this Court should quash the Zimmer Subpoena because it seeks information that is outside the scope of permissible discovery under Rule 26(b)(1). .......................................................................9

      1.   Zimmer Subpoena Requests 1-6 are not relevant to the alleged fraud. .......10

         a.   The information sought is not relevant to FMV or commercial reasonableness determinations ..........................................................11

         b.   The information sought is beyond the temporal scope of the allegations.........12

      2.   If the Court determines that Zimmer Subpoena Requests 5-6 are relevant and proportional under Rule 26(b)(1), then it must nevertheless quash those Requests under Rule 26(b)(2)(C), because the information sought is duplicative and obtainable from a more convenient and less burdensome source....................................................................................15

      3.   The Zimmer Subpoena additionally must be quashed because Relator cannot use the information to amend her pleadings....................................16

   B.   Pursuant to Rule 45(d)(3)(B), this Court should quash Zimmer Subpoena Requests 5-6 because they require disclosure of Lee Health's confidential commercial information, in which it has a recognized right. .......................20

IV.    CONCLUSION....................................................................................................22

N.D. IND. L.R. 37-1 CERTIFICATE..............................................................................23

**Exhibit 1**: Zimmer Subpoena

**Exhibit 2**: Zimmer Objections

**Exhibit 3**: Relator's First Set of Requests for Production of Documents to Defendants

**Exhibit 4**: Relator's Second Set of Requests for Production of Documents to Defendants

## MOTION

This miscellaneous matter concerns an Indiana-based discovery dispute in a *qui tam* action filed in the Middle District of Florida, Fort Myers Division, in which the Relator, Angela D'Anna, alleges that the Defendants, Lee Memorial Health System and Cape Memorial Hospital, Inc. (collectively "Lee Health"), violated the False Claims Act ("FCA"). The litigation is currently in the discovery phase, and on February 27, 2020, Relator served a third-party Subpoena to Produce Documents on Zimmer Biomet Holdings, Inc. (the "Zimmer Subpoena," attached hereto as **Exhibit 1**), an Indiana corporation, commanding production of documents by March 23, 2020, in Fort Wayne, Indiana. Zimmer has already served written objections to the subpoena on the Relator ("Zimmer's Objections," attached hereto as **Exhibit 2**). In addition to its arguments herein, Lee Health supports the Zimmer Objections.

Pursuant to Rules 45(d) and 26, Fed. R. Civ. P., Lee Health hereby objects to the discovery and moves this Court, seated in the district where compliance is required, to quash or modify the Zimmer Subpoena because it commands the production of documents outside the scope of discovery and the disclosure of some of Lee Health's confidential commercial information, in which Lee Health has a personal right or privilege.

Moreover, it appears that the information requested is tangentially related to an FCA matter being litigated by the United States in California against Reliance Medical Systems, LLC, another of Lee Health's vendors. On March 10, 2020, Relator served a Rule 45 subpoena nearly identical to the Zimmer Subpoena on that vendor and a correlating subpoena to testify on one of Reliance's principles (collectively the "Reliance Subpoenas"). That vendor and its principle were served in Utah, and Lee Health will be moving to quash that subpoena for the same reasons articulated here. Tangential to the California litigation is yet another FCA matter that the government already

settled against several physicians individually, including one of the physicians employed by Lee Health identified in the subpoena related to this motion.  To ensure uniformity in ruling on discovery motions concerning the Zimmer and Reliance Subpoenas, and to further ensure that any ruling applies equally to Relator's similar, and recent, Rule 34 requests to Lee Health, Lee Health respectfully requests this Court to exercise its discretion under Rule 45(f) and find exceptional circumstances warranting transfer of this motion to the issuing court, the Middle District of Florida.

### MEMORANDUM OF LEGAL AUTHORITY

The scope of discovery follows the pleadings, and not vice versa.  This rule is particularly restrictive in fraud cases, where Rule 9(b), Fed. R. Civ. P., requires that every fact supporting the fraud allegation be stated with particularity in the complaint.  In non-fraud cases applying the 'notice pleading' standard of Rule 8, the ultimate facts of consequence may not be clear from the pleadings. In those cases, a broad scope of discovery is appropriate to flesh out the details of the claim.  This is simply not the case in fraud actions.  In False Claims Act ("FCA") cases especially, the facts of consequence must be pled with particularity, and the complaint is scrutinized to ensure that this threshold is met. If not, the claim is dismissed. As a result of this process, the bounds of discovery are significantly more clear in fraud cases.  Embarking on a free-wheeling fishing expedition, Relator issued a Rule 45 subpoena seeking third-party documents that are wholly unrelated to her allegations of fraud against Lee Health.

**I.     FACTUAL BACKGROUND**

   **A.     The Alleged Fraud**

Relator bases this FCA action on allegations that "[b]eginning October 1, 2005 and continuing at least until June 26, 2014," Lee Health knowingly violated the Stark Law by paying four of its employed neurosurgeons total compensation that exceeded fair market value ("FMV").

Third Am. Compl. ("TAC"), ECF 142, at ¶¶ 65-66 (citing the Stark Law, 42 U.S.C. §§ 1395nn(a)(1), (e)(2)(B)-(C)). Relator further alleges that, as a result of the alleged Stark Law violation, all claims Lee Health submitted to Medicare for payment of designated health services referred by these neurosurgeons are "false" and trigger liability under the FCA. *Id.* at ¶ 1. Relator's allegations that the neurosurgeons' employment compensation exceeded FMV focuses on four clearly specified components:

> (1) compensation for personally performed services based on rates per wRVU that steeply increase with the annual total of wRVUs credited to each neurosurgeon; (2) compensation for services performed by hospital-employed extenders (i.e., not personally performed by the neurosurgeons) but credited and paid to the neurosurgeons at the neurosurgeons' wRVU rates which do not reflect the lower cost of using physician extenders; (3) 100% shares of bonus pools based on production of physician extenders to the extent such production was not already added to the neurosurgeons' wRVUs and paid at the neurosurgeons' wRVU rates; and (4) lucrative payments for on-call coverage in addition to the payments to the neurosurgeons for professional services rendered while on-call.

*TAC*, ECF 142, at ¶ 75; *see also* ¶¶ 64 and 67 (repeating this list). Discovery in this matter is appropriately constrained to information relevant to these factual allegations. *See* Fed. R. Civ. P. 26(b)(1).

**B.    Relator's Rule 45 Subpoena**

Relator's third-party subpoena seeks information that is so inconsistent with her allegations of fraud that it is baffling under Rules 26(g)(3) and 45(d)[1]. On February 27, 2020, Relator served a Subpoena to Produce Documents on Zimmer Biomet Holdings, Inc. ("Zimmer") (the "Zimmer Subpoena"), which she describes therein as a vendor of Lee Health, commanding production of:

---

[1] Rules 26(g)(3) requires courts to impose appropriate sanctions where a party, without substantial justification, signs discovery requests that are inconsistent with the limitations of Rule 26, as here. Rule 45(d)(1) additionally requires courts to impose appropriate sanctions where the requesting party fails to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena, as here.

1. All Documents relating to any relationship between Zimmer and the Neurosurgeons.

2. All Documents showing any payments made by Zimmer to the Neurosurgeons from 2005 to present whether in the form of salary, grants, payments for research or any other type of payment.

3. All communications of any kind between Zimmer and the Neurosurgeons from 2005 to present.

4. All Documents produced by Zimmer to any state or federal authority investigating payments made by Zimmer to the Neurosurgeons.

5. All Documents relating to the relationship between Zimmer as a vendor and Lee Health.

6. All Documents and communications with Lee Health disclosing or discussing whether the Neurosurgeons owned financial interests in Zimmer or received any payments from Zimmer from 2005 to the present.

*Zimmer Subpoena*, **Exhibit 1**, at Appx. A. Nothing responsive to this subpoena could conceivably support or contest Relator's particularized allegations of fraud in this action.

## II.   LEGAL STANDARDS

### A.   Rule 45 subpoenas are subject to Rule 26(b)'s relevancy standards, and the Rule's limits on party standing do not apply to relevancy challenges.

On a timely motion, the court "must quash or modify a subpoena that," among other things, "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The court additionally may "quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(3)(B). Although Rule 45 does not list irrelevance or overbreadth as grounds for quashing a subpoena, it is well settled that the "limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016); *Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05CV451, 2007 WL 496382, at *1-3 (N.D. Ind. Feb. 12, 2007).

Ordinarily a party does not have standing to quash a subpoena served on a third-party unless the party seeks to quash based on a personal right or privilege relating to the

documents being sought. *See Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05CV451, 2007 WL 496382, at *2 (N.D. Ind. Feb. 12, 2007). Even if a party lacks standing to challenge a subpoena under Rule 45, however, a party always has standing to challenge any discovery to the extent it seeks information limited by Rule 26(b). *Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05CV451, 2007 WL 496382, at *3 (N.D. Ind. Feb. 12, 2007) ("The weight of authority in this circuit, and others, reads Rule 26's broad grant of authority over discovery matters and its protection of any 'party or person' to permit" a party "who lacks standing under Rule 45" to nevertheless challenge a non-party subpoena.).

**B.     Rule 26's relevancy standard is narrowed by Rule 9(b) in fraud actions, and district courts have broad authority to limit discovery accordingly.**

Rule 26(b) defines the scope of permissible discovery to include any non-privileged matter that is *relevant* to any party's claim or defense *and proportional* to the needs of the case. Fed. R. Civ. P. 26(b)(1) (emphasis added). Rule 401 of the Federal Rules of Evidence defines *relevant* evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. When the relevance of a discovery request is not apparent on its face, the proponent of the discovery bears the burden of explaining in the first instance "how or why the request is relevant." *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n. 20 (D. Kan. Feb. 22, 2007). In considering whether the discovery sought is *proportional*, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The non-party status of a subpoena recipient is a significant factor in determining whether discovery is unduly burdensome. *Solarex*

*Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y.1988); *see also American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 (Fed.Cir.1987) (non-party status weighs against disclosure).

In FCA and other fraud cases, Rule 26 is interpreted through the lens of Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also U.S. ex rel. Stewart v. Louisiana Clinic,* 2003 WL 21283944 at \*8 (E.D. La. June 4, 2003) ("This Court observes that Amended Rule 26(b)(1) dovetails quite nicely with the dictates of Rule 9(b) regarding pleading special matters with particularity and the purposes underpinning the rule." (referring to the 2000 amendment to Rule 26 that "narrow[ed] the scope of relevancy from 'subject matter' of the action to 'claims or defenses of any party.'" *Id.*)).   Courts have thus interpreted Rule 9(b) as providing not only a pleading threshold but also a guide for discovery disputes through the pendency of any surviving action. *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359–60 (11th Cir. 2006) ("The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits." (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 198 F.R.D. 560, 564, (N.D. Ga. 2000) *aff'd*, 290 F.3d 1301 (11th Cir. 2002)); *U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549 (M.D. Fla. Aug. 27, 2008) (after a fraud claim survives Rule 9(b) scrutiny, courts "must still be guided by Rule 9(b)'s parameters and discovery should still be limited to the constraints of the Relator's allegations.").

A party may seek a protective order under Rule 26(c) to preclude the disclosure of information sought by subpoenas *duces tecum. Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05CV451, 2007 WL 496382, at \*3 (N.D. Ind. Feb. 12, 2007).   District courts have broad authority to fashion protective orders that forbid discovery altogether or limit discovery to

specified terms. Fed. R. Civ. P. 26(c); *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012). The Supreme Court has directed that "judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). The party seeking a protective order must demonstrate good cause for the protection sought. Fed. R. Civ. P. 26(c)(1). "Good cause" has been defined as a "sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). Indeed, Rule 26 requires a court to take action "on motion *or on its own*" when discovery sought is outside the scope permitted by Rule 26(b)(1), unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

## III.   ARGUMENT

### A.   Pursuant to Rules 26(c) and 26(b)(2)(C), this Court should quash the Zimmer Subpoena because it seeks information that is outside the scope of permissible discovery under Rule 26(b)(1).

The issue presented in this case is whether compensation that Lee Health paid its employed neurosurgeons exceeded the fair market value of their services and was commercially unreasonable in the absence of referrals. Evidence relevant to this issue concerns the compensation formula, who is entitled to work RVUs for performed services, and the total compensation Lee Health paid. Evidence of third-party payments to the neurosurgeons under financial arrangements wholly distinct from their employment with Lee Health is clearly not relevant.

In FCA actions the scope of permissible discovery is tailored to the specific factual allegations that survive Rule 9(b) scrutiny and describe the alleged fraud. *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008) (limiting discovery "in scope to the four specific physicians and five specific Lincare centers identified in the second amended complaint," because "discovery in *qui tam*

9

actions must be limited and tailored to the specificity of the complaint."); *see also, U.S. ex rel. Stewart v. Louisiana Clinic*, 2003 WL 21283944 (E.D. La. 2003) (noting that the court would "remain guided through discovery by the principles behind Rule 9(b)" and limiting discovery to the precise allegations of the complaint).

Here, discovery is limited to information relevant to the particularized allegations of the complaint that between October 1, 2005 and June 26, 2014, "Lee Health paid four neurosurgeons under compensation arrangements that included financial incentives for RVUs worked by neurosurgeons and extenders resulting in total compensation that exceeded fair market value and was commercially unreasonable in the absence of referrals." *TAC*, ECF 142, at ¶ 76. Relator articulated four specific ways the neurosurgeons' compensation failed to meet FMV and commercial reasonableness requirements: (1) compensation per RVU increased as the annual total of RVU credits increased; (2) neurosurgeons were given RVU credit for services performed by physician extenders; (3) neurosurgeons were given bonuses based on physician extenders' productivity; and (4) neurosurgeons were paid a flat rate for on-call coverage in addition to earning RVU credit for services provided while on call. *Id.* ¶ 75.

**1.    Zimmer Subpoena Requests 1-6 are not relevant to the alleged fraud.**

"On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that … the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

The Zimmer Subpoena requests documents relating to (1) "any relationship between Zimmer and the Neurosurgeons," (2) "any payments made by Zimmer to the Neurosurgeons from 2005 to present," (3) "communications of any kind between Zimmer and the Neurosurgeons from 2005 to present," (4) "Documents produced by Zimmer to any state or federal authority

investigating payments made by Zimmer to the Neurosurgeons," (5) "the relationship between Zimmer as a vendor and Lee Health," and (6) "Documents and communications with Lee Health disclosing or discussing whether the Neurosurgeons owned financial interests in Zimmer or received any payments from Zimmer from 2005 to the present." Zimmer Subpoena, Exhibit 1, at Appx. A.

<em>a.    The information sought is not relevant to FMV or commercial reasonableness determinations.</em>

On March 2, 2020, counsel for Lee Health and counsel for Relator discussed Lee Health's objections to the Zimmer Subpoena on grounds of relevance. Relator's counsel explained a theory that the time the neurosurgeons spent working for Zimmer could make it impossible for them to have performed the high volume of services for which they received RVU credits—the primary basis for their compensation. Not only is this theory wholly absent from the TAC, it—and any evidence in support of it—is also unreasonably cumulative of Relator's existing challenge to the neurosurgeons' high RVU volumes. *See* Fed. R. Civ. P. 26(b)(2)(c)(i).

The claim in this case is that the amounts paid by *Lee Health*—not an unrelated third-party—to its four employed neurosurgeons for services *actually performed* exceeded FMV. Relator does not allege that Lee Health billed for physician services not performed, or billed for designated health services not provided. To the contrary, Relator alleges the dispute is whether RVUs related to some of the patient procedures properly belonged to physician extenders. *TAC*, ECF 142, at ¶ 75. Whether the neurosurgeons actually performed the services—and thus earned the RVUs—are therefore established through documents requested by Relator from Lee Health (and largely already provided by Lee Health). *See Requests for Production of Documents*, **Exhibit 3**. If it is undisputed that the patient services billed to the government were actually performed—which is the case here—then what an unrelated third-party may have paid the neurosurgeons for

unrelated is irrelevant to whether the compensation paid to the neurosurgeons by Lee Health represented the fair market value of work *actually performed* at Lee Health. *See Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05CV451, 2007 WL 496382, at *3 (N.D. Ind. Feb. 12, 2007) ("Relevancy under the discovery rules does not sanction such a generalized hunt for incriminating information. The subpoenas at issue have no bearing on the claims or defenses in this case. Lacking relevancy, a protective order barring compliance is appropriate.").

Even if the information sought by the Zimmer subpoena was marginally relevant—for instance, if Relator sought to challenge dates and times the neurosurgeons were supposedly performing services for patients at Lee Health by subpoenaing documents showing dates and times that they were engaged with Zimmer, a comparison she does not seek to make in the TAC—such discovery would still be unreasonably cumulative and disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) and 26(b)(2)(c)(i). The production of Lee Health's documents related to the neurosurgeons' employment is sufficient to prove or disprove the factual allegations in Relator's TAC that the compensation paid by Lee Health to the neurosurgeon was excessive.

b.    *The information sought is beyond the temporal scope of the allegations.*

Relator's counsel also has argued that Relator is entitled to discovery continuing to "the present" as requested in the Zimmer Subpoena because she alleged in the TAC that the scheme was ongoing. This contention is false. *See U.S. ex rel. Mastej v. Health Mgmt. Assoc., Inc.*, 591 Fed. Appx. 693, 709 (11th Cir. 2014). In *Mastej*, the relator alleged two separate fraudulent schemes, an "On-call" Neurosurgeon Scheme continuing from 2007 to 2009, and a Golf-Trip Benefit occurring only in 2008. *Id.* at 699-700. The Eleventh Circuit found that Mastej pled the requisite "indicia of reliability" that actual claims were submitted only as to the on-call scheme during 2007 because "the reliability of Mastej's general allegation derives from his highly

12

significant employment roles and duties during 2007." *Id.* at 707-709.  It specified that Rule 9(b) was satisfied "only with respect to 2007 interim claims submitted to and paid by the government before Mastej ended his employment in October 2007." *Id.* at 710. This necessarily also included the 2007 year-end hospital cost report. *Id.* Claims submitted thereafter lacked the necessary indicia of reliability because "[a]fter his employment ended, Mastej was no longer privy to information about the Defendants' business practices, Medicare patients, referrals of patients, the billing of services to Medicare, or revenue from Medicare reimbursements. The indicia of reliability that existed while Mastej served as Vice President and then CEO disappeared when he left the Defendants' employment in October 2007." *Id.* at 709.

The same is true in this case.  To date, Relator has filed four complaints in this matter based on her alleged personal knowledge acquired solely through audits she conducted while employed at Lee Health. *Compl.*, ECF 1, ¶ 7 ("direct personal knowledge gained during her employment as a corporate insider"); *First Am. Compl.*, ECF 36, ¶ 17 (same) and ¶ 77 ("personal knowledge relating to the scienter of Lee [Health]" based on conversations occurring "prior to the effective date of her resignation"); *Second Am. Compl.*, ECF 118, ¶ 3 ("Relator has insider knowledge of Lee Health's physician compensation arrangements, the referral practices of the specific physicians at issue here and Lee Health's billing processes that resulted in the submission of false claims to the Government."), and ¶¶ 10-11, 99, 118; *TAC*, ECF 142, ¶¶ 3, 10-11, 17-18, 99, 103, 105-106, 118.  She specifically and consistently pled in each of her complaints that the alleged fraud occurred between October 1, 2005, when the neurosurgeon contracts were first entered into, and June 26, 2014, the date her employment ended. *Compl.*, ECF 1, ¶¶ 7, 64, 72; *FAC*, ECF 36, ¶¶ 1, 17, 57, 59; *SAC*, ECF 118, ¶¶ 1, 10, 65, 76; *TAC*, ECF 142, ¶¶ 1, 10, 65, 76.

In fact, the Middle District of Florida Court, where this action is pending, previously held that the Relator's causes of action were based on knowledge gained during her employment with Lee Health, specifically comparing her knowledge to that of the relator in *Mastej*. *Opinion and Order*, ECF 141 at 6-11. The District Court found that Relator established the necessary indicia of reliability that Lee Health submitted false claims through "representative claims, taken with the allegations" about those claims. *Id.* at 8-9. Those allegations were based on knowledge gained when "D'Anna audited the neurosurgeons and reviewed these [representative] false claims" as part of her employment with Lee Health. *Id.* As to her cause of action based on submission of false statements, the Court held that "when considered alongside the representative claims *and the alleged basis of her knowledge*, D'Anna provides enough indicia of reliability that Lee Health made false statements material to false claims." *Id.* at 10 (emphasis added). There is simply no basis for an argument that discovery should be permitted outside Relator's own alleged timeframe of October 1, 2005 through June 26, 2014.

Relator also does not claim an ongoing scheme after her employment ended based on knowledge or facts obtained exclusively from others after her employment that would support her allegation that fraudulent claims were submitted after her employment. This case is thus distinguishable from *U.S. v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349 (11th Cir. 2005) for the same reasons the *Mastej* court distinguished *R&F Properties* on this point.

In *R&F Properties*, the relator, a former employee of the defendant, alleged that the defendant always billed nurse practitioner and physician assistant services as "incident to the service of a physician" rather than as independent services because the former receives a higher reimbursement rate. *Id.* at 1352-53. The Eleventh circuit held that the district court erred in limiting discovery to the period of the relator's employment because the indicia of reliability that

claims were actually submitted was based not on personal knowledge but on conversations the relator had with the defendant's office manager about the defendant's billing practices. *Id.* at 1359; *see also Mastej*, 591 Fed. Appx. at 704 (citing *R&F Properties*, 433 F.3d at 1360). The *R&F Properties* relator additionally alleged facts arising after her employment ended, in support of a continuing fraudulent scheme. *R&F Properties*, 433 F.3d at 1359. Even so, the court did not permit discovery from the beginning of the scheme to 'the present.' Rather, it held that "[t]he proper temporal range for discovery is February 1997 through the date of the original complaint." *Id.*

Relator's claims in this case are based solely on personal knowledge acquired through her employment. Thus, her personal knowledge "disappeared when [s]he left the Defendants' employment" on June 26, 2014, and any claims beyond that date do not survive Rule 9(b) scrutiny. *Mastej*, 591 Fed. Appx. at 709. Even if she pled an 'ongoing' scheme beyond her employment, which she did not, the temporal scope of discovery would extend a mere six weeks to August 8, 2014 when she filed her original complaint and not to 'the present.' *See R&F Properties*, 433 F.3d at 1359. Therefore, to the extent Relator's subpoena commands production of documents dating from 2005 to the "present," the subpoena must be limited to the period of October 1, 2005 to June 24, 2014.

> **2.    If the Court determines that Zimmer Subpoena Requests 5-6 are relevant and proportional under Rule 26(b)(1), then it must nevertheless quash those Requests under Rule 26(b)(2)(C), because the information sought is duplicative and obtainable from a more convenient and less burdensome source.**

"On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

Fed. R. Civ. P. 26(b)(2)(C)(i). Requests 5-6 seek documents from Zimmer that are unreasonably cumulative or duplicative of documents also being sought from Lee Health and that, if relevant, can be obtained from Lee Health with less burden and expense.

Requests 5-6 seek documents relating to "the relationship between Zimmer as a vendor and Lee Health," and "Documents and communications with Lee Health disclosing or discussing whether the Neurosurgeons owned financial interests in Zimmer or received any payments from Zimmer from 2005 to the present." Zimmer Subpoena, Exhibit 1. Almost a week after serving the Zimmer Subpoena, Relator served on Lee Health a Second Set of Requests for Production of Documents seeking, among other things, "All Documents relating to Zimmer," and "All Documents relating to Lee Health's knowledge of any outside income received by any of the Neurosurgeons, or any professional or business relationship of any of the Neurosurgeons with an entity other than Lee Health, including but not limited to … Zimmer." *Relator's Second Set of Requests for Production*, **Exhibit 4** at Requests Nos. 2 and 5. It is undeniable that the documents produced by two business entities concerning their relationship and their communications would be duplicative.

By propounding discovery on Lee Health seeking the same documents demanded in the Zimmer Subpoena, Relator has effectively conceded that Requests 5-6 were unnecessarily and inappropriately directed to Zimmer. Therefore, Requests 5-6 should be quashed because the information sought is "unreasonably cumulative or duplicative" and "can be obtained from some other source that is more convenient, less burdensome, or less expensive"—namely, Lee Health. Fed. R. Civ. P. 26(b)(2)(C)(i).

> **3.** **The Zimmer Subpoena additionally must be quashed because Relator cannot use the information to amend her pleadings.**

In conjunction with Rule 26, Rule 9(b) prohibits *qui tam* relators from using the discovery process to develop theories of fraudulent conduct that is not pled. *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008); *U.S. ex rel. Stewart v. Louisiana Clinic*, 2003 WL 21283944 (E.D. La. 2003) (noting that the court would "remain guided through discovery by the principles behind Rule 9(b)" and limiting discovery to the precise fraudulent billings described in the complaint); *United States ex rel. Grandeau v. Cancer Treatment Centers of America*, 2003 WL 21504998 (N.D. Ill. 2003) (tailoring discovery to the specificity of the claims because "a qui tam action is not a roving commission to investigate all the financial dealings of the defendants."). *See also U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) ("[W]e hold that a qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery."); *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997) ("[R]eady access to the discovery engine . . . has been held back" for fraud claims; "the who, what, when, and where must be laid out before access to the discovery process is granted."); *U.S. ex rel. Bonin v. Cmty. Care Ctr.*, No. 05-1005, 2008 U.S. Dist. LEXIS 40224 at *10-11 (W.D. La. May 16, 2008) ("An FCA plaintiff is not entitled to pursue discovery until the heightened pleading requirement is met."); *U.S. ex rel. West v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 U.S. Dist. LEXIS 52666 at *15 (N.D. Ill. July 20, 2007) ("Without concrete examples of false statements and false claims, it seems as if [the relator] has filed suit based upon his suspicion that Defendants engaged in unlawful conduct with the hope that discovery will unearth some specific FCA violation . . . . Rule 9(b) does not tolerate such suits."); *U.S. ex rel. Sandager v. Dell Mktg., LP*, 872 F. Supp. 2d 801, 815 (D. Minn. 2012) (noting that granting the relator "leave to file a Second Amended Complaint, after additional discovery or otherwise, would be futile and

run counter to the FCA statutory scheme."); *U.S. ex rel. Riley v. Alpha Therapeutic Corp.*, 1997 U.S. Dist. LEXIS 23866 at *10 (N.D. Cal. 1997) (finding that allowing discovery prior to resolution of Rule 9(b) issues would be "directly contrary to the purpose of Rule 9(b). Plaintiffs must show there is some substance to their claim of fraud before a defendant is subjected to the rigors of the discovery process."), *aff'd without opinion*, No. 98-15084, 1998 U.S. App. LEXIS 23277 (9th Cir. Sept. 18, 1998).  Because Rule 9(b) prohibits the development of fraud claims through discovery, it necessarily follows that the scope of discovery under Rule 26(b)(1) is limited to the specific fraudulent allegations pled and does not extend to mere theories of additional misconduct.[2]  The case law bears this out.

In *Bane*, the Middle District of Florida court granted a protective order limiting the scope of discovery "temporally to the allegations in the second amended complaint ranging from 2000 through the filing of this action ..., and in scope to the four specific physicians and five specific Lincare centers identified in the second amended complaint." *Id.* at *1. In so ruling, the court acknowledged that although Rule 9(b) states a pleading rather than discovery standard, the court "must still be guided by Rule 9(b)'s parameters and discovery should still be limited to the constraints of the Relator's allegations." *Id.* at *1, n.2.  In its moving brief, Lincare explained that discovery involving third-party Life Care Diagnostics was presumably related to a separate *qui tam* action the same relator filed against that entity and Lincare, though Lincare was dismissed from that action. *Def. Lincare's Renewed Mot. Prot. Order, U.S. ex rel. Bane v. Breathe Easy Pulmonary Svcs. Inc.*, No. 8:06-cv-40-VMC-MAP, Dkt. 139 at 23-25 (M.D. Fla. June 12, 2008).

---

[2] This limitation on discovery is consistent with the purpose and intent of the FCA. Unlike plaintiffs in other types of civil litigation, qui tam relators are required by the FCA to serve the complaint along with "a written disclosure of substantially all material evidence and information the person possesses" upon the United States. 31 U.S.C. § 3730(b)(2). This disclosure gives the government the opportunity to investigate the relator's allegations and factual support before deciding whether to intervene or, in some circumstances, to unilaterally dismiss the relator's claims. § 3730(a)-(c). Permitting a relator to develop wholly unfounded fraud claims during discovery deprives the government—and defendants—of these important functions.

The court agreed with Lincare that such discovery was inappropriate under Rules 9(b) and 26, denying Relator's motion to compel this discovery on grounds that it would be "unduly burdensome." *Bane*, 2008 WL 4057549 at *1. *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353, n.17 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."); *Morris v. Mid-Century Ins. Co.*, No. 1:12-CV-00578-SEB, 2013 WL 415631, at *3 (S.D. Ind. Jan. 31, 2013) ("A litigant has no right to use the discovery process in a case in the pursuit of some larger agenda outside the immediate litigation."); *In re Biovail Corp. Securities Litigation*, 247 F.R.D. 72, 75 (S.D.N.Y. 2007) (admonishing the plaintiff for "wrongfully us[ing] documents obtained during discovery in this case and limited to use in this case to initiate and pursue the parallel litigation in New Jersey" and denying plaintiff's motion to compel production of documents that "the Court is aware . . . might be of use in the companion actions proceeding in New Jersey" because "the requested discovery is unnecessary and irrelevant [in this case], and production would be a wholly improper high burden on the non-parties.").

The principles behind Rule 9(b) must guide the course of discovery in this case. To that end, the Zimmer Subpoena must be quashed because it seeks discovery that clearly goes to a purpose other than proving the allegation in the TAC. The requested information is irrelevant to Relator's allegations of fraud between 2005 and 2014 concerning the neurosurgeons' compensation at Lee Health, is disproportionate to the needs of the case, and with regard to Requests 5-6, is duplicative and best obtained directly from Lee Health—if at all. *TAC*, ECF 142, at ¶¶ 65, 75. A refusal to quash the Zimmer Subpoena would be contrary to the principles

articulated in the FCA, the Federal Rules of Civil Procedure and of Evidence, and the federal case law interpreting them.

**B.     Pursuant to Rule 45(d)(3)(B), this Court should quash Zimmer Subpoena Requests 5-6 because they require disclosure of Lee Health's confidential commercial information, in which it has a recognized right.**

Ordinarily a party does not have standing to quash a subpoena served on a third-party unless the party seeks to quash based on a personal right or privilege relating to the documents being sought. *See Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05CV451, 2007 WL 496382, at *2 (N.D. Ind. Feb. 12, 2007). Courts have recognized a party's personal right in information relating to its "past, present, and future business plans and activities." *Core Labs. LP v. Spectrum Tracer Servs., L.L.C.*, No. CIV-11-1157-M, 2015 WL 5254534, at *1 (W.D. Okla. Sept. 9, 2015) (cited with approval in *Meide v. Pulse Evolution Corp.*, No. 3:18-cv-1037-J-34MCR, 2019 WL 1518959 at *6 (M.D. Fla. Apr. 8, 2019)). Requests 5-6 seek information concerning Lee Health's relationship with Zimmer as its vendor and its communications with Zimmer about its employed neurosurgeons. This information is not subject to disclosure under Rule 45(d)(3)(B), and *Core Laboratories* in instructive on this point.

In *Core Laboratories*, the plaintiff brought suit for misappropriation of trade secrets and related claims against two former employees and their new employer, STS, a competitor of the plaintiff. 2015 WL 5254534 at *1. The plaintiff issued nonparty subpoenas to STS's vendors seeking, among other things, "all documents that refer to, relate to, or evidence any: business relationship that the vendor currently has, or has ever had, with defendants, [STS's Chief Financial Officer], or [STS's corporate investor]," and "all communications from 2008 to the present between the vendor and" those same entities and individuals. 2015 WL 5254534 at *1. The court found that the defendants had standing to move to quash the subpoenas because the information

plaintiff sought in the vendor subpoenas related to "STS's past, present, and future business plans and activities, information to which STS has a personal right and privilege." *Id.* at *3. Despite finding standing, the court denied STS's motion to quash in part because some of the information requested from the vendors was relevant to plaintiff's claims that STS used its trade secret technologies. *Id.* at *4. STS's vendors allegedly machined and produced various components of those technologies for STS, and the documents requested would establish that. *Id.* at *4.

Here, Lee Health similarly has standing to move to quash Zimmer Subpoena Requests 5-6 because it has a personal right in its confidential commercial information. But unlike the vendors in *Core Laboratories*, Lee Health's vendors played no role in the alleged fraud. Relator's subpoena requests information spanning from 2005 to the present "relating to the relationship between Zimmer as a vendor and Lee Health" and concerning Zimmer's "communications with Lee Health disclosing or discussing" any financial relationship with Lee Health's employees. *Zimmer Subpoena*, **Exhibit 1**. This information concerns Lee Health's past, present, and future business plans and activities as they relate to the type of goods purchased from Zimmer, including information concerning proprietary business plans and operations that Lee Health disclosed to Zimmer in furtherance of contract negotiations and general business development. The subpoena additionally seeks documents concerning Lee Health's employees, which is information in which Lee Health also has a recognized interest. *See AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, No. CIVARDB-08-3388, 2010 WL 1529195, at *5 (D. Md. Apr. 15, 2010), *certified question answered*, 417 Md. 386, 10 A.3d 745 (2010) (defendant has standing to challenge third-party subpoena seeking "internal documents regarding [defendant's] operations and technology, documents identifying [defendant's] employees, customers and their purchase history, as well as

deposition testimony regarding [defendant's] services."). For these reasons, Lee Health has standing to challenge Requests 5-6 in the Zimmer Subpoena.

If Lee Health's protected information held by Zimmer is found discoverable and ordered to be disclosed, this information will likely fall into the hands of Lee Health's and Zimmer's competitors, negatively impacting Lee Health's business plans with respect to the matters disclosed.  It is reasonably expected that the parties will file summary judgment motions including factual evidence necessary to prove or disprove Relator's allegations and Lee Health's defenses. If Relator contends that the requested vendor information is somehow relevant to her claims, then it is reasonable to anticipate that the information Zimmer produces in response to the subpoena will become part of the public record through summary judgment motions or at trial.  Therefore, Requests 5-6 seeking information directly relating to Lee Health should be quashed.

Moreover, as described above, Requests 5-6 should be quashed under Rule 26 because they are more appropriately directed to Lee Health than to Zimmer. If Lee Health is compelled to produce the documents requested, it will at least maintain control over the disclosure of its confidential and privileged information.

## IV.    CONCLUSION

Relator served a third-party subpoena seeking documents that could have no possible bearing on the particularized allegations of fraud in this action, as described in detail above.  The subpoena must be quashed under Rules 45, 26, and 9(b), and Lee Health would ask that this Court transfer this matter to the Middle District of Florida to issue such an order, to ensure uniformity on these issues as this case proceeds.

Respectfully submitted,

HALL, RENDER, KILLIAN HEATH & LYMAN, P.C.

By: _____

David B. Honig, #22247-49
500 N. Meridian Street, Suite 400
Indianapolis, IN 46204
Telephone: (317) 633-4884
Facsimile: (317) 633-4878
DHonig@hallrender.com

*Attorneys for Defendants.*

## N.D. Ind. L.R. 37-1 CERTIFICATE

**I HEREBY CERTIFY** that on March 2, 2020, at approximately 9:15 a.m. CST, counsel

for Lee Health conferred by telephone with counsel for Relator in a good faith effort to resolve

the matter raised in this motion without court action.

By: _____
David B. Honig

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 12, 2020, I filed a copy of the foregoing

document with the Clerk of Court and served copies on all attorneys of record in the Middle

District of Florida matter at their registered e-mail addresses, as well as counsel for Zimmer Biomet

Holdings, Inc. at his primary contact email address.

By: _____
David B. Honig

23

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| United States of America and Angela D'Anna, ex rel. | ) |
|---|---|
| _Plaintiff_ | ) |
| v. | ) |
| Lee Memorial Health System and Cape Memorial | ) |
| Hospital, Inc. | ) |
| _Defendant_ | ) |

Civil Action No.   2:14-cv-437-FtM-38NPM

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Zimmer Biomet Holdings, Inc., 345 East Main Street, Warsaw, IN 46580

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

      Appendix A

| Place: Barnes & Thornburg LLP<br>888 S. Harrison Street, Suite 600<br>Fort Wayne, IN 46802 | Date and Time:<br><br>03/23/2020 |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 2/20/20

         _CLERK OF COURT_                                   OR

_____                                  _____
    _Signature of Clerk or Deputy Clerk_                                   _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
_____ , who issues or requests this subpoena, are:

_____

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT**

1

exhibitsticker.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:14-cv-437-FtM-38NPM

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Appendix A

### Definitions

"Document(s)" means any documents or electronically stored information including writings, drawings, graphs, charts, photographs, sound recordings, images or other data or other data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form which are in the possession, custody or control of Zimmer.

"Zimmer" means Zimmer Biomet Holdings, Inc. and any parents, subsidiaries, affiliates, predecessors and successors.

"Neurosurgeons" means Dr. Jeffrey S. Henn, Dr. Dean D. Lin, Dr. Sam P. Javedan, and Dr. John J. Dusseau.

"Lee Health" means Lee Memorial Health Systems and Cape Memorial Hospital, Inc. d/b/a Lee Health, Lee Memorial Hospital, Healthpark Medical Center, Gulf Coast Medical Center and Cap Corral Hospital.

### Requests

1. All Documents relating to any relationship between Zimmer and the Neurosurgeons.

2. All Documents relating to any payments made by Zimmer to the Neurosurgeons from 2005 to present whether in the form of salary, grants, payments for research or any other type of payment.

3. All communications of any kind between Zimmer and the Neurosurgeons from 2005 to present.

4. All Documents produced by Zimmer to any state or federal authority investigating payments made by Zimmer to the Neurosurgeons.

5. All Documents relating to the relationship between Zimmer as a vendor and Lee Health.

6. All Documents and communications with Lee Health disclosing or discussing whether the Neurosurgeons owned financial interests in Zimmer or received any payments from Zimmer from 2005 to the present.

 *Quarles & Brady* LLP

135 North Pennsylvania Street
Suite 2400
Indianapolis, Indiana  46204
317.957.5000
Fax 317.957.5010
www.quarles.com

Attorneys at Law in
Chicago
Indianapolis
Madison
Milwaukee
Minneapolis
Naples
Phoenix
Scottsdale
Tampa
Tucson
Washington, D.C.

Writer's Direct Dial: 317.399.2814
E-Mail: Josh.Fleming@quarles.com

March 12, 2020

*Via Overnight Courier*

George F. Carpinello
Bois Schiller Flexner LLP
30 South Pearl Street
11th Floor
Albany, NY  12207

RE:    Subpoena to Produce Documents to Zimmer Biomet Holdings, Inc.
       *Angela D'Anna, ex rel. v. Lee Memorial Health System and Cape Memorial*
       *Hospital, Inc.*, Case No. 2:14-cv-437-FtN-38NPM
       Client-Matter No. 990327.00009

Dear Mr. Carpinello:

    We are counsel for Zimmer Biomet and have been retained to respond to your client's
subpoena in the above-referenced matter. Enclosed is Zimmer Biomet's objections to the subpoena
in accordance with Fed. R. Civ. P. 45.

                    Very truly yours,

                    QUARLES & BRADY LLP

                    Joshua B. Fleming

JBF:sa
Enclosure
QB\990327.00009\62145443.1

EXHIBIT
2

|  |  |
|---|---|
| UNITED STATES OF AMERICA and<br>ANGELA D'ANNA, *ex rel.*,<br><br>Plaintiffs,<br><br>v.<br><br>LEE MEMORIAL HOSPITAL SYSTEM<br>AND CAPE MEMORIAL HOSPITAL, INC.,<br><br>Defendant. | ) Cause No. 2:14-cv-347-FtM-38NPM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### RESPONSE AND OBJECTIONS TO SUBPOENA DIRECTED TO ZIMMER BIOMET HOLDINGS, INC.

In accordance with Fed. R. Civ. P. 45, Zimmer Biomet Holdings, Inc. ("Zimmer Biomet"), by counsel, object to Plaintiff's Subpoena for Documents directed to Zimmer Biomet as follows:

### GENERAL OBJECTIONS

Zimmer Biomet objects to each of the Requests because they seek to impose a burden on Zimmer Biomet beyond the scope of the Rules of Civil Procedure, including Rules 26 and 45, and cause Zimmer Biomet, a non-party, to incur unreasonable expense in collecting, reviewing and producing responsive documents. Rule 45(d)(1) provides protection from the issuance and service of a subpoena that imposes undue burden or expense on a third-party. Through its investigation, Zimmer Biomet has concluded this subpoena is not served in pursuit of any relevant or discoverable evidence related to the claims and defenses at issue in the above-captioned action. From any reasonable review of the requests and the pleadings at issue, Zimmer Biomet can identify no basis on which Plaintiff seeks the requested information. Further, to the extent any responsive documents or information exist within Zimmer Biomet's possession, it consists of highly confidential, commercially sensitive and trade secret materials that Zimmer Biomet will not voluntarily produce, even if the costs of doing so were not unduly burdensome, which they are. Defendant Lee Memorial Health is filing its own motion to quash the subpoena for similar and additional reasons and Zimmer Biomet will be joining that motion and incorporates those reasons for quashing the subpoena herein.

Zimmer Biomet also objects to the Requests to the extent they seek to compel Zimmer Biomet to produce documents or materials protected from disclosure by the attorney-client privilege, work product doctrine, HIPAA, or any applicable privilege or regulation that prohibits or protects against such disclosure.

## RESPONSES TO REQUESTS

1.     All Documents relating to any relationship between Zimmer and the Neurosurgeons.

**OBJECTION**: **Request No. 1 is grossly overbroad, vague and ambiguous as to what documents are actually requested since it seeks "All Documents relating to any relationship between Zimmer and the Neurosurgeons" without any limitation or timeframes.  The definition of "documents" encompasses literally every form of media Zimmer Biomet could or does maintain without exception and is grossly overbroad and unduly burdensome. Furthermore, the Request seeks to impose an undue burden on Zimmer Biomet which is not a party to the action causing it to collect unlimited data from unknown custodians over an unlimited period of time in an effort to identify responsive documents. Such a Request exceeds the scope of Rules 45 and 26 of the Federal Rules of Civil Procedure, is oppressive and harassing, and exposes Zimmer Biomet to an extraordinary expense and effort to attempt to respond to this Request. Zimmer Biomet cannot and will not provide responsive documents to this Request without a court order.**

2.     All Documents relating to any payments made by Zimmer to the Neurosurgeons from 2005 to present whether in the form of salary, grants, payments for research or any other type of payment.

**OBJECTION**: **Zimmer Biomet objects to Request No. 2 because it is grossly overbroad and seeks documents that have no apparent relationship to the above-mentioned litigation.  The definition of "documents" encompasses literally every form of media Zimmer Biomet could or does maintain without exception and is grossly overbroad and unduly burdensome. Zimmer Biomet also objects because the Request is overbroad and unreasonable in its scope exposing Zimmer Biomet to an undue and unnecessary burden and expense associated with identification, collection and production of documents responsive to a request that seeks materials over a 15-year period of time. Furthermore, Zimmer Biomet objects because it seeks documents or information that, to the extent they exist, are highly confidential, commercially sensitive or trade secret.  Zimmer Biomet cannot and will not provide responsive documents to this Request without court order.**

3.     All communications of any kind between Zimmer and the Neurosurgeons from 2005 to present.

**OBJECTION**: **Request No. 3 is grossly overbroad, vague and ambiguous as to what documents are actually requested since it seeks "All communications of any kind between Zimmer and the Neurosurgeons from 2005 to the present" without any limitation or definition of the term "communications" which therefore exponentially increases the scope of the media from which responsive information must be considered, collected and searched. Furthermore, the Request seeks to impose an undue burden on Zimmer Biomet which is not a party to the action causing it to collect unlimited data from unknown custodians over a 15-year period of time in an effort to identify responsive communications. Such a Request exceeds the scope of Rules 45 and 26 of the Federal Rules of Civil Procedure, is oppressive and harassing, and exposes Zimmer Biomet to an extraordinary expense and effort to**

2

attempt to respond to this Request. Zimmer Biomet cannot and will not provide responsive documents to this Request without court order.

4.     All Documents produced by Zimmer to any state or federal authority investigating payments made by Zimmer to the Neurosurgeons.

**OBJECTION**: Zimmer Biomet objects to Request No. 4 because it is grossly overbroad and seeks documents that have no apparent relationship to the above-mentioned litigation. The definition of "documents" encompasses literally every form of media Zimmer Biomet could or does maintain without exception and is grossly overbroad and unduly burdensome. The Request has absolutely no limits in scope or time, not to mention assumes facts that have not been established surrounding purported state or federal investigations. Furthermore, Zimmer Biomet objects because it seeks documents or information that, if they do exist, consist of information that is highly confidential and commercially sensitive. Furthermore, the Request seeks to impose an undue burden on Zimmer Biomet which is not a party to the action causing it to collect unlimited data from unknown custodians over an unlimited period of time in an effort to identify responsive documents. Such a Request exceeds the scope of Rules 45 and 26 of the Federal Rules of Civil Procedure, is oppressive and harassing, and exposes Zimmer Biomet to an extraordinary expense and effort to attempt to respond to this Request. Zimmer Biomet cannot and will not provide responsive documents to this Request without a court order.

5.     All Documents relating to the relationship between Zimmer as a vendor and Lee Health.

**OBJECTION**: Zimmer Biomet objects to Request No. 5 because it is grossly overbroad, vague and ambiguous as to what documents are actually requested since it seeks "All Documents relating to the relationship between Zimmer as a vendor and Lee Health" without any limitation or timeframes. Lee Health is a hospital network and customer of Zimmer Biomet and has been for some time. The definition of "documents" encompasses every form of media Zimmer Biomet could or does maintain without exception and is grossly overbroad and unduly burdensome. This Request literally seeks every document in Zimmer Biomet's possession related to any product or service provided or sold to Lee Health or any other related documents over the entire history of Zimmer Biomet's business relationship with Lee Health. Furthermore, the Request seeks to impose an undue burden on Zimmer Biomet which is not a party to the action causing it to collect unlimited data from unknown custodians over an unlimited period of time in an effort to identify responsive documents. Such a Request exceeds the scope of Rules 45 and 26 of the Federal Rules of Civil Procedure, is oppressive and harassing, and exposes Zimmer Biomet to an extraordinary expense and effort to attempt to respond to this Request. Zimmer Biomet cannot and will not provide responsive documents to this Request without a court order.

6.     All Documents and communications with Lee Health disclosing or discussing whether the Neurosurgeons owned financial interests in Zimmer or received any payments from Zimmer from 2005 to the present.

3

**OBJECTION**: Zimmer Biomet objects to Request No. 6 because it is grossly overbroad and seeks documents that have no apparent relationship to the above-mentioned litigation and would cause Zimmer Biomet an undue and unnecessary burden and expense associated with identification, collection and production of documents responsive to a request that seeks materials over a 15-year period of time. The Request equally seeks to impose on Zimmer Biomet the burden of locating documents (the definition of which is grossly overbroad as stated throughout) and communications (an undefined term) that may or may not exist without any predicate showing that Zimmer Biomet and Lee Health created, maintained or exchanged documents or communications disclosing or discussing the Neurosurgeons' purported financial interests in Zimmer or payments allegedly made by Zimmer to the Neurosurgeons. Furthermore Zimmer Biomet objects because it seeks documents or information that, if they exist, are commercially sensitive. Zimmer Biomet cannot and will not provide responsive documents to this Request without court order.

In accordance with the above general and specific objections to the Requests, Zimmer Biomet demands Plaintiff withdraw the subpoena, which Zimmer Biomet contends was served without any basis or justification. If Plaintiff refuses to withdraw the subpoena and forces Zimmer Biomet to bring this subpoena before the court for further consideration, Zimmer Biomet will have no choice but to seek any and all available remedies, including its attorneys' fees and costs associated with responding to the subpoena and any motion practice associated therewith.

Respectfully submitted,

QUARLES & BRADY LLP

By: _____

Joshua B. Fleming, #25954-29

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2020, a copy of the foregoing was sent by overnight courier to:

George F. Carpinello
Bois Schiller Flexner LLP
30 South Pearl Street
11th Floor
Albany, NY 12207

Joshua B. Fleming

4

QUARLES & BRADY LLP
135 N. Pennsylvania St., Suite 2400
Indianapolis, IN 46204
P: 317-957-5000 | F: 317-957-5010
Josh.fleming@quarles.com

QB\990327.00009\62122469.1

3/12/2020                    FedEx Ship Manager - Print Your Label(s)



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

UNITED STATES OF AMERICA *ex rel.*
ANGELA D'ANNA,

                          Relator,

vs.

LEE MEMORIAL HEALTH SYSTEM d/b/a
LEE MEMORIAL HOSPITAL, a/k/a
HEALTHPARK MEDICAL CENTER, a/k/a
GULF COAST MEDICAL CENTER, a/k/a
CAPE CORAL HOSPITAL, a/k/a LEE
PHYSICIAN GROUP agent of LEE HEALTH;
and

CAPE MEMORIAL HOSPITAL, INC. d/b/a
CAPE CORAL HOSPITAL,

                         Defendants.

CIVIL ACTION FILE
NO. 2:14-CV-437- FtM-38NPM

[FALSE CLAIMS ACT - *QUI TAM*]

## RELATOR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LEE HEALTH

Relator Angela D'Anna, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby requests that Defendants, answer the following "Requests" separately and fully in writing, and produce, and permit inspection and/or copying of the following documents in Defendants' possession, custody or control within thirty (30) days of service at the offices of the same upon it upon George F. Carpinello at the offices of Boies Schiller Flexner LLP, 30 South Pearl Street, 11th Floor Albany, NY 12207.

These requests are deemed to be continuing in nature to the extent permitted by Federal Rule of Civil Procedure 26(e). Pursuant to such rule, RELATOR makes the demand upon Defendants that if at any later date Defendants obtains additional documents different from

**EXHIBIT**

_3_

the documents produced in response to these requests, Defendants promptly produce and serve a copy of the same upon counsel for RELATOR within the time permitted by law.

### DEFINITIONS & INSTRUCTIONS

1.      The term "control" is to be interpreted in the broadest sense permissible. Without limiting the term, a document is deemed to be within your control if you have ownership, possession or custody of the Document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof, including any Documents in the possession of former employees or agents generated *in* the course of his or her work as an employee or agent.

2.      "Defendants" is intended to and shall embrace and include, Defendants Lee Memorial Health System d/b/a Lee Health, d/b/a Lee Memorial Hospital, a/k/a Healthpark Medical Center, a/k/a Gulf Coast Medical Center, a/k/a Lee Physician Group, and Cape Memorial Hospital, Inc. d/b/a Cape Coral Hospital.

3.      "Government" as used herein, "Government" shall include the United States Department of Justice, (including any U.S. Attorney's Office, Federal Bureau of Investigation or any other office of any kind within the United States Department of Justice), the United States Department of Health and Human Services (including the Centers for Medicare and Medicaid Services or any other office of any kind within the United States Department of Health and Human Services) and any other agency or branch of the United States Government, or any of their representatives or contractors.

4.      "Document" shall mean any tangible thing or mechanical or electronic record, or other form of data compilation upon which information has been stored, recorded or communicated in your custody, control or possession or of which you have knowledge,

2

including without limitation, letters, correspondence, e-mails, text messages, invoices, contracts, agreements, purchase orders, memoranda, tapes, stenographical and handwritten notes, microfilm, bulletins, circulars, pamphlets, post cards, canceled checks, money orders, posters, studies, reports, notices, diaries, summaries, books, messages, instructions, pictures, film, graphs, statistical compilations, magnetic discs, records and tapes and other media, computer cards, tapes, printouts, reports and other machine readable records and data, sound recordings, academic diplomas, certificates issued by professional organizations, licenses, and every draft or copy of a document which is not identical to the original or which draft or copy contains any commentary or notation whatsoever that does not appear on the original.

5.    "Entity" or "entities" shall mean any corporation, corporate form (such as a limited partnership, limited liability partnership, or limited liability company), parent company, affiliate subsidiary, partner, member, venture, partnership, or any other structure (or a chain of successive entities) that conducts business, has conducted business, or anticipates conducting business.

6.    "FDA" refers to the United States Food & Drug Administration, any committee, subcommittee, or advisory committee thereto, and any person, employee, or agent of the FDA.

7.    "Healthcare provider" means any doctor, physician, surgeon, pharmacist, hospital, clinic, center, physician's office, infirmary, medical or diagnostic laboratory, medical practice, or other facility that provides medical care or medical advice, and any pharmacy, x-ray department, radiology department, laboratory, oncology center, physical therapist or physical therapy department, rehabilitation specialist, chiropractor, or other persons or entities

involved in diagnosis, care, or treatment of patients.

8.    "Information" should be construed in the broadest possible sense. It is intended reference both facts and applicable principles.   This term should not be construed to be limited by any  method  of  acquisition  or  compilation  and  should,  therefore,  be construed  to  include  oral information as well as documents.

9.    "Lee Health," as used herein, "Lee Health" is intended to and shall embrace and include, in addition to Defendant Lee Memorial Health System d/b/a Lee Health, d/b/a Lee Memorial Hospital, a/k/a Healthpark Medical Center, a/k/a Gulf Coast Medical Center, Cape Coral Hospital, a/k/a Lee Physician Group, all of their trustees, board members, shareholders, managers, partners, owners, subsidiaries, affiliates, agents, servants, employees, independent contractors, private investigators, accountants, and attorneys and others who are in a position of confidence or who may have obtained information for or on its behalf.

10.    The term "possession" as it pertains to e-mails, includes e-mails contained in electronic directories including "deleted" e-mails which have not been permanently deleted, "sent" e-mails, and "received" e-mails, including e-mails contained in all subdirectories irrespective of the title of such subdirectories. The term "possession" as it pertains to web-sites, includes electronic content that is posted either publicly or privately on web-sites now or previously in your possession, custody or control.

11.    These Requests apply to all Documents in your possession, custody, or control regardless of their location and regardless of whether such Documents are held by your agents, employees, representatives, attorneys, or any other person or entity acting for or on your behalf. A Document shall be deemed to be within Your control if You have the right to secure the document or a copy of the Document from another person having possession or

custody of the Document.

12.    In providing the Documents called for by these Requests, You are requested to produce them as they are kept in the usual course of business or organize and label them to correspond with the categories to which they relate.

13.    Documents that cannot be legibly copied should be produced in their original form.

14.    All non-identical copies of every Document sought shall be separately produced.

15.    All Documents produced in response to an individual Request shall be physically segregated from Documents produced in response to any other Requests, and the Request to which they are responsive shall be specifically identified. If a document is responsive to more than one Request, each of the Requests to which the Document is responsive shall be specified.

16.    In producing the Documents, all Documents which are physically attached to each other shall be left so attached. Documents which are segregated or separated from other Documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or other methods, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained in the file where found.

17.    Each paragraph and subparagraph of these Requests should be construed independently and no other paragraph or subparagraph shall be referred to or relied on for the purpose of limiting the scope.

18.    If in answering these Requests You claim any ambiguity in interpreting either

an individual request or a definition or instruction applicable thereto, such claims shall not be utilized by You as a basis for refusing to respond, but there shall be set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding.

19.     All designated Documents are to be taken as including all attachments and enclosures.  If any portion of a Document is responsive to a Request, the entire Document should be produced. If Documents responsive to this Request are normally kept in a file or other folder, also produce that file or folder.

20.     Unless otherwise stated in connection with a specific Request, these Requests are for the time period from January 1, 2004 to the present.

21.     The terms defined above and the individual requests should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure governing discovery.

22.     Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition, except where such words have a usual custom and usage definition in Your trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which You are aware.

23.     For purposes of interpreting the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation. This includes:

     a.     "any," "all," "each," or "every" shall mean "any, all, each and every";

     b.     "and" and "or" shall mean "and/or" and shall be construed either

disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

 c. "including," shall mean "including but not limited to";

 d. the singular form of any word shall include the plural, and the plural form shall include the singular;

 e. each verb shall include all of its tenses; and

 f. each pronoun shall apply to the male, female, and neutral genders.

 24. If any responsive Documents are withheld or redacted under a claim of attorney-client privilege, attorney work-product doctrine, or any other privilege or immunity from discovery, You are requested to provide a privilege log including the following information, in sufficient detail to permit adjudication of the validity of the claim: (1) the nature of the privilege being asserted or other rule relied upon, and the facts supporting Your assertion thereof; (2) the party who is asserting the privilege; and (3) the following information about each purportedly privileged document: (a) the author, primary addressee, and secondary addressees or persons copied, including the relationship of those persons to any party in this litigation and/or the author of the Document (unless otherwise apparent); (b) a description sufficient to identify the type, subject matter, and purpose of the Document; (c) all persons to whom its contents have been disclosed; (d) the date the Document was prepared, the date the Document bears, the date the Document was sent, and the date the Document was received; and (e) a description of the custodian of the Document.

 25. If a portion of any responsive Document is withheld under a claim of privilege pursuant to the preceding instruction, any non-privileged portion of such Document must be

produced with the portion claimed to be privileged redacted.

26.     Identify all responsive Documents that have been lost, discarded, or destroyed. In so doing, state the type of document, its date, the approximate date it was lost, discarded, or destroyed, and the identity of each person having knowledge of the contents thereof, including the name, address and telephone number of each such person.

27.     These Requests are continuing in nature. In the event you become aware of or acquire possession, custody, or control of additional responsive Documents, you shall promptly produce such additional Documents for inspection and copying. It is requested that a supplemental response shall be served no later than 14 days after the discovery of additional, responsive Documents or information, and in no event shall any supplemental response be served later than the day before the first day of trial.

## REQUESTS FOR PRODUCTION

1.     All Documents and things identified in Lee Health's answers or responses to each and every set of Relator's Requests for Admissions to Lee Health, and all documents and things upon which Lee Health relied in preparing such answers or responses.

2.     All Documents Lee Health received from or provided to the Government in connection with Relator's complaints filed in this action or in connection with any inquiry or investigation the Government has made since August 8, 2014 concerning any of the allegations in Relator's complaints filed in this action.

3.     All Documents relating to Lee Health's compensation to neurosurgeons employed by Lee Health.

4.     All Documents relating to Lee Health's submission of claims for compensation

to any Government payor for medical care provided to patients who were treated by any neurosurgeons employed by Lee Health.

5.      All studies, audits, or analyses performed by or on behalf of Lee Health relating to compensation paid to neurosurgeons employed by Lee Health, including whether such compensation was at fair market value or was commercially reasonable.

6.      All certificates or statements of any kind made by Lee Health to any Government entity that Lee Health was submitting reports or requests for payment to, that stated that such reports or requests were true, accurate, correct, complete, or complied with all applicable laws, rules or regulations, insofar as such certification or statement related in any way to patients treated by neurosurgeons employed by Lee Health.

7.      All Documents relating to relative Value Units (RVUs) credited or assigned to neurosurgeons employed by Lee Memorial and the methodology by which those RVUs were signed.

8.      All contracts, including drafts of contracts, relating to compensation paid to neurosurgeons employed by Lee Memorial.

9.      All organizational charts for Lee Health.

10.     All Documents which show a curriculum vitae for any neurosurgeon employed by Lee Health.

11.     All Documents comprising W-2s and or 1099s for each neurosurgeon employed by Lee Health.

12.     All minutes, notes, or other Documents relating to any meetings pertaining to

compensation paid to the neurosurgeons employed by Lee Health.

13.     All employee handbooks or other documents describing employee benefits provided by Lee Hospital to any part-time or full-time employees.

14.     All Documents relating to any community need assessments, medical staffing plans, or relating in any way to physician need areas that physician surpluses or shortages, and analyzing where to concentrate physician recruiting efforts.

15.     All Documents relating to any complaints or proceedings concerning patient care at Lee Memorial, as such care relates to any patients treated by any of the neurosurgeons employed by Lee Health.

16.     All Documents relating to any compliance concerns for each neurosurgeon employed by Lee Health, including, but not limited to, coding reviews, procedure compliance reviews and any other compliance reports.

17.     All Documents relating to any performance evaluation of any of the neurosurgeons employed by Lee Health.

18.     All Documents relating to any administrative duties undertaken by any neurosurgeons employed by Lee Health, including time records, copies of work product created or reviewed by the neurosurgeons, evidence of meeting attendance, including meeting minutes, and all other documents relating to administrative duties performed by such neurosurgeons.

19.     All Documents relating to any annual hospital departmental financial statements showing revenues and expenses relating to Lee Health's neurosurgery program.

20.     All form 990s filed by Lee Health for the years 2004 to present.

21.    All Documents relating to Lee Health's needs assessment or other documents relating to Lee Health's consideration of hiring additional neurosurgeons or purchasing neurosurgery practices.

22.    All Documents relating to strategic planning, including, but not limited to, budgets, market studies, long-term planning goals, as such relates to neurosurgery.

23.    All Documents relating to annual cost reports submitted to Medicare or Medicaid for the years 2004 to present.

24.    All Documents relating to any analysis by or for Lee Hospital concerning physicians' contributions to Lee Memorial's profits, including, but not limited to, contribution of margin analyses, physician admissions statistics, physician surgery statistics, and all other referral factor reports.

25.    All Documents relating to whether Lee Health has either destroyed or disposed of any Documents, books of account, memoranda, or other records relating to any of the allegations in Relator's Complaints filed in this action, including all Documents relating to the date Documents or records were destroyed, reasons for destroying, and name and address of person destroying.

26.    Copies of any and all written policies for the retention of Documents which were in force at any time at Lee Health during the time period of August 9, 2004 to the present.

27.    Copies of any and all written policies for the destruction of Documents which were in force at any time at Lee Health during the time period of August 9, 2004 to the present.

28.    With respect to each witness who is expected to provide expert testimony on Lee

Health's behalf and with respect to each expert or consultant who prepared Documents provided to the Government referenced in Request No. 2 above, please provide the following:

    (a)    all resumes, curricula vitae or similar documents relating the educational background and qualifications of each such expert witness or consultant;

    (b)    all materials furnished to each such expert witness or consultant;

    (c)    a list of every lawsuit in which each such expert witness or consultant has testified at trial in the preceding ten years (providing the caption or style of the case, the case number and court in which the case is pending, the part on whose behalf the witness testified, and the attorney for each party);

    (d)    a list of every lawsuit in which each such expert witness or consultant has testified by way of deposition in the preceding ten years (providing the caption or style of the case, the case number and court in which the case is pending, the part on whose behalf the witness testified, and the attorney for each party);

    (e)    any correspondence between Lee Health or its counsel and each such expert witness or consultant, including any e-mails;

    (f)    all Documents prepared by or relied upon by each such expert witness or consultant for Lee Health;

    (g)    all Documents, studies, tests, reports, treatises, articles, books, or their authority reviewed, examined, read, studied, seen or prepared by each of the experts with whom you consulted and relied upon by that expert in formulation of his or her opinion.

This 14th day of August, 2019.

**BOIES SCHILLER FLEXNER, LLP**

George F. Carpinello  (Admitted Pro Hac Vice)
Teresa A. Monroe (Admitted Pro Hac Vice)
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel: (518) 434-0600
Fax: (518) 434-0665
Email: gcarpinello@bsfllp.com
          tmonroe@bsfllp.com

Karen C. Dyer
Florida Bar No. 716324
121 South Orange Avenue, Suite 840N
Orlando, FL 32801
Tel: (407) 425-7118
Fax: (407) 425-7047
Email: kdyer@bsfllp.com

**WILBANKS & GOUINLOCK, LLP**

Marlan B. Wilbanks (Admitted Pro Hac Vice)
Susan S. Gouinlock (Admitted Pro Hac Vice)
3414 Peachtree Rd NE, Suite 725
Atlanta, GA 30326
Tel: (404) 842-1075
Fax: (404) 842-0559
Email: mbw@wilbanksgouinlock.com
          ssg@wilbanksgouinlock.com

**WITHROW, MCQUADE & OLSEN, LLP**

Scott C. Withrow (Admitted Pro Hac Vice)
3379 Peachtree Road, Suite 970
Atlanta, GA 30326
Tel: (404) 814-0037
Fax: (404) 814-0009
Email: swithrow@wmolaw.com

*Attorneys for Relator-Plaintiff Angela D'Anna*

13

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that this day I served a copy of the foregoing RELATOR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT via electronic mail and first class mail, postage prepaid, upon:

Timothy W. Feeley, Esquire, Trial Counsel
(Admitted Pro Hac Vice)
Hall Render Killian Heath & Lyman, PC
111 E. Kilbourn Ave., Ste. 1300
Milwaukee, WI 53202
Telephone: (414) 721-0461
Email: tfeeley@hallrender.com

David A. French, Esquire, Trial Counsel
(Admitted Pro Hac Vice)
Hall Render Killian Heath & Lyman, PLLC
201 W. Big Beaver Road, Suite 1200
Columbia Center
Troy, MI 48084
Telephone: (248) 457-7813
Email: dfrench@hallrender.com

Elinor E. Baxter, Esquire
Florida Bar No. 981710
The Law Office of Elinor Baxter, PLLC
47 South Palm Avenue, Suite 201
Sarasota, Florida 34236
Telephone: (239) 405-7863
E-mail: ebaxter@baxterlawpl.net

David B. Honig, Esquire, Trial Counsel
Florida Bar No. 705446
Hall Render Killian Heath & Lyman, PC
500 N. Meridian Street, Suite 400
Indianapolis, IN 46204
Telephone: (317) 633-4884
Email: dhonig@hallrender.com

This 14th day of August, 2019.

/s/ George F. Carpinello
George F. Carpinello

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANGELA D'ANNA, <br><br>                           Relator, <br> vs. <br><br> LEE MEMORIAL HEALTH SYSTEM d/b/a LEE MEMORIAL HOSPITAL, a/k/a HEALTHPARK MEDICAL CENTER, a/k/a GULF COAST MEDICAL CENTER, a/k/a CAPE CORAL HOSPITAL, a/k/a LEE PHYSICIAN GROUP agent of LEE HEALTH; and <br><br> CAPE MEMORIAL HOSPITAL, INC. d/b/a CAPE CORAL HOSPITAL, <br><br>                          Defendants. | CIVIL ACTION FILE NO. 2:14-CV-437- FtM-38NPM <br><br> [FALSE CLAIMS ACT - *QUI TAM*] |

## RELATOR'S SECOND SET OF REQUESTS FOR
## PRODUCTION OF DOCUMENTS TO DEFENDANTS

Relator Angela D'Anna, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby requests that Defendants, answer the following "Requests" separately and fully in writing, and produce, and permit inspection and/or copying of the following documents in Defendants' possession, custody or control within thirty (30) days of service at the offices of the same upon it upon George F. Carpinello at the offices of Boies Schiller Flexner LLP, 30 South Pearl Street, 11th Floor Albany, NY 12207.

These requests are deemed to be continuing in nature to the extent permitted by Federal Rule of Civil Procedure 26(e). Pursuant to such rule, RELATOR makes the demand upon Defendants that if at any later date Defendants obtains additional documents different from

EXHIBIT

4

the documents produced in response to these requests, Defendants promptly produce and serve a copy of the same upon counsel for RELATOR within the time permitted by law.

## DEFINITIONS & INSTRUCTIONS

1.     "Defendants" is intended to and shall embrace and include, Defendants Lee Memorial Health System d/b/a Lee Health, d/b/a Lee Memorial Hospital, a/k/a Healthpark Medical Center, a/k/a Gulf Coast Medical Center, a/k/a Lee Physician Group, and Cape Memorial Hospital, Inc. d/b/a Cape Coral Hospital.

2.     "Document" shall mean any tangible thing or mechanical or electronic record, or other form of data compilation upon which information has been stored, recorded or communicated in your custody, control or possession or of which you have knowledge, including without limitation, letters, correspondence, e-mails, text messages, invoices, contracts, agreements, purchase orders, memoranda, tapes, stenographical and handwritten notes, microfilm, bulletins, circulars, pamphlets, post cards, canceled checks, money orders,   posters, studies,    reports,    notices,    diaries,    summaries,    books,    messages,    instructions, pictures, film, graphs, statistical compilations, magnetic discs, records and tapes and other media, computer cards, tapes, printouts, reports and other machine readable records and data, sound recordings, academic diplomas, certificates issued by professional organizations, licenses, and every draft or copy of a document which is not identical to the original or which draft or copy contains any commentary or notation whatsoever that does not appear on the original.

3.     The term "control" is to be interpreted in the broadest sense permissible. Without limiting the term, a document is deemed to be within your control if you have ownership, possession or custody of the Document, or the right to secure the document or copy

2

thereof from any person or public or private entity having physical possession thereof, including any Documents in the possession of former employees or agents generated *in* the course of his or her work as an employee or agent.

4.     "CSI" means Catalyst Spinal Innovations, LLC and any parents, subsidiaries, affiliates, predecessors and successors including, but not limited to, Reliance Medical Systems, LLC.

5.     "Entity" or "entities" shall mean any corporation, corporate form (such as a limited partnership, limited liability partnership, or limited liability company), parent company, affiliate subsidiary, partner, member, venture, partnership, or any other structure (or a chain of successive entities) that conducts business, has conducted business, or anticipates conducting business.

6.     "FDA" refers to the United States Food & Drug Administration, any committee, subcommittee, or advisory committee thereto, and any person, employee, or agent of the FDA.

7.     "Government" as used herein, "Government" shall include the United States Department of Justice, (including any U.S. Attorney's Office, Federal Bureau of Investigation or any other office of any kind within the United States Department of Justice), the United States Department of Health and Human Services (including the Centers for Medicare and Medicaid Services or any other office of any kind within the United States Department of Health and Human Services) and any other agency or branch of the United States Government, or any of their representatives or contractors.

8.     "Healthcare provider" means any doctor, physician, surgeon, pharmacist,

hospital, clinic, center, physician's office, infirmary, medical or diagnostic laboratory, medical practice, or other facility that provides medical care or medical advice, and any pharmacy, x-ray department, radiology department, laboratory, oncology center, physical therapist or physical therapy department, rehabilitation specialist, chiropractor, or other persons or entities involved in diagnosis, care, or treatment of patients.

9.    "Information" should be construed in the broadest possible sense. It is intended reference both facts and applicable principles.    This term should not be construed to be limited by any method of acquisition or compilation and should, therefore, be construed to include oral information as well as documents.

10.    "Lee Health," as used herein, "Lee Health" is intended to and shall embrace and include, in addition to Defendant Lee Memorial Health System d/b/a Lee Health, d/b/a Lee Memorial Hospital, a/k/a Healthpark Medical Center, a/k/a Gulf Coast Medical Center, Cape Coral Hospital, a/k/a Lee Physician Group, all of their trustees, board members, shareholders, managers, partners, owners, subsidiaries, affiliates, agents, servants, employees, independent contractors, private investigators, accountants, and attorneys and others who are in a position of confidence or who may have obtained information for or on its behalf.

11.    "Neurosurgeons" means Dr. Jeffrey S. Henn, Dr. Dean D. Lin, Dr. Sam P. Javedan, and Dr. John J. Dusseau.

12.    The term "possession" as it pertains to e-mails, includes e-mails contained in electronic directories including "deleted" e-mails which have not been permanently deleted, "sent" e-mails, and "received" e-mails, including e-mails contained in all subdirectories irrespective of the title of such subdirectories. The term "possession" as it pertains to web-

4

sites, includes electronic content that is posted either publicly or privately on web-sites now or previously in your possession, custody or control.

13.     "Zimmer" means Zimmer Biomet Holdings, Inc. and any parents, subsidiaries, affiliates, predecessors and successors.

14.     These Requests apply to all Documents in your possession, custody, or control regardless of their location and regardless of whether such Documents are held by your agents, employees, representatives, attorneys, or any other person or entity acting for or on your behalf. A Document shall be deemed to be within Your control if You have the right to secure the document or a copy of the Document from another person having possession or custody of the Document.

15.     In providing the Documents called for by these Requests, You are requested to produce them as they are kept in the usual course of business or organize and label them to correspond with the categories to which they relate.

16.     Documents that cannot be legibly copied should be produced in their original form.

17.     All non-identical copies of every Document sought shall be separately produced.

18.     All Documents produced in response to an individual Request shall be physically segregated from Documents produced in response to any other Requests, and the Request to which they are responsive shall be specifically identified. If a document is responsive to more than one Request, each of the Requests to which the Document is responsive shall be specified.

19.     In producing the Documents, all Documents which are physically attached to each other shall be left so attached. Documents which are segregated or separated from other Documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or other methods, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained in the file where found.

20.     Each paragraph and subparagraph of these Requests should be construed independently and no other paragraph or subparagraph shall be referred to or relied on for the purpose of limiting the scope.

21.     If in answering these Requests You claim any ambiguity in interpreting either an individual request or a definition or instruction applicable thereto, such claims shall not be utilized by You as a basis for refusing to respond, but there shall be set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding.

22.     All designated Documents are to be taken as including all attachments and enclosures.  If any portion of a Document is responsive to a Request, the entire Document should be produced. If Documents responsive to this Request are normally kept in a file or other folder, also produce that file or folder.

23.     Unless otherwise stated in connection with a specific Request, these Requests are for the time period from January 1, 2004 to the present.

24.     The terms defined above and the individual requests should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure governing discovery.

25.     Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition, except where such words have a usual custom and usage definition in Your trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which You are aware.

26.     For purposes of interpreting the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation. This includes:

     a.     "any," "all," "each," or "every" shall mean "any, all, each and every";

     b.     "and" and "or" shall mean "and/or" and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

     c.     "including," shall mean "including but not limited to";

     d.     the singular form of any word shall include the plural, and the plural form shall include the singular;

     e.     each verb shall include all of its tenses; and

     f.     each pronoun shall apply to the male, female, and neutral genders.

27.     If any responsive Documents are withheld or redacted under a claim of attorney-client privilege, attorney work-product doctrine, or any other privilege or immunity from discovery, You are requested to provide a privilege log including the following information, in sufficient detail to permit adjudication of the validity of the claim: (1) the nature of the privilege being asserted or other rule relied upon, and the facts supporting Your

7

assertion thereof; (2) the party who is asserting the privilege; and (3) the following information about each purportedly privileged document:   (a) the author, primary addressee, and secondary addressees or persons copied, including the relationship of those persons to any party in this litigation and/or the author of the Document (unless otherwise apparent); (b) a description sufficient to identify the type, subject matter, and purpose of the Document; (c) all persons to whom its contents have been disclosed; (d) the date the Document was prepared, the date the Document bears, the date the Document was sent, and the date the Document was received; and (e) a description of the custodian of the Document.

28.      If a portion of any responsive Document is withheld under a claim of privilege pursuant to the preceding instruction, any non-privileged portion of such Document must be produced with the portion claimed to be privileged redacted.

29.      Identify all responsive Documents that have been lost, discarded, or destroyed. In so doing, state the type of document, its date, the approximate date it was lost, discarded, or destroyed, and the identity of each person having knowledge of the contents thereof, including the name, address and telephone number of each such person.

30.      These Requests are continuing in nature. In the event you become aware of or acquire possession, custody, or control of additional responsive Documents, you shall promptly produce such additional Documents for inspection and copying. It is requested that a supplemental response shall be served no later than 14 days after the discovery of additional, responsive Documents or information, and in no event shall any supplemental response be served later than the day before the first day of trial.

## REQUESTS FOR PRODUCTION

1.      All Documents relating to CSI.

2.      All Documents relating to Zimmer.

3.      All Documents relating to the Neurosurgeons' income other than income earned from Lee Health.

4.      All Documents relating to any professional or business relationship of any of the Neurosurgeons with any entity other than Lee Health including, but not limited to, CSI or Zimmer.

5.      All Documents relating to Lee Health's knowledge of any outside income received by any of the Neurosurgeons, or any professional or business relationship of any of the Neurosurgeons with an entity other than Lee Health including, but not limited to, CSI or Zimmer.

6.      All Documents produced by the Neurosurgeons to Lee Health relating to the Neurosurgeons' outside income or other professional or business affiliations.

7.      All Documents relating to the knowledge by members of the Board of Directors of Lee Health of any outside income received by the Neurosurgeons, or any professional or business affiliations of the Neurosurgeons with any entity other than Lee Health.

8.      All Documents relating to any discussion by the Board of Directors of Lee Health relating to the outside income or outside activities or affiliations of any of the Neurosurgeons.

9.      All Documents provided to any of the Neurosurgeons at the time they were being recruited.

10.      All Documents related to a certain settlement agreement entered into by Dr. Dean Lin and the United States in or about October 10, 2019.

11.      All Documents provided to any consultants who were retained for the purpose of

evaluating either the fair market value or commercial reasonableness of the compensation paid to the Neurosurgeons, or any other physicians employed by Lee Health.

12.     All documents showing that Lee Health's compensation arrangements with the Neurosurgeons met the fair market value and commercial reasonableness standards under the Stark Law because they were approved in advance by an authorized body of Lee Health, composed entirely of individuals who did not have a conflict of interest with respect to the compensation arrangements; the authorized body obtained and relied on appropriate data as to comparability prior to making its determination; and the authorized body adequately documented the basis for its determination.

13.     All documents supporting Lee Health's affirmative defenses.

This 4th day of March, 2020.

**BOIES SCHILLER FLEXNER, LLP**

George F. Carpinello  (Admitted Pro Hac Vice)
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel: (518) 434-0600
Fax: (518) 434-0665
Email: gcarpinello@bsfllp.com

Karen C. Dyer
Florida Bar No. 716324
121 South Orange Avenue, Suite 840N
Orlando, FL 32801
Tel: (407) 425-7118
Fax: (407) 425-7047
Email: kdyer@bsfllp.com

Timothy W. Feeley, Esquire, Trial Counsel
(Admitted Pro Hac Vice)
Hall Render Killian Heath & Lyman, PC
111 E. Kilbourn Ave., Ste. 1300
Milwaukee, WI 53202
Telephone: (414) 721-0461
Email: tfeeley@hallrender.com

David A. French, Esquire, Trial Counsel
(Admitted Pro Hac Vice)
Hall Render Killian Heath & Lyman, PLLC
201 W. Big Beaver Road, Suite 1200
Columbia Center
Troy, MI 48084
Telephone: (248) 457-7813
Email: dfrench@hallrender.com

Elinor E. Baxter, Esquire
Florida Bar No. 981710
The Law Office of Elinor Baxter, PLLC
47 South Palm Avenue, Suite 201
Sarasota, Florida 34236
Telephone: (239) 405-7863
E-mail: ebaxter@baxterlawpl.net

David B. Honig, Esquire, Trial Counsel
Florida Bar No. 705446
Hall Render Killian Heath & Lyman, PC
500 N. Meridian Street, Suite 400
Indianapolis, IN 46204
Telephone: (317) 633-4884
Email: dhonig@hallrender.com

This 4th day of March, 2020.

*/s/ George F. Carpinello*
George F. Carpinello